1  CARLTON J. WILLEY (CA Bar No. 269120)
2  WILLEY & BENTALEB LLP
   JP Morgan Chase Building
3  560 Mission Street, Suite 1300
   San Francisco, CA 94105
4  Phone: (415) 426-7111
   Fax: (415) 276-1737
5  Carlton@WBLawPartners.com
6
   *Attorney for Defendants and Third-Party Plaintiffs*
7  *Mark Javitch and Daniel Canfield*

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**

11 NOVEPOSTER,                          ) Case No. 3:13-cv-05186-WHO
12     a California General Partnership, )
                                         )
13              Plaintiff               ) **JUDGE:** HON. WILLIAM H. ORRICK
        and Counter-Defendant,          )
14                                       )
   vs.                                   ) **DEFENDANTS AND THIRD-PARTY**
15                                       ) **PLAINTIFFS' MOTION FOR**
   JAVITCH CANFIELD GROUP,              ) **JUDGMENT ON THE PLEADINGS**
16     business entity form unknown, et al, )
                                         )
17              Defendant, Counter-Claimant, )
        and Third-Party Plaintiff,      )
18                                       ) DATE: JULY 9, 2014
   vs.                                   ) TIME: 2:00 PM
19                                       ) COURTROOM 2, 17TH FLOOR
   ALEX YANCHER, an individual, and     ) JUDGE: HON. WILLIAM H. ORRICK
20 MATT GRINBERG, an individual,        )
                                         )
21              Third-Party Defendants.  )
                                         )
22 _____)

23      Now come Defendants and Third-Party Plaintiffs Mark Javitch and Daniel Canfield, and

24 hereby move this Honorable Court for judgment on the pleadings of the parties pursuant to Rule

25 12(c) of the Federal Rules of Civil Procedure. Defendants file this limited Motion for Judgment on

26 the Pleadings with respect to only Causes of Action One through Four of Plaintiff's Complaint—the

27

28

Causes of Action alleging "computer crimes." A memorandum of points and authorities in support is attached.

Respectfully Submitted,


/s/ Carlton J. Willey
Carlton J. Willey (269120)
WILLEY & BENTALEB LLP
JP Morgan Chase Building
560 Mission Street, Suite 1300
San Francisco, CA 94105
Phone: (415) 426-7111
Fax: (415) 276-1737
Carlton@WBLawPartners.com

*Attorney for Defendants and Third-Party Plaintiffs Mark Javitch and Daniel Canfield*

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.    **Summary of Argument**................................................................................1

II.    **Legal Standard**.............................................................................…...1

III.    **Introduction: The Computer Crimes Statutes**.........................................2

    A.  <u>Computer Fraud and Abuse Act: Plaintiff Misuses the Statute</u>……………......2

    B.  <u>The Facts of Plaintiff's Complaint Cannot Establish "Exceeds Authorized Access" Under The CFAA</u> …………………………...........................................4

    C.  <u>Plaintiff's pleaded facts fall well short of the facts of Ninth Circuit Cases that fell well short of the CFAA</u>…………………………………………………....5

    D.  <u>Plaintiff's Claims can be decided on the Pleadings</u>…………………………6

    E.  <u>California Penal Code § 502, ECPA, and CIPA</u>…………………………8

          1.  Plaintiff's Complaint Fails to Allege the Requisite Hacking …………………………………………………………....8

IV.    **Legal Argument**…………...…………………………………….…………....……9

    A.    The status of the contract cannot determine whether Defendants acted without authorization of in excess of authorization...........................................9

    B.    Plaintiff's Complaint fails to establish that Defendants exceeded their authorized access to Plaintiff's computers………...............................................12

    C.    Plaintiff does not show that Defendants were unauthorized to access Plaintiff's computers…………………………………...........................................15

    D.    Plaintiff cannot establish an actionable (or any) loss..............................16

    E.    The rule of lenity should guide the court's interpretation.............................20

    F.    Plaintiff's California § 502 Claims should fail for the same reasons as their CFAA claims…………………………………………………..…20

    G.    Plaintiff cannot establish a claim under the Electronic Communications Privacy Act and the California Penal Code Section § 630 et seq…..…….........23

V.  **Conclusion**……………………………………………………….…………25

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

1

**TABLE OF AUTHORITIES**

2

**Federal Rules of Civil Procedure**

3

Fed. R. Civ. P. 12…………………………………………………………..………1,9

4

**Federal Statutes:**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA")………………………………passim

5

Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq, ("ECPA" or "Wiretap

Act")………………………………………………………………………….......1, 8, 22-24

6

7

**California Statutes**

California Penal Code § 502 ("CCCL" or "§ 502")........................................ 1, 5, 8, 20-22

8

California Penal Code § 630 ("CIPA") or "§ 630) ........................................... 1, 8, 21-23

9

**U.S. Supreme Court Opinions**

*Rewis v. United States*, (1971)

10

      401 U.S. 808, 812……………………………………….…..………8, 19

*Leocal v. Ashcroft* (2004)

11

      543 U.S. 1, 11 n.8……………………………………………………5, 19

12

*United States v. Santos*, (2008) (J. Scalia) (plurality opinion)

      128 S. Ct. 2020, 2025……………………………………………..19

13

*United States v. Bass*, (1971);

      404 U.S. 336, 347-49……………………………………………....19

14

*McBoyle v. United States*, (1931);

15

      283 U.S. 25, 27……………………………………………………19

*United States v. Gradwell*, (1917)

16

      243 U.S. 476, 485……………………………………………………19

17

**Intermediate Federal Appellate Opinions**

18

*United States v. Nosal* (9th Cir. 2012)

      676 F.3d 854-58,860,863-64……...……...……………......………3, 4, 12, 14. 15, 16, 19, 24

19

*LVRC Holdings LLC v. Brekka* (9th Cir. 2009)

20

      581 F.3d 1127, 1129-31,1134-35…………………………...3-5, 9, 10, 14, 15, 16, 19, 23, 24

*United States v. Carr*, (9th Cir. 2008)

21

      513 F.3d 1164, 1168…………………………………………....7, 19

*Hal Roach Studios v. Richard Feiner & Co.* (9th Cir. 1990)

22

      896 F.2d 1542, 1550…………………………………………………9

*Bonilla v. Oakland Scavenger Co.*, (9th Cir. 1982)

23

      697 F.2d 1297, 1301 ……………………………………………..……...9

24

*Doyle v. Chase,* (9th Cir. May 24, 2011)

      WL 2006527…………………………………………..………19, 21

25

*United States v. Romm*, (9th Cir. 2006)."

      455 F.3d 990, 1001…………………………………..…..……19

26

Laub v. U.S. Dep't of Interior, (9th Cir. 2003)

27

      342 F.3d 1093 …………………………………………………………15

28

**WILLEY &
BENTALEB LLP**
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

1

**Federal Trial Court Opinions**

*See Craigslist, Inc. v. 3Taps Inc.,* (N.D. Cal. April 30, 2013)
      2013 WL 1819999, at *6n.11………………………………………………………………….5
*Facebook, Inc v. Power Ventures, Inc.,* (N.D. Cal. 2012) ("Power Ventures II")
      844 F.Supp.2d 1025, 1036 ……………………………………………………………..5,20
*Facebook Inc. v. Power Ventures, Inc.,* ("Power Ventures I") (N.D. Cal. July 20, 2010)
      C 08-05780 JW, 2010 WL 3291750 at *11……..……………………………………5, 20-21
*Craigslist, Inc. v. Naturemarket,* (N.D. Cal. 2010)
       694 F. Supp.2d 1039, 1070………………………………………………………………28
*Orbit One Commc'ns, Inc. v. Numerex Corp.* (S.D.N.Y. 2010)
      692 F. Supp. 2d 373, 385………………………………………………........6, 17, 19, 20
*Nexans Wires SA v. Sark-USA, Inc.* (S.D.N.Y. 2004)
      319 F. Supp. 2d 468, 475………………………………………………6, 23, 24, 25
*Enki Corporation v. Freedman,* (N.D.Cal. January 23, 2014)
      2014 WL 261798………………………………………………………………………5, 23
*Metabyte, Inc. v. NVidia Corp., et al.,* (N.D. Cal. April 22, 2013)
      Case No. 12-0044 SC…………………………………………………………..…………14
*Jet One Group v. Halcyon Jet Holdings, Inc.* (E.D.N.Y. Aug. 14, 2009) (unpublished)
      2009 WL 2524864……………………………………………………………14, 15, 17, 25
*Accenture, LLP v. Sidhu,* (N.D. Cal. Nov. 9, 2010).
      2010 WL 4691944………………………………..……………………………….....15-16
*National City Bank, N.A. v. Prime Lending, Inc.* (E.D. Wash. July 19, 2010)
      2010 WL 2854247, at *4 n.2………………………………………………………15-16
*AtPac, Inc. v. Aptitude Solutions, Inc.* (E.D.Cal.2010).
      730 F.Supp.2d 1174, 1183-84……………………………………………………………16
*Incorp Services Inc. v. IncSmart.Biz Inc.,* (N.D. Cal. Aug. 24, 2012)
      No. 11-CV-4660-EJD-PSG, 2012 WL 3685994…………………………...…………16-18
*Shamrock Foods Co. v. Gast* (D. Ariz. 2008)
      535 F. Supp. 2d 962, 962………………………………………………..……………14, 20
*International Ass'n of Machinists & Aerospace Workers v. Werner-Masuda* (D. Md. 2005)
      390 F. Supp. 2d 479, 498………………………………………………………...…14, 22
*Consulting Professional Resources, Inc. v. Concise Technologies LLC* (W.D. Pa. March 9, 2010)
      2010 WL 1337723 …………………………………………………………………………13
*Clarity Servs. v. Barney* (M.D. Fla. Feb. 26, 2010)
      98 F.Supp.2d 1309 (2010) ………………………………………………………….....13
*American Family Mut. Ins. Co. v. Hollander,* (N.D. Iowa Mar. 3, 2009);
      08CV-1039, 2009 WL 535990, *11……………………………………………………13
*Bridal Expo, Inc. v. Van Florestein* (S.D. Tex. February 3, 2009)
      NO. CIV.A. 4:08-CV-03777, 2009 WL 255862. …………………………………………14
*U.S. Bioservices Corporation v. Lugo* (D. Kan. 2009)
      595 F. Supp. 2d 1189, 1194 ……………………………………………………………14
*Black & Decker. Inc. v. Smith* (W.O. Tenn. 2008)
      568 F. Supp. 2d 929,934-37………………………………………………………..…14
*Diamond Power Int'l, Inc. v. Davidson* (N.D. Ga. 2007)
      540 F. Supp. 2d 1322, 1343………………………………………………………………16
*Platinum Logistics v. Mainfreight,* (S.D. Cal. Apr. 17, 2012)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

No. 11-CV-1174…………………………………………………………………………18

Oracle America, Inc. v. Service Key, LLC, (N.D. Cal. Dec. 3, 2012).
2012 WL 6019580……………………………………………………………18-22

*B.U.S.A. Corp. v. Ecogloves, Inc.* (S.D.N.Y. Sept. 28, 2009)
2009 WL 3076042, at *7 ……………………………………………………17

*Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.* (S.D.N.Y. 2005)
387 F. Supp. 2d 378, 382 ……………………………………………………17

*DocMagic v. Ellie Mae* (N.D. Cal. 2010)
745 F. Supp. 2d 1119 …...……………………………………………………17

*Condux Int'l v. Haugum* (D. Minn. Dec. 15, 2008)
2008 WL 5244818 ……………………………………………………………18

*In re Google Android Consumer Privacy Litig.* (N.D. Cal. Mar. 26, 2013)
2013 WL 1283236……………………………………………………………20, 22

*In re Facebook Privacy Litig.* (N.D. Cal. 2011)
791 F. Supp. 2d 705, 716………………………………………………………20-23

*In re iPhone Application Litig.* (N.D. Cal. Sept. 20, 2011).
2011 WL 4403963 ……………………………………………………………20

See *Crowley v. Cybersource Corp.* and Amazon.com, Inc. (N.D. Cal. 2001)
166 F.Supp.2d 1263………………………………………………………23-24

## California Appellate Court Opinions

*Chrisman v. City of Los Angeles* (2007)
155 Cal.App.4th 29, 35………………………………………………………21

vi                                                    3:13-cv-05186-WHO

WILLEY &
BENTALEB LLP
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **STATEMENT OF THE ISSUES TO BE DECIDED**

1.  Whether Plaintiff's alleged contract termination can determine whether Defendants are acting without authorization under the CFAA.

2.  Whether Plaintiff can establish that Defendants exceeded their level of authorization as defined by the CFAA.

3.  Whether Plaintiff can establish that Defendants acted without authorization under the CFAA.

4.  Whether Plaintiff can satisfy the loss requirements as defined by the CFAA.

5.  Whether Plaintiff's ability to fulfill the loss requirements as defined by the CFAA are impaired because Plaintiff does not actually own the protected computers.

6.  Whether the role of Lenity applies to Plaintiff's CFAA claim

7.  Whether Plaintiff can establish a claim under California Penal Code § 502

8.  Whether Plaintiff can establish a claim under the Electronic Communications Privacy Act and California Penal Code § 630

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### I.   SUMMARY OF THE ARGUMENT

Plaintiff's Complaint attempts to inflate a minor breach of contract dispute into a complex computer crimes action based on Plaintiffs' haphazard selection of the Computer Fraud and Abuse Act (CFAA) and its state corollary, California Penal Code § 502 ("§ 502"), the Electronic Communications Privacy Act (ECPA) and California's Invasion of Privacy Act § 630 ("CIPA" or "§ 630") (collectively, the "Computer Crimes Statutes"). Plaintiff throws in the "computer crimes" kitchen sink, in a novel and improper use of Federal and State criminal statutes. The central issues of the case, however, are what terms governed the business relationship between Plaintiffs and Defendants, and whether or not Plaintiff's email "termination" of the business relationship was valid and effective. The facts and damages alleged in the Complaint all concern the dispute between the parties over whether Plaintiff's June 14, 2013 email constituted a valid termination of the agreement between the parties that Defendants operate the Novelposter business. Plaintiff's Complaint does not allege any sort of computer hacking in any form, and thus Defendants' instant Motion seeks to rid this case of irrelevant Computer Crimes-based claims, each of which can be adjudicated based solely on the pleadings before this Court.

The Ninth Circuit has set clear standards on what constitutes a CFAA violation. Plaintiff's facts, even if accepted as true, are woefully short of these standards. This Court should not follow Plaintiff on a legally dubious adventure seeking an enormous expansion of liability under Federal and State Computer Crimes Statutes. The facts as pleaded in Plaintiff's Complaint are the facts of a straightforward dispute between two parties in a business relationship, and they simply do not and cannot support liability under the Computer Crimes statutes alleged.

### II.   LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). For purposes of a motion for judgment on the pleadings, the allegations of the non-moving party (Plaintiffs) must be accepted as true. *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Judgment on the pleadings is proper where the moving party clearly establishes on the face of the pleadings that no

material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.* However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. Fed. R. Civ. P. 12(c); *cf. Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1301 (9th Cir. 1982) (discussing Fed. R. Civ. P. 12(b)(6)), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3533, 82 L. Ed. 2d 838 (1984).

Defendants contest the truth of many of the allegations stated in the Complaint and reserve the right to assert such contentions in other aspects of the case. However, with regard to the "computer crimes" statutes, an acceptance of the allegations of the Complaint as true permits a Rule 12(c) motion for judgment on the pleadings.

## III.   INTRODUCTION: THE COMPUTER CRIMES STATUTES

### A.   Computer Fraud and Abuse Act: Plaintiff's Misuses the Statute

The CFAA was enacted to enhance the government's ability to prosecute computer crimes. *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1130 (9th Cir. 2009). The CFAA prohibits various computer crimes, which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, such as from obtaining information and damaging a computer or computer data. *See* 18 U.S.C. § 1030(a)(1)-(7).

A private plaintiff may maintain a civil action under Section 1030(g) if the defendant's conduct violated one of the provisions of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in § 1030(a)(5)(B). 18 U.S.C. § 1030(g); *Brekka,* 581 F.3d at 1131. To bring an action based on a violation of 18 U.S.C. § 1030(a)(2), a plaintiff must show that the defendant "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Id.* at 1132. Section 1030(a)(5) similarly requires intentional access of a protected computer without authorization.  The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to

1  obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18

2  U.S.C. § 1030(e)(6).

3       The Ninth Circuit has found that the plain language of the CFAA "targets the unauthorized

4  procurement or alteration of information, not its misuse or misappropriation." *United States v.*

5  *Nosal,* 676 F.3d 854, 860 (9th Cir. 2012). Hence, the requirement that the access was without

6  authorization or exceeded authorized access "does not extend to violations of use restrictions." *Id.*

7  at 864. The broader interpretation "would transform the CFAA from an anti-hacking statute into an

8  expansive misappropriation statute." *Id.* at 863. The "narrower interpretation is also a more sensible

9  reading of the text and legislative history of a statute whose general purpose is to punish hacking—

10 the circumvention of technological access barriers—not misappropriation of trade secrets—a

11 subject Congress has dealt with elsewhere." *Id.* The common and benign business activities alleged

12 in the Complaint differ starkly from the abuses targeted by the CFAA, such as surreptitious hacking

13 into computer systems and circumventing the erected access barriers to steal protected data.  The

14 CFAA has been used in the prosecution of Bradley Manning (*United States v. Manning*) for the

15 disclosure of classified intelligence secrets, as well as in *United States v. Morris* for the uploading

16 of a harmful, viral "worm" that damaged federal computers, and in *United States v. Aleynikov*,

17 where a virus damaged the U.S. financial system. In the civil context, the CFAA's use is much

18 more limited and must involve an element of circumvention of a "technological access barrier," i.e.

19 hacking. The Ninth Circuit recently made this crystal clear in *United States v Nosal*, choosing a

20 "narrower interpretation" of the CFAA, which is "a statute whose general purpose is to punish

21 hacking—the circumvention of technological access barriers." *United States v. Nosal*, 676 F.3d

22 854, 863 (9th Cir. 2012). Chief Judge Kozinski delivered the opinion in *Nosal*: "we hold that

23 'exceeds authorized access' in the CFAA is limited to violations of restrictions on *access* to

24 information, and not restrictions on its *use*." *Id.*, Slip Op. at 3872 (emphasis in original).

25      In contrast, here, Plaintiff's Complaint describes a business-to-business relationship

26 between Novelposter and Defendants, governed by the parties' communications and emails.  It is

27 obvious from the Complaint that the parties disagreed over whether Plaintiff had the right to

28 unilaterally terminate the alleged May 9, 2013 email contract, especially since the alleged contract

contains no provision governing termination (Complaint at ¶ 17) and the business relationship had been contemplated as a long term arrangement, not one that would be terminated after a few weeks. (*See* Complaint at ¶ 15 ("to take over the operations of NOVELPOSTER until it could be sold"), Complaint at ¶ 17 ("Javitch Canfield receive 10% equity in NovelPoster, which would vest over 2-years")). In this context, a "technological access barrier" is completely absent. Plaintiff willingly transferred its website domain and all accounts to Defendants, telling them they were to operate "all aspects of the Novelposter business" for a term "until it could be sold." *Id.*

In short, this dispute is entirely about two parties with differing interpretations of the terms of a business relationship, and the facts have nothing to do with the actions addressed by the Computer Crimes Statutes. The Ninth Circuit has made clear that mere contractual disputes do not give rise to CFAA liability.

### B.   The Facts of Plaintiff's Complaint Cannot Establish "Exceeds Authorized Access" Under The CFAA

Plaintiff contends that sending a simple e-mail can instantly turn Defendants into computer criminals (Complaint at ¶ 26) because any of Defendants' subsequent actions should be considered "without authorization" under the CFAA.  Applying such a frivolous notion of "authorization" to the CFAA and the other Computer Crimes Statutes would produce absurd results—where a divorcing couple shares an email account, one spouse could instantly incur computer fraud liability upon receipt of an email from the other revoking "authorization."  Wisely, the Northern District and the Ninth Circuit have clarified that this definition of "without authorization" is not tolerated under the CFAA. As Judge Kozinski reasoned in *Nosal*, the CFAA's prohibition on unauthorized access may be read as "apply[ing] to *outside* hackers (individuals who have no authorized access to the computer at all)," while its prohibition on "exceed[ing] authorized access" sensibly applies "to *inside* hackers (individuals whose initial access to a computer is authorized but who access unauthorized information or files)." *Nosal*, at 858.

Here, even if all of the potential "terms of use" contained in Plaintiff's Complaint are accepted as true and enforceable, these terms cannot support a violation due to "exceeding authorized access." Indeed, Plaintiff fails to show any terms enumerated to govern authorized

4                                    3:13-cv-05186-WHO

access other than the Complaint's repeated references to Plaintiff's June 14, 2013 email termination.  Plaintiff's email, promptly rejected by Defendants, is the only authority Plaintiff uses to show that authorization was revoked. This only highlights the fact that the dispute is over a contract. A disputed contract between private parties, and a dispute over whether that contract may be unilaterally terminated, is not enough to show CFAA liability.

### C.   Plaintiff's Other Pleaded Facts Fall Well Short of CFAA Liability

Plaintiff's use of the CFAA is novel in other ways as well.  Most CFAA cases in the Ninth Circuit deal with a former employee accessing an employer's computer with adverse interests to the employer, such as to start a competing firm with stolen customer data. *See, e.g.*, *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) and *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1130 (9th Cir. 2009).  Another common situation is a company scraping data from a popular website without permission from the owner of the data. *See Craigslist, Inc. v. 3Taps Inc.,* 2013 WL 1819999, at *6n.11 (N.D. Cal. April 30, 2013) and *Facebook, Inc v. Power Ventures, Inc.,* 844 F.Supp. 2d 1025, 1036 (N.D. Cal. 2012) ("Power Ventures II").  In *Craigslist* and *Power Ventures II*, the Defendant accessed Plaintiff's data despite Plaintiffs'' efforts to erect technical access barriers (IP Blocking) to prevent Defendant's activity. In *Nosal and Brekka,* Defendants intentionally accessed data of their former employer for purposes of launching competing firms.

Compared to the behavior alleged in these cases, the activity alleged in the instant matter is quite benign. Operating and having control of a business, and disagreements regarding the validity of a contract, are not among conduct governed by the CFAA. Nor does the Complaint show that Plaintiff made any efforts to erect a "technological access barrier" (such as IP blocking or revoking Defendants' password access).   This activity contrasts sharply from that in *Nosal, Brekka, Craigslist* and *Power Ventures II*, and yet, tellingly, in *all* of these decisions courts limited or barred the use of the CFAA.

Further, although the term "protected computer"[1] enjoys a wide interpretation under the CFAA, Plaintiff's approach is novel because these "protected computers" at issue in the instant

---

[1]  According to the Ninth Circuit's *LVRC Holdings LLC v Brekka* Opinion, a "protected computer" is defined as including any computer "used in interstate or foreign commerce or communication, including a computer located

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

matter are not even owned by Plaintiff: "Its business operations…are conducted exclusively online utilizing a variety of software programs . . . . As such, each of these software companies owns and maintains one or more 'protected computers' as defined in the [CFAA]." (Complaint at ¶¶ 38, 39). These software programs are indeed connected to the Internet and affect interstate commerce, so these programs will likely qualify as "protected computers" under the court's interpretation of the CFAA.  However, this use of third-party computers has limiting implications for recovery under the CFAA statute.  Plaintiff's ability to satisfy the CFAA's loss requirement with computers operated by third parties will be impaired, since Plaintiff is not even responsible for repair and maintenance of these computers (nor does Plaintiff allege incurring such a cost in the Complaint). An "exceeding authorization" CFAA claim would be similarly difficult to prove since the software program would have to allow Plaintiff to designate different levels of authorization and Defendant would have to have accessed levels above those that were authorized. The facts as pleaded in the Complaint cannot support such a finding.

> ### D.   <u>Plaintiff's CFAA Claims Can Be Decided On The Pleadings</u>

Even assuming its truth for the purposes of this motion, the CFAA claim in Plaintiff's Complaint is futile for numerous reasons. First, whether or not the contract is determined to be valid or terminated on or after the attempted termination, the status of the contract cannot establish that Defendants acted "without authorization" under the CFAA. Plaintiff attempts to show that Defendants acted without authorization based on Plaintiffs' attempted (and rejected) termination of the contract.  However, this contractual view of "without authorization" has been rejected by the *Nosal* and *Brekka* courts in the Ninth Circuit.

Second, Plaintiff's Complaint fails to establish that Defendants exceeded their authorized access to Plaintiffs' computers.  It is not alleged that Defendants were granted access to one area of a computer, but that Defendants accessed other areas of a computer system in excess of their authorization.  Nowhere in Plaintiff's Complaint are allegations that Defendants' password access

---

outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States." 18 U.S.C. § 1030(e)(2). *See LVRC Holdings LLC v. Brekka* 581 F. 3d 1127 (9th Cir. 2009)

was rescinded or revoked or that Defendants exceeded such access authority by obtaining information that their password did not entitle them to obtain.[2]

Third, Plaintiff does not show that Defendants were unauthorized to access Plaintiff's computers.  On the contrary, Plaintiff alleges that Defendants were party to a contract "to take over all aspects of operations except for poster design." (Complaint at ¶ 17). Plaintiff even acknowledges that Defendants had access to the administrative account of Novelposter's Google account. (Complaint at ¶ 22).  This claim is barred as a matter of law by an *en banc* Ninth Circuit decision, *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), which held that the CFAA is intended to address computer hacking, not misappropriation of trade secrets by its employees.   Plaintiff's Complaint does not allege computer hacking or circumvention of technical access barriers.

Fourth, Plaintiff cannot establish an actionable (or any) loss under the CFAA.  Plaintiff pleads "NOVELPOSTER has suffered damages and/or loss in excess of $5,000 in the year preceding the date of this filing, but the damages grow each day that Defendants refuse to acknowledge termination of the Agreement." (Complaint at ¶ 44).  As Plaintiff has made clear, the alleged damages and losses are relating to Defendants' rejection of Plaintiffs' attempted contract termination.  Damages related to breach of contract allegations are not tolerated under the CFAA. In *Nexans Wires S.A. v. Sark-USA, Inc.*, the Court thoroughly reviewed the CFAA's legislative history and found that "the meaning of loss . . . has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *Nexans Wires SA v. Sark-USA, Inc.*, 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004).  This type of loss is not shown in Plaintiff's Complaint.

Fifth, the rule of lenity should guide the court's interpretation of the CFAA.  In *Brekka*, the Ninth Circuit held that "§ 1030 is primarily a criminal statute, and §§ 1030(a)(2) and (4) create criminal liability for violators of the statute. Although this case arises in a civil context, our interpretation of §§ 1030(a)(2) and (4) is equally applicable in the criminal context. *See Leocal v.*

---

[2] *See Orbit One Commc'ns, Inc. v. Numerex Corp.,* 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010). (finding that former executives did not exceed authorized access because "they concededly were granted unfettered access to·[counterclaimant's] computer system and information residing on it").

WILLEY &
BENTALEB LLP
SAN FRANCISCO

*Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (holding that where a statute "has both criminal and noncriminal applications," courts should interpret the statute consistently in both criminal and noncriminal contexts). It is well established that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008), quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971).

### E.  California Penal Code § 502, ECPA, and CIPA

#### 1.  Plaintiff's Complaint Fails to Allege the Requisite Hacking

Plaintiff's use of the CFAA's state corollary, California Penal Code § 502 "§ 502" fails for the same reasons.  The statute requires computer hacking (*see Enki Corporation v. Freedman,* 2014 WL 261798 (N.D.Cal. January 23, 2014) and *Facebook v. Power Ventures*), none of which is alleged in Plaintiff's Complaint.

The analysis for the ECPA and CIPA are similar to the CFAA and § 502.  Plaintiff's transparent strategy is to attempt to define Novelposter's email addresses as "personal" email addresses (Complaint at ¶ 2) in order to portray Defendants' conduct in accessing Novelposter's email while operating the business as the nefarious interception of personal communications.  This business/personal distinction is meaningless, as the statutes do not even consider whether email addresses are for personal or business use. Still, Plaintiff acknowledges that the Novelposter email addresses are actually the customer relationship manager (CRM) for the business (Complaint at ¶ 11(a)).  As Defendants had agreed to take over Novelposter's operations (Complaint at ¶¶ 17-21), accessing Novelposter's CRM in order to communicate with customers would seem to be a common and reasonable business activity. Yet in its Complaint, Plaintiff would have the Court believe that Defendants were somehow surreptitiously intercepting Plaintiff's emails. However, in examining the facts alleged in the Complaint, Plaintiff had agreed that Defendants would "take over all aspects operations" from Plaintiffs.  During the time period in question, Defendants were clearly operating the Novelposter business and Plaintiff was not, and therefore Defendants' need to have access to Novelposter's CRM and emails is obvious, whereas Plaintiff's need is not at all clear. Plaintiff's Complaint fails to establish any hacking of interception emails or communications.

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

The ECPA and CIPA require actual malicious activity, such as using a device to intercept communications.[3] Nowhere in the Complaint does Plaintiff allege the use of a device nor does Plaintiff allege how Defendants conducted the interception of communications.   The action described in the Complaint—reading the emails of the business, which contained customer information—is a standard business activity performed from an email server using Microsoft Outlook or Gmail. Plaintiff would have the Court believe that receiving an email through an email server is sufficient for ECPA and CIPA liability, but of course it is not. When the puffery is distilled down to the reality, the alleged actions do not and cannot constitute violations under the ECPA and CIPA, and the court should therefore dismiss these claims.

## IV.    LEGAL ARGUMENT

### A.    The Legal Status of The Contract Has No Bearing on Defendants' Access Authorization

Plaintiff alleges several contract violations to attempt to satisfy the CFAA requirement that Defendants acted without authorization or in excess of their authorization:  "Defendants accessed the administrative account of the NOVELPOSTER Google account and accessed the email accounts of Alex@NovelPoster.com and Matt@NovelPoster.com" and "changed the passwords to those accounts.  Defendants were not authorized to make those changes."  (Complaint at ¶ 22). Plaintiff labels these as "personal accounts" in order to make the activity sound nefarious: "These were the personal email accounts of Mr. Yancher and Mr. Grinberg, respectively." (Complaint at ¶ 22).  Earlier in the complaint, however, the claim that these email accounts are personal emails is contradicted: "The emails of Matt@NovelPoster.com and Alex@NovelPoster.com email accounts, are, in effect, the customer relationship management ("CRM") tool for Mr. Grinberg and Mr.

---

[3] For ECPA, *see* 18 U.S. Code § 2511 (1)(b). For CIPA, *see* California Penal Code § 630-632. Plaintiff's Complaint, Cause of Action selects a portion of § 631, but omits the critical portions of the statute related to devices and eavesdropping, which the law is meant to address: "630. The Legislature hereby declares that advances in science and technology have led to the development of **new devices and techniques for the purpose of eavesdropping** upon private communications and that the invasion of privacy resulting from the continual and increasing use **of such devices and techniques has created a serious threat to the free exercise of personal liberties** and cannot be tolerated in a free and civilized society." *Id.* at § 630 (emphasis added).

3:13-cv-05186-WHO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

Yancher.  CRM is a platform for managing relations between a company and a customer.  In addition, the contract, and all records relating to it, between Defendants and NOVELPOSTER were negotiated through, and stored on, those email accounts." (Complaint at ¶ 11(a))  Even though it has no relevance to the Computer Crimes Statutes, Plaintiff's conclusory labeling that certain email accounts are personal accounts is inaccurate and/or misleading. Since Defendants had agreed to take over Novelposter operations (Complaint at ¶¶ 17-19), accessing and using the company's CRM would be Defendants' required responsibility.  If Defendants had not used the company's CRM, Defendants could not have effectively operated Novelposter and communicated with its customers.

Plaintiff's Sixth Cause of Action alleges that Defendants were in breach of the contract because of their alleged violation of a single, ambiguous line in the contract: "Novelposter continues to have ownership of all Novelposter related accounts.  Defendants breached the Accounts Clause by, among other things, refusing Mr. Yancher and Mr. Grinberg access to accounts related to NOVELPOSTER . . . . As a direct and proximate result of Defendants breaches of the Accounts Clause, NOVELPOSTER has suffered and will continue to suffer damages." (Complaint at ¶ 78). Of course, the ultimate ownership of the accounts or any Novelposter assets is irrelevant. Plaintiff admits it agreed that Defendant would operate all aspects of the Novelposter business—per Plaintiff's email, Defendants were to "take over all aspects of operations except for poster design." (Complaint at ¶ 17).  Per the terms alleged in the Complaint, Plaintiff was to continue to try to sell the Novelposter business, which they indisputably owned, but in the interim Defendants would operate "all aspects" of the business, without limitation. Plaintiff attempts to hold out this "ownership" clause as if it governs the parties' rights to access accounts while Defendants operated the Novelposter business. Plainly, it does not.

Plaintiff additionally relies on no other authority but Defendants' alleged refusal to acknowledge termination of the contract in order to show Defendants acted without authorization or in excess of authorization: "Through Defendants' pattern and practice of repeatedly operating and accessing NOVELPOSTER and its accounts after the June 14, 2013 termination of the Agreement, as well as the continued denial to Mr. Yancher and Grinberg, owners of NOVELPOSTER, access to NOVELPOSTER and its accounts, Defendants have intentionally accessed and used protected

10

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

computers without authorization, or in excess of its authority, in violation of 18 U.S.C. §§ 1030 (a)(2)(c) and 1030 (a)(5)(c)." (Complaint at ¶ 41). The Court need not consider in this motion whether these email accounts were for personal or business purposes, whether the contract is valid, or whether there was a breach of contract.[4] This type of CFAA claim is barred in the Ninth Circuit.

In *Metabyte, Inc. v. Nvidia et al,* the court ruled "To plead a valid CFAA claim, Plaintiff would need to allege facts that the Individual Defendants accessed information without authorization or exceeded their authorization, *see id.*; *Brekka*, 581 F.3d at 1131, and not—as the complaint suggests—that the Individual Defendants merely misappropriated information, infringed copyright, or breached a contract. The CFAA's scope is narrow, and the Court is not inclined or permitted to expand it." *See Metabyte, Inc. v. NVidia Corp., et al.,* Case No. 12-0044 SC (N.D. Cal. April 22, 2013).

For the purposes of imposing civil and/or criminal liability under CFAA, Plaintiff cannot plausibly contend that authorization is an on/off switch that is triggered whenever Plaintiff objects to Defendants' computer activities.  Plaintiff here does not even have the powers of an employer, such as an undisputed right to terminate the employment of an employee. However, even if Plaintiff had all of the rights of an employer, the Ninth Circuit has stated that nothing in the statute warrants recognition of a claim premised on an employer's unilateral authority to define authorization.[5] Such authority could be wielded arbitrarily against an unwitting computer user who did not—and, indeed, could not—know the boundaries of his or her authorized access.  Because of this self-evident danger, courts have declined to adopt a broad statutory construction even when the computer user should have known that he or she was acting against his employer's interest. *See*

---

[4] In *Metabyte, Inc. v Nvidia et al*, Plaintiff alleged that Defendant Employees satisfied the without authorization or in excess of authorization element of the CFAA because their actions violated "various confidentiality agreements that required them to maintain the secrecy of Plaintiff's property and return any confidential or proprietary information to Plaintiff upon termination of their employment" *See Metabyte, Inc. v. NVidia Corp., et al.,* Case No. 12-0044 SC (N.D. Cal. April 22, 2013).  However, the court found that "Even if Plaintiff had the Individual Defendants sign various agreements and took steps to keep its information confidential and secret that is not sufficient to plead a CFAA claim after *Nosal*.  See 676 F.3d at 863-64.

[5] As Judge Kozinski noted in the *Nosal* Opinion: "Employer-employee and company-consumer relationships are traditionally governed by tort and contract law; the government's proposed interpretation of the CFAA allows private parties to manipulate their computer-use and personnel policies so as to turn these relationships into ones policed by the criminal law. Significant notice problems arise if we allow criminal liability to turn on the vagaries of private polices that are lengthy, opaque, subject to change and seldom read." *Nosal* at 860.

*Orbit One Communications, Inc. v. Numerex Corp.,* 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) (dismissing CFAA claim asserting that individuals took electronic proprietary information prior to leaving company for the purpose of competing with it); *LVRC Holdings LLC v. Brekka*, (2009) 581 F. 3d 1127, 1134-35 (rejecting CFAA claim based on former employee's emailing of documents, including lists of plaintiffs former and current patients, to himself and to his wife to advance his own competing business). Allowing such a claim would effectively rewrite the statute to permit federal civil actions—as well as criminal charges—for what may amount to nothing more than a garden variety misappropriations and breaches of contract. Clearly in the Ninth Circuit, courts are unwilling to expand CFAA liability that is couched in breach of contract. This concern is particularly acute in the case at hand, where Plaintiff's pleaded "contract" is merely an ambiguous email from Plaintiff.  Even accepting Plaintiff's pleading of the parties' "contract," this Court should find that Plaintiff's Complaint improperly relies on contracts and written agreements to show that Defendants' access was unauthorized or exceeded authorized access.

### B.   The Complaint Fails to Establish that Defendants Exceeded Their Authorized Access to Plaintiffs' Computers

Defendants "must have acted "without authorization" or "exceed[ed] authorized access" to have violated sections 1030(a)(2)(C). Under the CFAA, "the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter[.]" 18 U.S.C. § 1030(e)(6). The Ninth Circuit has construed this term narrowly and has refused to extend liability under the CFAA to garden variety trade secret misappropriation claims. "[N]othing in the CFAA suggests that a defendant's authorization to obtain information stored in a company computer is 'exceeded' if the defendant breaches a state law duty of loyalty to an employer, and we decline to read such a meaning into the statute." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 n.7 (9th Cir. 2009).[6]

---

[6] Other courts have also refused to recognize CFAA claims alleging garden-variety misappropriation - i.e., that a defendant accessed information for unauthorized or illegitimate purposes or made improper use of information that was accessed. *See Jet One Group v. Halcyon Jet Holdings, Inc.,* 2009 WL 2524864 (E.D.N.Y. Aug. 14, 2009) (unpublished) (declining to construe "exceeds authorized access" as prohibiting "misuse" or "misappropriation" of information that is lawfully accessed because doing so would "grossly expand the statute's reach"; granting motion to dismiss); *See Orbit One Commc'ns, Inc. v. Numerex Corp.,* 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010), (adopting

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

In the instant matter, Plaintiff alleges that Defendants operated and accessed Novelposter's accounts after Plaintiffs' attempted June 14, 2013 contract termination, which was "in excess of its authority."[7] (Complaint at ¶ 41).

In *Nosal*, the government argued that "exceeds authorized access" could "refer to someone who has unrestricted physical access to a computer, but is limited in the use to which he can put the information. For example, an employee may be authorized to access customer lists in order to do his job but not to send them to a competitor." *See United States v. Nosal,* 676 F.3d 854, 854-857 (9th Cir. 2012). The court rejected the government's argument and found that "The government's interpretation would transform the CFAA from an anti-hacking statute into an expansive

narrow reading of CFAA); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 n.7 (9th Cir. 2009) ("[N]othing in the CFAA suggests that a defendant's authorization to obtain information stored in a company computer is "exceeded" if the defendant breaches a state law duty of loyalty to an employer, and we decline to read such a meaning into the statute£.],,); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 962 (D. Ariz. 2008) ("[A] violation for accessing a protected computer 'without authorization' occurs only when initial access is not permitted. And, an 'exceeds authorized access' violation occurs only when initial access to a protected computer is permitted but the access of certain information is not permitted."; granting motion to dismiss); *International Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 498 (D. Md. 2005) ("[T]o the extent that [the employee] may have breached the Registration Agreement by using the information obtained for purposes contrary to the policies established by the [employer's constitution], it does not follow, as a matter of law, that she was not authorized to access the information, or that she did so in excess of her authorization in violation of the CFAA."; granting motion to dismiss). See also *Consulting Professional Resources, Inc. v. Concise Technologies, LLC*, 2010 WL 1337723 (W.O. Pa. Mar. 9, 2010) ("cases which focus on the employee's motive for accessing a computer or his eventual use of the information obtained misunderstand the statute to read 'exceeds authorized use' instead of 'exceeds authorized access'"; "the reach of the CFAA does not extend to instances where the employee was authorized to access the information he later utilized to the possible detriment of his former employer"; recommending grant of motion to dismiss), adopted Qy, complaint dismissed at 2010 U.S. Dis1. LEXIS 31489 (W.O. Pa. Mar. 31,2010); *Clarity Servs. v. Barney*, 98 F.Supp.2d 1309 (M.D. Fla. Feb. 26, 2010) (adopting narrow definition of authorization and dismissing CFAA claim); *American Family Mutual Ins. Co. v. Hollander*, 08CV-1039, 2009 WL 535990, *11 (N.D. Iowa Mar. 3, 2009) (where plaintiff insurance company conceded that defendant former insurance agent was authorized to access agency database system (ADS) but nonetheless argued that agent "would have no valid reason for accessing and printing a global list of policyholders," court concluded plaintiff could not prove that defendant accessed the ADS without authorization or by exceeding his authorized access; reasoning that "[e]ven if the information obtained was subsequently used for an improper purpose, there is no violation of the CFAA"); *Bridal Expo, Inc. v. Van Florestein*, NO. CIV.A. 4:08-CV-03777, 2009 WL 255862 (S.D. Tex. Feb. 3, 2009) ("declin[ing] to read the CFAA to equate 'authorization' with a duty of loyalty to an employer"; granting motion to dismiss CFAA claim); *U.S. Bioservices Corporation v. Lugo*, 595 F. Supp. 2d 1189, 1194, (D. Kan. 2009) ("the court follows the line of cases that have rejected a reading of the CFAA by which the defendant's intent may determine whether he has acted without authorization or has exceeded his authorized access"; granting motion to dismiss CFAA claims in part); *Black & Decker. Inc. v. Smith*, 568 F. Supp. 2d 929,934-37 (W.O. Tenn. 2008) (where employee was permitted access to employer's network and any information on that network, court found that "[t]he fact that [the employee] did not have permission to subsequently misuse the data he accessed by sharing it with any of his former employer's competitors is another matter that may be circumscribed by a different statute"; granting motion to dismiss CFAA claim under 18 U.S.C. § 1030 (a)(2).

[7] Although Plaintiff twice incorrectly pleads "in excess of its authority" (Complaint, Paragraphs 40 and 41), Defendant will assume that Plaintiff properly plead "in excess of its authorization" as the CFAA statute reads.

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

misappropriation statute." *See Id.*   To satisfy the CFAA requirement that Defendants conduct "exceeds authorized access," Plaintiff must show that Defendants were "(1) individuals whose initial access to a computer is authorized but who (2) access unauthorized information or files." *See Id.*

Nowhere do Plaintiff's allegations delineate where Defendants' access started or stopped, or which information accessed was authorized and which was unauthorized.   Nowhere in Plaintiff's Complaint is there any allegation that Defendants' password access was ever rescinded or that Defendants exceeded such access by obtaining information that their password did not entitle them to obtain.[8]

Even if Plaintiff amended the complaint to properly plead an "exceed authorized access" claim that Defendants were authorized to access certain accounts (contact@NovelPoster.com) but not others, (Alex@NovelPoster.com and Matt@NovelPoster.com), this claim would fail as well. Plaintiff has already pled that "Contact@Novelposter.com is the administrative account associated with the Google account and controls all aspects of the Google account." (Complaint at ¶ 11(a)) and that Defendants had access to this account (Complaint at ¶ 22). Having admitted this account is an administrative account with the power to control all other accounts, it would be impossible to allege that Defendants gained access to Alex@NovelPoster.com and Matt@NovelPoster.com through improper methods by circumventing any technical access barriers.

Even if Plaintiff had alleged that Defendants were initially authorized to access Novelposter's accounts, but then exceeded authorized access when Defendants accessed Novelposter's accounts after Plaintiffs attempted to terminate the contract on June 14, 2013, this claim would also fail for the same reason as the Court found in *Incorp: "*The Court observes that there are no direct or clear allegations of "hacking" in this passage—being, broadly, "the circumvention of technological access barriers," not violation of "use restrictions." and "because hacking was the mischief the CFAA sought to remedy the Court finds that Plaintiff has not shown

---

[8] *See Orbit One Commc'ns, Inc. v. Numerex Corp.,* 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) (finding that former executives did not exceed authorized access because "they concededly were granted unfettered access to·[counterclaimant's] computer system and information residing on it").

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

the facts necessary in its pleadings" *See Incorp Services Inc. v. IncSmart.Biz Inc.,* No. 11-CV-4660-EJD-PSG, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012).

Plaintiff was apparently dissatisfied with Defendants' behavior in having access to certain accounts, but CFAA claims for exceeding authorized access in this manner are barred by *Nosal*.[9] Therefore, the Court should find that Plaintiff fails to properly plead an *exceeded authorization* claim under the CFAA.

### C.   Plaintiff Does Not Show that Defendants Were Unauthorized to Access Plaintiff's Computers.

Novelposter seeks to characterize Defendants' purported misuse of Novelposter accounts as a violation of the CFAA.  Besides using the word "unauthorized" twice in the Complaint to describe the California Penal Code § 502 (Complaint at ¶ 56) and California Penal Code § 630 (Complaint at ¶ 63), the only allegation in the Complaint that Defendants were unauthorized was when Defendants refused the contract "termination, insisting they would relinquish their unauthorized control only for a fee." (Complaint at ¶ 25). This reference to "unauthorized" is regarding the

---

[9] In *Nosal*, several employees logged into a confidential database to download company source lists and other confidential data, then transferred that data to a competitor. Id. at 856. The employees were authorized to access the database, but company policy prohibited the employees from disclosing or misusing the confidential information. Id. Upon defendant's motion, the district court dismissed the CFAA claims, and the Ninth Circuit affirmed. Explicitly rejecting the government's argument that "exceeds authorized access" within the meaning of the CFAA applies where someone has access to a computer's information but is limited in how he can use that information. Id. at 857. The Court held that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." Id. at 863. Further, "if Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly." Id. at 863.

("For our part, we continue to follow in the path blazed by *Brekka*, 581 F.3d 1127, and the growing number of courts that have reached the same conclusion. These courts recognize that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008); see also *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 385 (S.D.N.Y. 2010) ("The plain language of the CFAA supports a narrow reading.  The CFAA expressly prohibits improper 'access' of computer information. It does not prohibit misuse or misappropriation."); *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1343 (N.D. Ga. 2007) ("[A] violation for 'exceeding authorized access' occurs where initial access is permitted but the access of certain information is not permitted."); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 499 (D.Md. 2005) [*13] ("[T]he CFAA, however, do[es] not prohibit the unauthorized disclosure or use of information, but rather unauthorized access.").") Accordingly, because hacking was the mischief the CFAA sought to remedy, the Court finds that Plaintiff has not shown the facts necessary in its pleadings to establish jurisdiction. See, *Laub*, 342 F.3d at 1093. As such, the Court grants Plaintiff leave to amend with respect to the CFAA claim.

breach of contract dispute, not in reference to Defendants' accessing a protected computer without authorization.

Novelposter additionally pleads Defendants were "not authorized" in and "without authorization" in these instances related to the CFAA. (Complaint at ¶¶ 22, 24, 35, 36, 40-42). Plaintiff is merely opining an interpretation of the disputed business arrangement, that it was a violation of the contract for Defendants to have conducted this activity. These selections show Plaintiff's lack of understanding of the statutory requirements of the CFAA, as Plaintiff points to no authority other than the disputed contract to show that Defendants were without authorization. Since Defendants used computers to operate Novelposter after the contract was terminated, Plaintiff argues that this is tantamount to accessing protected computers without authorization for the purposes of the CFAA.  That is not so.

This breach of contract theory of CFAA liability is not allowed in the Ninth Circuit.  The CFAA is an anti-hacking statute, not an expansive misappropriation statute. *See United States v. Nosal,* 676 F.3d 854, 857 (9th Cir. 2012). It is designed to punish "the circumvention of technological access barriers—not misappropriation of trade secrets." *Id*. at 863. The plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." *Id*. at 863. Further, "if Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly." *Id*. at 863. Because Novelposter did not, and cannot, allege that Defendants "hacked" into any Novelposter computers without authorization, Novelposter's attempt to hold Defendants liable under the CFAA is futile.

Novelposter does not and cannot allege that Defendants used improper methods to access Novelposter accounts.  On the contrary, the parties entered into a contract for Defendants to "take over all aspects of operations except for poster design." (Complaint at ¶ 17).  Because the type of conduct alleged by Novelposter is not within the scope of the CFAA, the court must grant judgment on the pleadings in favor of Defendants for this CFAA claim.

### D.    Plaintiff Cannot Establish an Actionable (or Any) Loss for Its CFAA Claim

The term "loss" under the CFAA is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data,

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service" 18 U.S.C. § 1030 (e)(11) and "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information" 18 U.S.C. § 1030(e)(8).

In *Nexans Wires S.A. v. Sark-USA, Inc.*, the Court thoroughly reviewed the CFAA's legislative history and found that "the meaning of loss . . . has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *Nexans Wires SA v. Sark-USA, Inc*. 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004). Further, the Court held that that under the plain language of the statute, any alleged lost revenue must be lost "because of [an] interruption of service." *Id.* at 477.

The only allegation where Plaintiff's Complaint mentions loss and damage under the CFAA is as follows: "As a result of Defendants' conduct, NOVELPOSTER has suffered damages and/or loss in excess of $5,000 in the year preceding the date of this filing, but the damages grow each day that Defendants refuse to acknowledge termination of the Agreement." (Complaint at ¶ 44). These types of "loss" and "damage" are not tolerated under the CFAA, especially from the statement "but the damages grow each day that Defendants refuse to acknowledge termination of the Agreement." (Complaint at ¶ 44).  The damages that Plaintiff is contemplating are clearly breach of contract-related damages, not damages to any computer or data system or the cost of repairing these systems.

Courts have limited the categories of loss that are allowed under the CFAA[10] and held that even when correct categories of loss are pleaded under the CFAA, speculative damage assessments are not allowed.  In *Doyle v. Taylor*, Doyle argued that his need for a forensic computer expert to detect and delete all of the documents that were copied from a thumb drive would satisfy the loss requirement under the CFAA.  The Ninth Circuit affirmed the District Court's decision to dismiss

---

[10] 2 *See, also, B.U.S.A. Corp. v. Ecogloves, Inc*., 2009 WL 3076042, at *7 (S.D.N.Y. Sept. 26, 2009) (dismissing CFAA claim because plaintiffs 'failed to show that former employee "caused an 'interruption of service' -- at most, plaintiffs were unable to access some of her past emails for an unspecified period of time"); *Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (finding compensation sought "for lost profits resulting from Defendant's unfair competitive edge and for' their now wasted investment in the development and compilation of the database information" were not "the result of computer impairment or computer damage" and, therefore, are not "compensable 'losses' under the CFAA"; granting motion to dismiss and denying motion for preliminary injunction).

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

the CFAA claim, holding that Doyle's two expert declarations assessing the loss were "entirely speculative." *See Doyle v. Chase,* 2011 WL 2006527 (9th Cir. May 24, 2011) appealing *Doyle v. Taylor*, 2010 WL 2163521 (E.D. Wash. May 24, 2010).

Plaintiff's Complaint contains only one vague assertion referencing the incorrect type of damages under the CFAA (Complaint at ¶ 44). In *Docmagic v. Ellie Mae*, the court observed a similarly vague allegation of losses under the *Ellie Mae*'s CFAA counterclaim, because it contained only a single, generalized allegation related to loss from conduct that violated the CFAA: that "Ellie Mae has suffered damages and loss… including, without limitation, harm to Ellie Mae's data and/or computer(s) and other losses and damages in an amount to be proven at trial, but in any event, over $5000 aggregated over a one-year period'" *Id*. The Court found that "Because it is impossible to determine from Ellie Mae's counterclaim whether its loss, as loss is defined by the CFAA, standing alone and excluding damages, would aggregate to more than $5000 in a given year, Ellie Mae's counterclaim fails to adequately plead facts necessary to support a cause of action under the CFAA." *See DocMagic v. Ellie Mae* 745 F. Supp. 2d 1119 (N.D. Cal. 2010).

Here, Plaintiff's claim fails yet again because it does not allege any connection to computer damage or impairment. *See Nexans Wires S.A.,* 319 F. Supp. 2d at 475. Because Plaintiff alleges only lost *business* instead of alleging a loss resulting from interruption of computer service, Plaintiffs allegations are insufficient as a matter of law. *See Jet One Group v. Halcyon Jet Holdings, Inc.,* 2009 WL 2524864 (E.D.N.Y. Aug. 14, 2009) (granting motion to dismiss CFAA claim because plaintiff merely alleged that defendants "obtained 'confidential and proprietary information' and used such information to Plaintiffs detriment—while not connecting this detriment to any 'impairment' to its computer system, 'damage assessment,' data restoration expense, or 'interruption of service'").

As already noted in the Introduction to this Motion, the allegation in the Complaint is not that Defendants damaged Plaintiff's own protected computers, but that Defendants caused loss or damage to computers owned by third parties: "Its business operations…are conducted exclusively online utilizing a variety of software programs" (Complaint at ¶ 38) "As such, each of these

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

software companies owns and maintains one or more "protected computers" as defined in the Computer Fraud and Abuse Act." (Complaint at ¶ 39)

Plaintiff will be unable to satisfy the CFAA's loss requirement with computers operated by third parties.  As noted, "the meaning of loss ... has consistently meant a cost of investigating or remedying damage to a computer, or a cost incurred because the computer's service was interrupted." *See Nexans Wires SA v. Sark-USA, Inc.* 319 F. Supp. 2d 468, 475 (S.D.N.Y. 2004) Since Plaintiff's business is conducted on third-party software programs (Complaint at ¶ 38), Plaintiff does not actually own, operate, or maintain these computers in question.  Plaintiff is not even responsible for any damage or repair caused to these computers. The owners of the computers are not parties to this litigation, and thus the logical conclusion is that Plaintiff does not have standing to sue alleging loss to computers that they do not actually own, operate, or maintain.

Defendant is not aware of case law governing CFAA claims related to damage on third-party computers.  Here, the Complaint is void of any allegations that information was deleted or altered from these accounts, or that the accounts are somehow tampered with to cause an interruption of service.  Plaintiff does not allege the type of damage required by the CFAA (only breach of contract damages) but if Plaintiff were to allege damages properly, it appears only the owner of the computer has standing to establish a loss as defined by the CFAA.

**E.  The rule of lenity should guide the court's interpretation**

As discussed in the Introduction, the Ninth Circuit's *Brekka* opinion is heavily guided by the rule of lenity.[11]  From Plaintiff's Complaint, it is clear that the parties disagreed about whether Plaintiff had a right to unilaterally terminate the contract.  In *Brekka* and *Nosal*, there was no such ambiguity on whether the employer had such unilateral rights, and both cases involved clear, bad

---

[11] See *Leocal v. Ashcroft*, 543 U.S. 1, 11n.8 (2004) (holding that where a statute "has both criminal and noncriminal applications," courts should interpret the statute consistently in both criminal and noncriminal contexts). It is well established that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). The Supreme Court has long warned against interpreting criminal statutes in surprising and novel ways that impose unexpected burdens on defendants. See *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (J. Scalia) (plurality opinion) (citing United States v. Bass, 404 U.S. 336, 347-49 (1971); *McBoyle v. United States*, 283 U.S. 25, 27 (1931); *United States v. Gradwell*, 243 U.S. 476, 485 (1917)).

3:13-cv-05186-WHO

WILLEY &
BENTALEB LLP
SAN FRANCISCO

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

1  faith actions by the employee, breaching a duty of loyalty to harm the former employer. And yet,

2  even under these conditions, the Ninth Circuit was not persuaded that the actions of *Brekka* and

3  *Nosal* should give rise to a claim under the CFAA.

4          If the court was not convinced in *Nosal* and *Brekka* that Defendants should be held liable

5  under the CFAA, surely in the instant matter the decision should be much simpler.  The actions that

6  are viewed as bad faith measures by *Nosal* and *Brekka* do not apply here: Either party's ability to

7  terminate the business arrangement was not addressed in the contract (Complaint at ¶ 17) and

8  Defendants clearly disputed Plaintiff's ability to unilaterally terminate the contract (Complaint at ¶

9  27). Therefore, the Court should be guided by lenity when determining whether Defendants'

10  continued operation of the Novelposter business could give rise to a CFAA claim.

11  **F.  Plaintiff's California § 502 Claims Should Fail for the Same Reasons as their CFAA**

12      **Claims**

13          Aside from the $5,000 loss requirement in the CFAA, California Penal Code, § 502, the

14  California Comprehensive Computer Data Access and Fraud Act, ("§ 502") has many similarities

15  with the CFAA, its federal corollary.  Plaintiff's § 502 claims based on California Penal Code §§

16  502 (c)(1)-(5) and 502(c)(7) should fail for the same reasons as their CFAA Claims as already

17  stated in this motion.

18          In *Enki v. Freedman*, the district court specifically addresses the requirements to

19  successfully plead § 502:

20          § 502 imposes liability where an individual takes certain actions "without
21          permission" on another's computer, network, or website.  Enki relies on a
            single case, *Craigslist v. Naturemarket, Inc.*, to argue that a simple violation
22          of the terms of use meets the requirement that the action be "without
            permission." *Craigslist*, however, appears to be an outlier. Just four months
23          after *Craigslist*, in *Facebook v. Power Ventures, Inc.*, this court held that to
            take an action "without permission" under § 502, a defendant must overcome
24          some technical or code barrier. This has been the governing standard in this
            district since that time[12] and it is the standard that applies here. As Enki itself
25          does not even argue that the complaint alleges a technical obstacle, the court
26

─────────────────────────

27  [12] *See, e.g., In re Google Android Consumer Privacy Litig.,* Case No. 11-md-02264-JSW, 2013 U.S. Dist. LEXIS
    42724 (N.D. Cal. Mar. 26, 2013); *In re Facebook Privacy Litig.,* 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011); *In re*
28  *iPhone Application Litig.,* Case No. 5:11-md-02250-LHK, 2011 U.S. Dist. LEXIS 106865, 2011 WL 4403963 (N.D.
    Cal. Sept. 20, 2011).

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

GRANTS Defendants' motion as to the § 502 claim.  (*See Enki Corporation v. Freedman*, 2014 WL 261798 (N.D.Cal. January 23, 2014).

Here, as in *Enki*, Plaintiffs failed to allege that Defendants overcame a technical barrier.

§ 502 is intended to deter and punish "hacking" and requires something more than accessing or using resources to which one is entitled to access or use, even if done for an improper purpose. *Chrisman v. City of Los Angeles*, 155 Cal.App.4th 29, 35 (2007) ("Appellant's misuse of the department's computers was different. He used them to get information to which he was entitled when performing his job, but retrieved it for non-work-related reasons."); *Facebook Inc. v. Power Ventures, Inc.,* C 08-05780 JW, 2010 WL 3291750 at *11 (N.D. Cal. July 20, 2010) (finding CFAA cases instructive as the "federal corollary" to § 502, holding that § 502 subjects individuals to civil liability only if they act "without permission" in "accessing or using a computer, computer network, or website in a manner that overcomes technical or code-based barriers."); see also *LVRC Holdings LLC v. Brekka,* 581 F.3d 1127, 1130 (9th Cir.2009) ("[F]or purposes of the CFAA, when an employer authorizes an employee to use a company computer subject to certain limitations, the employee remains authorized to use the computer even if the employee violates those limitations."). In other words, a violation of restrictions on the use of data which is obtained with authority, and without hacking, does not violate § 502. *Chrisman*, 155 Cal. App. 4th at 35 (police officer who was authorized to access data from the police department's computers but did so for improper purposes had not violated § 502); *see also In re Facebook Privacy Litig*., 791 F. Supp. 2d 705, 716 (N.D. Cal. 2011) (§ 502 claim dismissed where plaintiffs could not allege that defendant had circumvented technical barriers to gain access to its website).

Furthermore, section 502(h) provides that "Subdivision (c) does not apply to punish any acts which are committed by a person within the scope of his or her lawful employment." Cal. Penal Code § 502(h).  This exception covers acts that occur during employment, even acts that are not based on any "legitimate job-related reason," are against an employer's policies and provide no benefit to the employer, and even to acts that are malicious. *Chrisman,* 155 Cal. App. 4th at 36; *see also LVRC Holdings,* 581 F.3d at 1130.  These exceptions to § 502 should apply in the present

21                                              3:13-cv-05186-WHO

matter. The relationship between Novelposter and Defendants was not employer/employee, but the conduct in this matter was similarly governed by the contract alleged in the Complaint.

As Novelposter does not allege that Plaintiff altered, deleted, damaged, or destroyed any data, computer system or computer network, Novelposter's claim should be limited to subsections § 502 (c)(2), (3), and (7). *See Facebook, Inc. v. Power Ventures, Inc.,* No. 08-cv-05780-JW, 2010 WL 3291750, at *6 (N.D. Cal. July 20, 2010) ("Power Ventures I").   Each of the subsections in question requires that the person act "without permission." Novelposter's Complaint fails to state a claim under § 502 because it fails to allege that Defendant accessed Novelposter's computers "without permission" as the term is interpreted in this District.   "[c]ourts within this District have interpreted 'without permission' to require that a defendant access a network 'in a manner that circumvents technical or code-based barriers in place to restrict or bar a user's access." *In re Google Android Consumer Privacy Litig.,* 2013 WL 1283236 (N.D. Cal. Mar 26, 2013) (citing *Facebook, Inc v. Power Ventures, Inc.,* 844 F.Supp. 2d 1025, 1036 (N.D. Cal. 2012) ("Power Ventures II"); *Power Ventures I,* 2012 WL 3291750, at *11).

Plaintiff simply parrots the statutory elements for a § 502 claim, but does not allege any facts that would support a finding that Defendants accessed Novelposter's computers without permission. Specifically, Novelposter does not, and cannot, allege that Defendants circumvented any technical barriers to access any of its accounts. On the contrary, it admits that Novelposter contracted with Defendants to "take over all aspects of operations except for poster design." (Complaint at ¶ 17). As with the federal CFAA, Novelposter cannot turn a hacking statute into one for misappropriation. While few plaintiffs would seek to attach a criminal statute aimed at hacking and wiretapping to a breach of contract claim, and as a result case law pertaining to such an odd use of § 502 is sparse in this area, this Court can nonetheless dispose of the § 502 claim on the pleadings, as it is inapplicable to the pleaded allegations.

### G.  Plaintiff cannot establish a claim under the Electronic Communications Privacy Act and the California Penal Code Section § 630 *et seq.*

The second and fourth claims in the Complaint allege violations of the federal and state statutes that prohibit the interception and disclosure of wire, oral, or electronic communications,

namely 18 U.S.C. § 2511(1)(a) (ECPA or Wiretap Act) and California Penal Code Section § *630 et seq* (§ 630).

The basis of these statutory violations is that Defendants "had access to and read the personal emails." (Complaint at ¶ 64) and "denying Mr. Yancher and Mr. Grinberg access to their personal email accounts:" (Complaint at ¶ 64).

Plaintiff pleads that these are personal emails to make Defendants' activity sound nefarious, (Complaint at ¶¶ 48 and 65) but as already established in Section A, Plaintiff has already plead that these are in fact business emails (Complaint at ¶ 11(a)) that would be used in the ordinary course of business while operating Novelposter.  Plaintiff acknowledges that the Novelposter emails are the "customer relationship management (CRM) tool" (Complaint at ¶ 11(a)).  As already discussed, Plaintiff had hired Defendants to "take over all aspects of operations." (Complaint at ¶ 17)  For Defendants to conduct Novelposter operations, it would be required for them to use the CRM tool to communicate with customers.

Regardless of whether these emails are considered personal, or business, Plaintiff cannot establish a claim under these statutes.  Plaintiff simply parrots the statutory language but does not actually plead any actual facts to show that Defendant "intentionally intercepts any wire, oral, or electronic communication;" (See U.S.C. 2511(1)(a)). With regard to the ECPA, Plaintiff alleges Defendants are "intentionally acquiring and/or intercepting, by device or otherwise, NOVELPOSTER's electronic communications, without knowledge, consent or authorization." (Complaint at ¶ 47a). The *Crowley v. Cybersource* court found that "The Wiretap Act requires, first, that there be a communication, and second, that there be an acquisition of that communication by an 'electronic, mechanical, or other device' 18 USC § 2510(4)" Plaintiff has plead only conclusory language with no factual allegation that Defendants used any device or machine for their alleged interception.  *See Crowley v. Cybersource Corp*., 166 F.Supp.2d 1263 (N.D. Cal. 2001).

The alleged behavior of reading emails in the Complaint can only be interpreted as Defendants checking emails as they would in the course of normal business operations.  Nowhere in the Complaint are any factual allegations Defendants undertook any extraordinary method of reading emails other than the most traditional form, such as using Microsoft Outlook or Gmail.  In

fact, Plaintiff even admits in the Complaint that Defendants had access to the administrative account of Novelposter's Google account and were able to change the passwords (Complaint at ¶ 22).  Plaintiff points to no authority other than the disputed contract as to why any actions were unauthorized. Such conduct hardly constitutes the required *interception* of emails.

Sensibly, 18 U.S.C. § 2511(2)(c) calls for an exception "where such person is a party to the communication." Plaintiff admits that Novelposter's email addresses were used for business purposes (Complaint at ¶ 11a) and that Defendants had been hired to take over Novelposter operations (Complaint at ¶ 17).  As the party in charge of operations of Novelposter, Defendants were clearly a party to any communication that was sent to Novelposter's email accounts.

In *Crowley v. Cybersource Corp. & Amazon, Inc.*, the court addressed this as well: "Crowley transmitted this information via e-mail over the Internet, and Amazon received the information, effectively completing the communication.  Amazon did not, however, "intercept" the communication within the meaning of the Wiretap Act, because Amazon did not acquire it using a device other than the drive or server on which the e-mail was received…" *See Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001). Defendants were a party to Novelposter's communication and thus Plaintiff is barred from claiming relief under the ECPA and § 630.  As already discussed in section A, the fact that there was a dispute regarding the alleged contract does give rise to Plaintiff's claim.[13]

As already established in Sections B and C of this motion, Plaintiff fails to show that Defendants have acted without authorization or in excess of their authorization. § 630 requires that a defendant act without authorization[14] and the ECPA allows an exception under 18 U.S.C. §

---

[13] Granting Amazon's Motion to Dismiss, the court futher notes: "Crowley's argument, moreover, would result in an untenable result. Holding that Amazon, by receiving an e-mail, intercepted a communication within the meaning of the Wiretap Act would be akin to holding that one who picks up a telephone to receive a call has intercepted a communication and must seek safety in an exemption to the Wiretap Act. Such a result would effectively remove from the definition of intercept the requirement that the acquisition be through a "device." *See Crowley v. Cybersource Corp.*, 166 F.Supp.2d 1263 (N.D. Cal. 2001).

[14] See § 631  "(a) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any *unauthorized* connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;…"

DEFENDANTS AND THIRD-PARTY PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

2511(2)(c) when "one of the parties to the communication has given prior consent to such interception."[15]  Of course, Defendants reading business emails of Novelposter while operation the business does not constitute "interception" but it is already well established that Plaintiffs gave consent when they hired Defendants to take over all aspects of operations (Complaint at ¶ 17). Therefore, the Court should grant Defendant's Motion for Judgment on the Pleadings with regards to the ECPA and § 630.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant Defendant's Motion for Judgment on the Pleadings with regards to Causes of Action One through Four of Plaintiff's Complaint—the Causes of Action alleging "Computer Crimes."

Respectfully Submitted,

DATED: JUNE 6, 2014

*/s/ Carlton J. Willey*
WILLEY & BENTALEB LLP

*Attorney for Defendants and Third-Party Plaintiffs Mark Javitch and Daniel Canfield*

---

[15] (c) It shall not be unlawful under this chapter [18 USCS §§ 2510 et seq.] for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

3:13-cv-05186-WHO