1    David Nied (SBN 136413)
dnied@astralegal.com
2    Allison M. Dibley (SBN 213104)
adibley@astralegal.com
3    Katy M. Young (SBN 267791)
kyoung@astralegal.com
4    Keenan Ng (SBN 267779)
kng@astralegal.com
5    **AD ASTRA LAW GROUP, LLP**
582 Market Street, Suite 1903
6    San Francisco, CA 94104
Telephone: (415) 795-3579
7    Facsimile:  (415) 276-1976

8    Attorneys for Plaintiff NOVEL POSTER and
Third Party Defendants ALEX YANCHER and
9    MATT GRINBERG

10

11               IN THE UNITED STATES DISTRICT COURT

12         IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14    NOVELPOSTER,                  CASE NO.:   3:13-cv-05186-WHO

15           Plaintiff,            **NOTICE OF MOTION AND MOTION
TO DISMISS FIRST AMENDED**
16        v.                    **COUNTERCLAIM AND FIRST
AMENDED THIRD PARTY**
17    JAVITCH CANFIELD GROUP, et al.,    **COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES IN**
18           Defendants.        **SUPPORT THEREOF**

19
                                      **Date:**      **August 6, 2014**
20                                  **Time:**      **2:00 PM**
                                  **Ctrm.:**     **Two (2), 17th Floor**
21                                       **Hon. William H. Orrick**

22                             Complaint Filed: November 6, 2013

23    AND RELATED COUNTERCLAIM AND
THIRD-PARTY ACTION.
24

25

26

27

28

Notice of Motion and Motion to Dismiss First Amended Counterclaim and
First Amended Third Party Complaint Memorandum of Points and Authorities in Support of Plaintiff's
Motion to Dismiss - Case No. 3:13-cv-056186 WHO

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION...................................................................................1

ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(a)(3)) ....................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S AND THIRD PARTY DEFENDANTS' NOTICE OF MOTION
AND MOTION TO DISMISS DEFENDANTS' FIRST AMENDED
COUNTERCLAIM AND FIRST AMENDED THIRD PARTY COMPLAINT ......................2

I.      INTRODUCTION..............................................................................2

        Impleader...................................................................................2

        Counterclaims.............................................................................2

II.     STATEMENT OF MATERIAL FACTS AND ALLEGATIONS ..................................3

III.    ARGUMENT ...................................................................................4

        A.      The Third Party Complaint Should Be Dismissed For Failure To State
                A Claim That  Mr. Grinberg and Mr. Yancher Are Derivatively
                Liable to Mr. Canfield and Mr.  Javitch For NovelPoster's Claims
                Against Canfield and Javitch...........................................................5

                1.      Third Party Complaint Seeks To Improperly Implead An
                        Existing Party. ...............................................................6

                2.      The Claims in The Third Party Complaint Are Not Dependent
                        Upon The   Plaintiff's Claims Against Defendants In The
                        Underlying Matter. ..........................................................7

                3.      No Legal Relationship Exists Between Third Party Plaintiffs
                        And Third Party  Defendants That Gives Rise To An
                        Impleader Claim. ............................................................8

                        a).     No Agreement For Indemnification Exists Between
                                The Third Party Defendants And TPPs............................9

                        b).     No Agreement For Subrogation Exists Between Third
                                Party Defendants And Third Party Plaintiffs. ....................9

                        c).     No Breach of an Express Or Implied Warranty Exists. .............10

                        d).     The TPDs And TPPs Are Not Joint Tortfeasors. ...................10

        B.      The Individual Causes Of Action Alleged Fail To State Proper
                Claims, Whether  Alleged as a Counterclaim or a Claim in the Third
                Party Complaint..........................................................................10

                1.      The Cause of Action for "Fraud and Conspiracy to Commit
                        Fraud-Intentional Misrepresentation" Must Fail .......................10

                2.      The Cause of Action for False Promise Must Fail ......................12

                3.      The Cause of Action for Breach of Contract Must Fail ................13

                4.      The Cause of Action for Quantum Meruit Must Fail...................14

                        a).     Quantum Meruit for Services Performed for
                                NovelPoster .................................................................14

                        b).     Quantum Meruit for Time Spent Defending this
                                Lawsuit ......................................................................15

i

Notice of Motion and Motion to Dismiss First Amended Counterclaim and  First Amended Third Party Complaint Memorandum of
Points and Authorities in Support of Plaintiff's  Motion to Dismiss - Case No. 3:13-cv-056186 WHO

5.   The Claim for Breach of The Implied Covenant Of Good Faith and Fair Dealing Must Fail ............................................. 15

6.   The Cause of Action for Conversion Must Fail ..................................... 17

7.   The Causes of Action for Untrue or Misleading Advertising and Unlawful Business Practices Must Fail ............................................ 19

a).   Defendants Lack Standing to Bring this Cause of Action Because the FACC Demonstrates They Were Not Injured as a Result of the Alleged False Advertisement. ........................................................................... 20

b).   The FAL Does Not Provide Protection for the Sale of a Business Between Two Sophisticated Parties. ......................... 21

c).   The FACC States Only Conclusions as to the Alleged Falsity of the Advertisements. ...................................................... 21

d).   Defendants Request Damages To Which They are Not Entitled as a Matter of Law. ......................................................... 22

8.   The Cause of Action for Intentional Interference with Prospective Economic Advantage Must Fail ............................................ 24

III.   CONCLUSION ............................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................4, 13

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*
459 U.S. 519 (1983) ..............................................................................4

*Banks Tower Communications v. Home Ins. Co.*
590 F. Supp. 1038 (E.D. Pa. 1984)...................................................9

*Banks v. City of Emeryville*
109 F.R.D. 535 (N.D. Cal. 1985) ......................................................5, 9

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ..............................................................................4

*Brogle v. South Carolina Elec. and Gas Co.*
509 F. 2d 1216 (4th Cir. 1975)...........................................................9

*Chaparro v. Carnival Corp.*
693 F. 3d 1333 (11th Cir. 2012)..........................................................13

*Cohen v. S&S Construction Co.*
151 Cal.App.3d 941 (1983) ..................................................................11

*Conrad v. Bank of America*
45 Cal.App.4th 133 (1996) ..................................................................12

*Cullen v. Netflix, Inc.,*
880 F. Supp. 2d 1017 (N.D. Cal. 2012)..............................................22

*Del E. Webb Corp. v Structural Materials Co.*
123 Cal.App.3d 593 (Cal. App. 2d Dist. 1981)...................................17

*Div. of Labor Law Enforcement v. Transpacific Transp. Co.*
69 Cal.App.3d 268 (1977) ...................................................................13

*Durning v. First Boston Corp.*
815 F. 2d 1265 (9th Cir. 1987) ...........................................................11

*Graham v DaimlerChrysler Corp.*
34 Cal.4th 553 (2004)...........................................................................24

*Guz v. Bechtel National, Inc.*
24 Cal.4th 317 (Cal. 2000) ..................................................................16

*Hauter v. Zogarts*
14 Cal.3d 104 (1975).............................................................................11

*Hewlett v Squaw Valley Ski Corp.*
54 Cal.App.4th 499 (Cal. App. 3d Dist. 1997)...................................23

*Hill v. Roll Internat. Corp.,*
195 Cal. App. 4th 1295
(Cal. App. 1st Dist. 2011)....................................................................21

*Johnson v. Rank*
110 F.R.D. 99 (N.D. Cal. 1986) ..........................................................5, 7, 9

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th. Cir. 2009) ............................................................19

*Korea Supply Co. v. Lockheed Martin Corp.*
  29 Cal.4th 1134 (2003)...................................................................................................23

*Low v. LinkedIn Corp.,*
  900 F. Supp. 2d 1010, 2012 U.S. Dist. LEXIS 97012, 31-32, (N.D. Cal. 2012) ................20

*Mosier v. Southern California Physicians Insurance Exchange*
  63 Cal.App.4th 1022 (1998)...........................................................................................11

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*
  107 Cal. App. 4th 1336
  (Cal. App. 2d Dist. 2003) ...............................................................................................22

*Ochs v. PacifiCare of California*
  115 Cal.App.4th 782 (2004)...........................................................................................14

*Pareto v. FDIC*
  139 F.3d 696 (9th Cir. 1998)............................................................................................4

*Pasadena Live, LLC v. City of Pasadena*
  114 Cal. App. 4th 1089 (2004)........................................................................................16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*
  150 Cal.App.4th 384 (2007)............................................................................................17

*Roth v. Rhodes*
  25 Cal.App.4th 530 (1994)..............................................................................................25

*SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.*
  148 Cal. App. 4th 663 (2007)..........................................................................................25

*Shadoan v World Sav. & Loan Ass'n.*
  219 Cal.App.3d 97 (Cal. App. 1st Dist. 1990) .................................................................23

*Shersher v. Superior Court*
  154 Cal.App.4th 1491 (Cal. App. 2d Dist. 2007)..............................................................23

*Sprewell v. Golden State Warriors*
  266 F. 3d 979 (9th Cir. 2001).........................................................................................11

*Stewart v. American Intern. Oil & Gas Co.*
  845 F. 2d 196 (9th Cir. 1998.).....................................................................................5, 10

*United States v. One 1977 Mercedes Benz*
  708 F. 2d 444 (9th Cir. 1983)........................................................................................5, 7

*Youst v. Longo*
  43 Cal.3d 64 (1987)........................................................................................................24

**STATUTES**

California Business and Professions Code
  section 17200.................................................................................................................19
  section 17203.................................................................................................................23
  section 17500.........................................................................................................*passim.*
  section 17535.................................................................................................................20

California Code of Civil Procedure
  section 1021.5................................................................................................................23

iv

Notice of Motion and Motion to Dismiss First Amended Counterclaim and  First Amended Third Party Complaint Memorandum of
Points and Authorities in Support of Plaintiff's  Motion to Dismiss - Case No. 3:13-cv-056186 WHO

**OTHER AUTHORITIES**

California Civil Jury Instructions
    CACI No. 305.................................................................................................13
    CACI No. 371.................................................................................................14
    CACI No. 1902...............................................................................................12
    CACI No. 2100...............................................................................................17
    CACI No. 3600...............................................................................................10


**RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................1, 11
    Rule 14 (a).............................................................................................*passim*.

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on **Wednesday, August 6, 2014**, at **2:00 p.m.**, or as soon thereafter as this matter may be heard in the courtroom of Judge William H. Orrick, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff NovelPoster and Third Party Defendants Matt Grinberg and Alex Yancher will and hereby do move this Court for an Order dismissing the First Amended Counterclaims and First Amended Third Party Complaint of Defendants and Third Party Plaintiffs Mark Javitch and Daniel Canfield.

This motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the First Amended Counterclaim and First Amended Third Party Complaint fail to state a claim upon which relief may be granted. This motion is based on this Notice of Motion and Motion and the following Memorandum of Points and Authorities in Support Thereof, all files and records in this action, oral argument, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to or at the hearing on this matter.

### ISSUES TO BE DECIDED (CIVIL LOCAL RULE 7-4(a)(3))

1.      Has Third Party Plaintiffs' First Amended Third Party Complaint improperly implead Plaintiff's principals as Third Party Defendants under Fed. R. Civ. P. 14 (a)?

2.      Does the First Amended Counterclaim fail to state a claim upon which relief may be granted for each of the nine causes of action?

///
///
///
///
///
///
///
///
///

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S AND THIRD PARTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIM AND FIRST AMENDED THIRD PARTY COMPLAINT**

Plaintiff NovelPoster ("Plaintiff"), and Third Party Defendants Matt Grinberg and Alex Yancher ("TPDs") submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the First Amended Counterclaim and Third Party Complaint ("FACC") filed by Defendants and Third Party Plaintiffs ("TPPs") (collectively, "Defendants").

## I.  INTRODUCTION

Not content to merely file counterclaims against Plaintiff NovelPoster, Defendants seek to personally join NovelPoster's owners. Defendants seek to jointly implead and file counterclaims against Plaintiff and TPDs. Impleader is improper and does not make sense in this case and a fatal flaw exists in each of the causes of action plead in the Corrected First Amended Counterclaim and Third Party Complaint ("FACC").

**Impleader:** TPPs seek to use Fed R. Civ. P. 14 (a) to implead Mr. Grinberg and Mr. Yancher into the instant matter. TPPs' impleading is improper for two reasons: First, TPPs do not allege causes of action against the TPDs that are dependent upon the outcome of Plaintiff's underlying claim against Defendants. A third party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative. Second, no relationship between TPPs and Plaintiff or TPDs has been alleged that would give rise to derivative liability, such as (1) an agreement for indemnity, (2) an agreement for subrogation, (3) breach of an express or implied warranty, or (4) contribution in the form of joint tortfeasors. None of these relationships is alleged, and no relationship giving rise to derivative liability exists.

**Counterclaims:** Even if the Court finds that impleader under Fed. R. Civ. P. 14 (a) is proper, however, the Counterclaim against Plaintiff and Third Party Complaint against Third Party Defendants should nevertheless be dismissed as each cause of action fails to state a claim upon which relief may be granted. First, the fraud cause of action alleges non-actionable statements that cannot be the basis for a fraud claim. Second, the false promise claim fails

2

1   because Defendants did not plead an element of the claim, even though this is the second time

2   they have plead this claim. Third, in the breach of contract claim, Defendants did not plead the

3   basic elements necessary to state a claim for formation of the alleged contract implied-in-fact that

4   they claim was breaced. This is the second time Defendants have plead this claim. Fourth, the

5   quantum meruit cause of action cannot stand as documents attached to the FACC fatally

6   contradict the allegations that TPPs were not compensated for their work and Defendants fail to

7   show that Plaintiff or TPDs requested they do any work. Fifth, the breach of the implied covenant

8   of good faith and fair dealing claim should fail along with the breach of contract claim since no

9   contract implied-in-fact has been established and the claim only alleges the same facts as the

10   breach of contract claim. Sixth, the conversion claim must fail as Defendants do not allege that

11   any personal property of theirs was subject to the alleged conversion except for an unidentified

12   sum of money. Seventh, the causes of action for untrue or misleading advertising and unfair

13   business practices fail because Defendants do not have standing and these laws are inapplicable to

14   this case. Finally, the cause of action for intentional interference with prospective economic

15   advantage fails because Defendants did not allege crucial elements and the claim is inapplicable

16   to this case. For all these reasons, the FACC should be dismissed with prejudice.

17            II.       STATEMENT OF MATERIAL FACTS AND ALLEGATIONS

18            This action involves a past business relationship between Plaintiff and Defendants that

19   resulted in a dispute regarding Defendants' invasion of Plaintiff's principals' privacy and right to

20   oversight of Defendants' work performed under the contract governing the parties' relationship.

21   Specifically, the Complaint alleges that Defendants locked NovelPoster's owners out of their own

22   e-commerce business in violation of the contract and continued to operate the company by

23   accessing NovelPoster's computer files, email accounts, and systems without permission after the

24   contract was terminated. In the course of operating NovelPoster in violation of the contract and

25   after the contract was terminated, Defendants invaded the privacy of NovelPoster's owners and

26   accessed protected computers without authority. Following two months of unfruitful negotiations

27   during which Defendants demanded a ransom of $10,000 to relinquish control of the e-commerce

28   company they had no authority to operate, lest they "lose their leverage," Plaintiff filed its

3

Complaint against Defendants Mark Javitch, Daniel Canfield, and Javitch Canfield Group on November 6, 2013. Dkt 1. Javitch Canfield Group is in default. Dkt. 14. The Complaint asserts the following causes of action: violations of the Computer Fraud and Abuse Act, Electronic Communications Privacy Act, California's Computer Crime Law, California's Invasion of Privacy Act, Conversion, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unfair Competition, and Unjust Enrichment.

On April 21, 2014, Defendants filed their Answer to Plaintiff's Complaint following unsuccessful motions to dismiss. As part of the same pleading, Defendants answered and asserted a Counterclaim and Third Party Complaint. Dkt. 48. Defendant's Answer is not in dispute here. Plaintiff contacted Defendants to inform counsel of the deficiencies in the pleading and offer him the opportunity to file an amended pleading. Defendants refused the offer. In response to the Answer, Counterclaim, and Third Party Complaint, Plaintiff filed a Motion to Dismiss. Dkt. 50-52. Instead of filing an opposition, Defendants filed a First Amended Counterclaim and Third Party Complaint. Dkt. 55. Shortly thereafter, Defendants filed a Notice of Errata and the Court ordered Defendants to file the corrected amended pleading, which Defendants filed on May 30, 2014. Dkt. 57-59. The pleading at issue in this Motion is Docket no. 59, the Corrected First Amended Counterclaim and First Amended Third Party Complaint ("FACC").

## III.   ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts showing that its "right to relief [rises] above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the Court must accept material factual allegations as true, pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; see also *Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations . . . and unwarranted inferences" are insufficient). In reviewing a motion to dismiss, the Court may not assume that a plaintiff can prove facts not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). Here, Defendants have still failed to allege some facts that

4

Plaintiff and TPDs pointed out in the last Motion to Dismiss must be alleged to survive. Defendants have already had the benefit of seeing Plaintiff's and TPD's arguments in the first Motion to Dismiss and have already filed an amended complaint and a corrected amended complaint in response.

Each of TPPs' claims fail because the Third Party Complaint lacks sufficient factual allegations that TPDs are derivatively liable to TPPs for the claims NovelPoster brought against TPPs. In addition, the Counterclaims fail for failure to plead the essential elements of the claims.

**A.** **The Third Party Complaint Should Be Dismissed For Failure To State A Claim That Mr. Grinberg and Mr. Yancher Are Derivatively Liable to Mr. Canfield and Mr. Javitch For NovelPoster's Claims Against Canfield and Javitch.**

An impleader claim is proper only to assert that the third party defendant is liable to the party impleading it – traditionally the defendant in the underlying case. Fed. R. Civ. P. 14 (a)(1). Courts limit impleader to those third parties who are derivatively liable to the defendant. *Banks v. City of Emeryville,* 109 F.R.D. 535, 540 (N.D. Cal. 1985). The liability of the third party defendant to the party that impleaded it must be for losses sustained by that party as a result of plaintiff's underlying claim – it cannot be for an unrelated liability. *Johnson v. Rank,* 110 F.R.D. 99, 101-102 (N.D. Cal. 1986). Impleader is a narrow procedural tool. The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third party defendant the liability asserted against defendant by the original plaintiff. *Stewart v. American Intern. Oil & Gas Co.,* 845 F. 2d 196, 200 (9th Cir. 1998.) It must be an assertion of the third party defendant's derivative liability to the third party plaintiff. *United States v. One 1977 Mercedes Benz,* 708 F. 2d 444, 452 (9th Cir. 1983). An impleader claim cannot be used to assert just any and all rights to recovery arising from the same transaction or occurrence as the underlying action. *Rank,* 110 F.R.D. 99 (N.D. Cal. 1986). Here, TPPs are simply asserting claims against Plaintiff's principals personally the claims which they can and do assert against Plaintiff as a counterclaim. The effect of naming Plaintiff's principals in their personal capacity is to give Defendants three bites at the same apple in discovery, since there is nothing Defendants could ask either Mr. Yancher or Mr.

Grinberg that would elicit a different answer than they could get from Plaintiff NovelPoster.[1]   The other effect is to attempt to make Plaintiff's principals liable for the harm that Defendants allegedly caused to Plaintiff.

**1.      Third Party Complaint Seeks To Improperly Implead An Existing Party.**

Fed. R. Civ. P. 14 (a) states "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." By the plain language of the statute, Rule 14 (a) only allows for impleader to apply to those who are not yet parties to the existing case. While Mr. Yancher and Mr. Grinberg are not parties to the case in their personal capacities, they have already admitted and TPPs have plead, that they are the two individuals that make up the NovelPoster partnership and in that sense, they are already participating in the litigation as Plaintiff's agents and thus are existing parties. *See* FACC ¶ 9. Liability in their capacities as TPDs means they will be paying a judgment for the harm that Defendants/TPPs caused to TPDs own company (Plaintiff). This Third Party Complaint turns the impleader tool on its head.

Keeping Mr. Yancher and Mr. Grinberg in the case in their personal capacities triplicates the discovery process and could bring about an absurd liability result. If Defendants' counterclaims against Plaintiff NovelPoster are successful, it is Mr. Yancher and Mr. Grinberg who will satisfy the judgment. If TPPs' Third Party Complaint claims are successful, it is Mr. Yancher and Mr. Grinberg who will satisfy a judgment for harm to their own company. It is Mr. Yancher and Mr. Grinberg who supply the answers to the discovery directed at Plaintiff NovelPoster. It is Mr. Yancher and Mr. Grinberg who are the persons most knowledgeable of the various aspects of NovelPoster and can be deposed on that basis.  The policy behind Rule 14(a) is not to give an opposing party a second (or here, third) bite at the apple by impleading the same people who are behind the other party and seeking to hold them liable for the harm they allege that the original defendants caused, rather, the policy is to bring into the litigation a true non-party whose liability is dependent on the original defendants' liability. If TPPs win their claims in the Third Party

---

[1] Defendants have propounded six sets of discovery and 245 requests directed at Plaintiff and 16 sets of discovery and 843 requests directed at TPDs.  The questions directed at Plaintiff are nearly the exact questions directed at TPDs.

Complaint, Plaintiff's owners will be held liable for the harm that Defendants/TPPs caused to their own company! The result is absurd. The Third Party Complaint should be dismissed in its entirety.

### 2. The Claims in The Third Party Complaint Are Not Dependent Upon The Plaintiff's Claims Against Defendants In The Underlying Matter.

The liability of the third party defendant to the party that impleaded it must be for losses sustained by that party as a result of plaintiff's claim; unrelated liability to the defendant is not the basis for impleader. *Rank,* 110 F.R.D. at 101-102. "Thus, a third party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative." *One 1977 Mercedes Benz,* 708 F. 2d at 452. The fact that the claims arise from the same transaction or occurrence as the underlying dispute is insufficient for an impleader claim. *Id;* see also *Rank,* 110 F.R.D. at 101-102.  The claims in the Third Party Complaint could be brought against TPDs in the absence of Plaintiff's claims and are therefore not dependent upon Plaintiff's claims.

Here, Third Party Plaintiffs have again relied on a naked assertion that

> "(1) TPDs are nonparties that may be liable for all or part of Plaintiff's claim against Defendants and TPPs; (2) TPDs' conduct that is the subject of this Third-Party Complaint arose out of the same transaction or occurrence as the claims by Plaintiff against Defendants and TPPs, as well as the claims by Defendants and TPPs against Plaintiff; and (3) the Third-Party Complaint shares a common nucleus of operative facts with the existing Complaint and the Counterclaim."

FACC ¶ 12. There is no further analysis of why "TPDs…may be liable for all or part of Plaintiff's claim against Defendants and TPPs." TPPs were aware of Plaintiff's argument that impleader is not proper where the claims merely arise from the same transaction or occurrence, yet they failed to allege any facts showing why impleader is proper beyond this naked assertion that TPDs may be liable for their own company's claim against Defendants. It is difficult to imagine a situation where the two partners who constitute the Plaintiff are liable for all or part of their own company's claim against Defendants. Considering that there is nothing either TPD did that was something other than an act on behalf of Plaintiff (which in turn can only act through TPDs), it is clear that the claims against TPDs are really just claims against Plaintiff and are therefore counterclaims.

TPPs have not alleged how any of the conduct alleged in any cause of action caused the

TPPs to harm Plaintiff. While each of the causes of action alleged may be related to the same transaction or occurrence, TPPs do not allege that the damages they claim in the Third Party Complaint arise because of losses they will sustain as a result of NovelPoster's claims against them. Their claims against TPDs are not dependent on the outcome of the Plaintiff's claims against Defendant. The claims TPPs allege could exist even in the absence of Plaintiff's claims or as a counterclaim against Plaintiff. All but one of these claims *already e*xists as a counterclaim.

For example, any alleged misrepresentation by Plaintiff or its owners (the TPDs), did not cause Defendants and TPPs to harm Plaintiff in the manner Plaintiff alleges in its Complaint. Rather, the alleged misrepresentation is merely a stand-alone assertion that Plaintiff and TPDs' actions harmed TPPs. It cannot be that TPDs' alleged misrepresentation (or false promise or breach of contract or conversion) caused TPPs to violate the computer crimes statutes alleged (or cause TPPs to unjustly enrich themselves by cross-marketing Plaintiff's products with the other goods they sell). It is a non-sequitur. Quite simply, the claims in the Third Party Complaint are counterclaims against NovelPoster and all but one are already alleged as counterclaims.

This same scenario applies to the other causes of action. Whether the cause of action is breach of contract, conversion, false promise, or any other of the claims alleged in the Third Party Complaint, none of the causes of action allege that TPDs are derivatively liable to Third Party Plaintiff for Plaintiff's underlying claim. As a matter of logic, the partners who make up Plaintiff NovelPoster simply cannot be derivatively liable for damages their company incurred at the hands of TPPs. Thus, Rule 14(a) is not the proper way to bring these claims. As TPPs do not and cannot allege that Plaintiff and TPDs are liable for all or part of Plaintiff's claims against Defendants, the Third Party Complaint must be dismissed with prejudice and the action should proceed with just Plaintiff and Defendants and the counterclaims, if any survive this motion.

### 3. No Legal Relationship Exists Between Third Party Plaintiffs And Third Party Defendants That Gives Rise To An Impleader Claim.

Even if the Court finds that the actions alleged in the Third Party Complaint are claims arising as a result of Plaintiff's underlying claims, and not just standalone counterclaims, TPPs still have not alleged that a legal relationship exists with Plaintiff or TPDs that would provide derivative

8

liability and give rise to an impleader claim. An impleader claim may not be used to assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action. *Rank*, 110 F.R.D. at 101-102. Courts limit impleader to those third parties who are derivatively liable to the defendant. *Banks*, 109 F.R.D. at 540.

There are four primary relationships that give rise to an assertion of derivative liability against a third party defendant: impleader, subrogation, warranty, and contribution. In the instant matter, because none of these derivative liability relationships are alleged to exist between TPPs and Plaintiff and TPDs (nor would there be any factual support for such a proposition) TPPs' impleader claim fails, and the Third Party Complaint should be dismissed with prejudice.

### a). No Agreement For Indemnification Exists Between The Third Party Defendants And TPPs.

The classic, traditional example of an impleader claim exists when the third party defendant is obligated by contract to indemnify the defendant against the liability upon which the plaintiff has sued. Indemnity exists when one individual takes on the obligation to pay for any loss or damage that has been or might be incurred by another individual. If the claim is within the scope of the agreement to indemnify the defendant, then impleader is proper. *See Brogle v. South Carolina Elec. and Gas Co.,* 509 F. 2d 1216, 1217 (4th Cir. 1975). TPPs have not alleged (and cannot allege) that any agreement between Plaintiff or TPDs and Defendants exists wherein Plaintiff or TPDs agreed to indemnify Defendants for any harmful actions they caused to Plaintiff. As such, any impleader theory resting upon indemnification necessarily fails.

### b). No Agreement For Subrogation Exists Between Third Party Defendants And Third Party Plaintiffs.

Subrogation is another common method of establishing an impleader claim. Subrogation is the circumstance when one party assumes the legal rights for whom expenses or a debt has been paid. *See Banks Tower Communications v. Home Ins. Co.,* 590 F. Supp. 1038 (E.D. Pa. 1984). For example, subrogation occurs when an insurance company, which pays its insured client for injuries and losses, sues the party that the injured person contends caused the damages to him. TPPS have not alleged, and cannot allege, that any agreement between Plaintiff or TPDs and

9

Defendants exists wherein Plaintiff or TPDs agreed to assume the legal rights and responsibilities of TPPs for any harm they caused to Plaintiff. Any impleader theory resting on subrogation fails.

### c).      No Breach of an Express Or Implied Warranty Exists.

The breach of an express or implied warranty may also give rise to an impleader claim. It is not alleged, and cannot be alleged, that any warranty exists that would give rise to liability.  As such, any impleader theory resting upon implied or express warranty necessarily fails.

### d).      The TPDs And TPPs Are Not Joint Tortfeasors.

In addition to indemnity, contribution is perhaps the most widespread use of impleader. Contribution is only required from a joint tortfeasor. *Stewart,* 845 F. 2d at 200. To establish that a third party defendant and third party plaintiff/original defendant are joint tortfeasors, the third party plaintiff is required to show that the third party defendant is liable to the original plaintiff for the same harm that the third party plaintiff/original defendant is liable for. *Id.*   TPPs have not alleged that TPDs are joint tortfeasors – that TPDs acted in concert with Defendants to cause harm to NovelPoster, or that TPDs acted in such a way that made them liable to Plaintiff for the same harms that Plaintiff alleged against Defendants. As TPPs have not alleged, and cannot allege, a legal relationship between them and Plaintiff or TPDs that would give rise to an impleader claim under Rule 14 (a), the Third Party Complaint should be dismissed with prejudice.

## B.      The Individual Causes Of Action Alleged Fail To State Proper Claims, Whether Alleged as a Counterclaim or a Claim in the Third Party Complaint.

Even if the Court finds that impleader under Fed. R. Civ. P. 14 (a) is proper, the First Amended Counterclaim and Third Party Complaint ("FACC") should nevertheless be dismissed as each of the causes of action fail to state a proper claim upon which relief may be granted.

### 1.      The Cause of Action for "Fraud and Conspiracy to Commit Fraud-Intentional Misrepresentation" Must Fail

**Conspiracy.** A claim for conspiracy to commit fraud necessarily involves alleging a conspiracy. At a minimum, Defendants would have had to allege that someone was aware that someone else planned to do some wrongful act and that the person agreed with the other person and intended that the wrongful act be committed. California Civil Jury Instructions ("CACI") 3600;

10

1  *Mosier v. Southern California Physicians Insurance Exchange,* 63 Cal.App.4th 1022, 1048 (1998).

2  No such allegations appear in this FACC. Any cause of action for Conspiracy to Commit Fraud-

3  Intentional Misrepresentation should be dismissed.

4      **Fraud/Misrepresentation.** To make out a claim for fraud, the allegedly fraudulent

5  statements must be statements of fact. "Generally, actionable misrepresentation must be one of

6  existing fact; 'predictions as to future events, or statements as to future action by some third party,

7  are deemed opinions, and not actionable fraud …'" *Cohen v. S&S Construction Co.,* 151

8  Cal.App.3d 941, 946 (1983). "Puffing," or sales talk, is generally considered opinion, unless it

9  involves a representation that a product is safe." *Hauter v. Zogarts,* 14 Cal.3d 104 (1975). Many of

10  the statements that Defendants claim are false are not statements of fact at all, but rather sales talk,

11  forward looking statements, and proposed contract terms during a negotiation. Furthermore,

12  Defendants' fraud claims are belied by the exhibits attached to the complaint.

13      It is well settled that plaintiffs may plead themselves out of court by attaching exhibits

14  inconsistent with their claims: "(w)hen a written instrument contradicts allegations in a complaint to

15  which it is attached, the exhibit trumps the allegations." *Sprewell v. Golden State Warriors,* 266 F.

16  3d 979, 988 (9th Cir. 2001) (The Ninth Circuit affirming a Fed. R. Civ. P. 12 (b)(6) motion where an

17  arbitration award was attached to the plaintiff's complaint that contained allegations that fatally

18  undermined the plaintiff's claim). Indeed, "[i]f a complaint is accompanied by attached documents,

19  the court is not limited by the allegations contained in the complaint." *Durning v. First Boston*

20  *Corp.,* 815 F. 2d 1265, 1267 (9th Cir. 1987).

21      Paragraph 98 a. contains statements from the advertisement placing NovelPoster for sale on

22  a third party business broker's website. This is all sales talk and considered opinion that is not

23  actionable fraud. Paragraph 98 b., 98 c., and 98 g. are again statements of sales talk, since at one

24  point the parties were discussing the possibility of Defendants purchasing NovelPoster and

25  Defendants ultimately declined to do so. FACC ¶ 23-24. Moreover, Defendants admit that they

26  investigated these "sales talk" statements. Exhibit R, attached to and incorporated in the FACC,

27  shows that Defendant CANFIELD wrote to Mr. Yancher on May 7, 2013 at 7:53 pm "We have not

28  had a chance to look over all the NovrlPoster material and numbers, but it looks good so far." [sic].

11

The FACC shows that Defendants had access to "all the NovrlPoster material and numbers," at least began vetting those materials and numbers, and then engaged in operating NovelPoster. FACC ¶ 50-51. When Plaintiff "attempted" to terminate the contract, "Javitch responded by email rejecting termination as improper" and "stated that The Javitch Group LLC would continue to operate NovelPoster in an attempt to mitigate their damages." FACC 75, 77, Exhibit X to FACC. If indeed those "sales talk" statements were fraudulent, Defendants would have gladly ceased the relationship with Plaintiff when Plaintiff terminated the contract, and possibly sued for damages. To allege otherwise defies logic and basic contract principles. Defendants have plead themselves out of court on this claim.

Paragraphs 98 d., 98 f., and 98 i. are opinions and forward looking statements, respectively, and cannot be actionable fraud.

Paragraphs 98 e., 98h., and 98j. are all statements made during the course of a discussion about negotiating terms of a contract. Specifically, paragraph 98 j. references a part of Plaintiff's Complaint which says that in March 2013 the parties "agreed to meet and discuss forming a business relationship … to take over the operations of NOVELPOSTER until it could be sold." An agreement to discuss a future business relationship and the initial terms from the early discussions cannot amount to fraud since they are not statements of fact at all, they are not even statements of opinion. These are simply not statements that constitute actionable fraud- the statements only show a negotiation that ultimately resulted in a contract implied-in-fact (according to Defendants). The mere failure to uphold agreements in a contract is a breach of contract, not fraud. This cause of action should be dismissed entirely.

### 2.    The Cause of Action for False Promise Must Fail

In order to make out a claim for false promise, Defendants have to allege that Plaintiff or TPDs made a promise that was important to the transaction which Plaintiff or TPDs did not intend to perform when the promise was made. CACI 1902; *Conrad v. Bank of America*, 45 Cal.App.4th 133, 157 (1996). Defendants simply allege that the promises made were not kept, not that there was never an intention to perform the promise in the first place. A mere failure to keep a promise is a breach of contract, not a false promise akin to fraud. This is the second time Defendants have

12

alleged this cause of action without alleging that Plaintiff or TPDs did not intend to perform the promise when made (even though the last motion to dismiss spelled it out). Clearly Defendants cannot allege the last element. As this cause of action is missing an essential element, it must fail.

### 3. The Cause of Action for Breach of Contract Must Fail

In the very first paragraph of their Answer/Counterclaim/Third-Party Complaint, Defendants affirmatively state, "[t]he parties did not enter into a contract." Dkt. 48, 2:6-7. In the FACC, Defendants allege that the parties' "business arrangement was not memorialized by a contract." FACC ¶113. Defendants then go on to plead that "the parties did perform duties according to their business relationship, and thus a "contract implied-in-fact was created." *Id.* The next four paragraphs go on to list what appear to be just portions of the "contract implied-in-fact," as each of those paragraphs begins "Among these duties of Plaintiff and TPDs. . . ." FACC ¶114-117. Courts are not bound to accept as true allegations that are legal conclusions, even if case in the form of factual allegations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.,* 693 F. 3d 1333 (11th Cir. 2012). Defendants have alleged only a conclusory statement that a contract implied-in-fact was created without alleging facts to show how it was created or what the terms of that implied contract are.

Nowhere do Defendants allege how or why those duties supposedly became a part of the "contract implied-in-fact," nor do they allege what Defendants' or Plaintiffs' duties were under the "contract implied-in-fact," nor do they allege that they have plead the entirety of the contract implied-in-fact. Plaintiff and TPDs are left to guess what might or might not be a part of this supposed contract implied-in-fact. Defendants have not alleged the necessary element that any of the conduct that created the contract implied-in-fact was intentional. CACI 305; *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal.App.3d 268, 275 (1977). Defendants have not alleged that each party (or any party for that matter) knew, or had reason to know, that the other party would interpret the conduct as an agreement to enter into a contract. *Id.* The FACC does not come close to alleging the existence of a contract implied-in-fact. There can be no breach if there is no contract. Since this is the second time Defendants have failed to properly plead the existence of a

13

1    contract implied-in-fact, this cause of action must be dismissed without leave to amend.

2          **4.        The Cause of Action for Quantum Meruit Must Fail**

3          Defendants' claim for quantum meruit fails because Defendants do not allege, and cannot

4    allege, the basic required elements of this cause of action. Defendants would have had to allege that

5    (1) Plaintiff or TPDs requested, by words or conduct, that Defendants perform services or deliver

6    goods for the benefit of Plaintiff or TPDs; (2) that Defendants performed the services or delivered

7    the goods as requested; (3) that Plaintiff or TPDs have not paid Defendants for the services or

8    goods; and (4) the reasonable value of the goods or services that were provided. CACI 371. At the

9    very least "[t]o recover on a claim for the reasonable value of services under a quantum meruit

10   theory, a plaintiff must establish both that he or she was acting pursuant to either an express or

11   implied request for services from the defendant and that the services rendered were intended to and

12   did benefit the defendant." *Ochs v. PacifiCare of California,* 115 Cal.App.4th 782, 794 (2004)

13   (internal citation omitted, overruled on other grounds).

14          **a).        Quantum Meruit for Services Performed for NovelPoster**

15          Defendants do not dispute that they were paid at least 80% of NovelPoster's revenue from

16   the time the parties' business relationship began. Indeed, Exhibit V to the FACC is a June 6, 2013

17   (12:50 PM) email where Mr. Yancher asks Mr. Canfield if he (Yancher) could pick up

18   NovelPoster's 20 percent revenue check that day.  Mr. Canfield responds) that they "had sales of

19   $1,934 so we will cut the check for $386.80 to Alex.Yancher@gmail.com over Paypal."  Twenty

20   percent of $1934.00 is $386.80.  Exhibit X to the FACC shows that in a June 14, 2013 (2:42 PM)

21   email responding to NovelPoster's termination of the agreement, Mr. Javitch states, "[w]e entered

22   into a royalty agreement in which we have full operational control over NovelPoster subject to the

23   payment of the agreed upon royalty fee, which we paid in full as requested by the agreement."

24   Quite plainly, Mr. Javitch fully states that he was compensated for his work per the agreement and

25   he gave Plaintiff was it was owed. Exhibit Y lists the various payment transfers to Mr. Yancher

26   from Defendants in accordance with the 20 percent "royalty fee" in the agreement. In fact, the

27   August 2013 payment has a subject line entitled, "August 2013 Full Royalty Payment."  Thus,

28   Defendants have pled that they received compensation for their operation of NovelPoster, so they

14

Notice of Motion and Motion to Dismiss First Amended Counterclaim and  First Amended Third Party Complaint Memorandum of
Points and Authorities in Support of Plaintiff's  Motion to Dismiss - Case No. 3:13-cv-056186 WHO

1    have not alleged facts that can satisfy the third element of the claim for compensation for the work

2    they performed for NovelPoster.

3            Defendants also have not alleged facts to satisfy the first element of the claim- that Plaintiff

4    or TPDs requested they perform services- since they allege they "rejected" the termination of the

5    contract. As shown in Exhibit W to the FACC, Plaintiff did not want Defendants to perform any

6    services for NovelPoster after June 14, 2013 when Plaintiff terminated the contract. There can be no

7    claim for quantum meruit where the pleading shows that neither Plaintiff nor TPDs requested that

8    Defendants perform services for Plaintiff or TPDs, and in any event, Defendants were fully

9    compensated for the work they did perform for Plaintiff (even when that work was against

10   Plaintiff's will). There is no claim for quantum meruit stated here.

11                    **b).      Quantum Meruit for Time Spent Defending this Lawsuit**

12           Defendants complain that they have not been compensated for the reasonable value of the

13   time they have spent defending the very lawsuit in which they have turned themselves into

14   plaintiffs. They allege that they are entitled to recovery under a quantum meruit theory because they

15   could have spent their time doing work for paying clients instead of defending this lawsuit. FACC

16   21:8-10, ¶121-128. These allegations that form the basis for the quantum meruit claim fail to satisfy

17   three of the four elements of a quantum meruit claim. First, the time Defendants spend defending

18   this lawsuit is not a good or service for the benefit of Plaintiff or TPDs that Plaintiff or TPDs

19   requested Defendants deliver or perform. Second, since the time Defendants have spent defending

20   this lawsuit is not a good or service that benefits Plaintiff or TPDs and was requested by Plaintiff or

21   TPDs, there has been no such performance or delivery of goods that would meet the requirements

22   of a quantum meruit claim. Third, Defendants have not alleged what they claim is the reasonable

23   value of the goods delivered or services provided, even assuming that the services provided or

24   goods delivered can form the basis for a quantum meruit claim. This cause of action must be

25   dismissed without leave to amend.

26           **5.      The Claim for Breach of The Implied Covenant Of Good Faith and
                        Fair Dealing Must Fail**

27

28           Defendants have not met their burden to allege facts sufficient to show that a contract

15

Notice of Motion and Motion to Dismiss First Amended Counterclaim and  First Amended Third Party Complaint Memorandum of
Points and Authorities in Support of Plaintiff's  Motion to Dismiss - Case No. 3:13-cv-056186 WHO

1   implied-in-fact was formed. See page 13-14 of this Motion. If the cause of action for breach of

2   contract is to be dismissed, this cause of action must be dismissed along with it. Assuming, without

3   conceding, that the cause of action for breach of contract is sufficiently plead, Defendants and TPPs

4   have not plead facts sufficient to state a cause of action for breach of the implied covenant of good

5   faith and fair dealing. A mere breach of contract, without more, cannot be the whole basis for

6   breach of the implied covenant of good faith and fair dealing.  *Guz v. Bechtel National, Inc.*, 24

7   Cal.4th 317, 352 (Cal. 2000). Here, Defendants have alleged only the exact same facts that they

8   alleged in the cause of action for breach of contract. Compare FACC ¶133 with ¶ 116-117.

9          Pre-contractual and post-contractual activities cannot form the basis for a claim for breach

10   of the implied covenant of good faith and fair dealing. The covenant "is limited to assuring

11   compliance with the express terms of the contract, and cannot be extended to create obligations not

12   contemplated by the contract," including party actions before and after the life of the contract.  *See*

13   *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004). Here, Defendants

14   allege that a statement one of Plaintiff's principals made in an email regarding his own choice not

15   to hire counsel before any contract was finalized and Plaintiff's actions after the contract was

16   terminated- including filing this lawsuit- make out a cause of action for breach of the covenant of

17   good faith and fair dealing implied in the alleged contract implied-in-fact. FACC ¶133, 134.  In

18   Paragraph 134, Defendants allege that a breach of the covenant occurred by Plaintiff "harassing,

19   obstructing, and interfering with Defendants' and TPPs' operation of the NovelPoster business."

20   FACC 23: 4-5. Defendants cannot be heard to complain of Plaintiff attempting to enforce its rights

21   to stop Defendants' self-help actions that fly in the face of contract law. In Exhibit X, Defendant

22   JAVITCH rejected Plaintiff's termination of the contract as improper and "warned Grinberg and

23   Yancher from interfering with the operations of NovelPoster." See also FACC ¶ 75. There is no

24   authority to support a party's ability to "reject" the termination of a contract as improper and

25   continue performing as though the contract is still operative while the other party protests loudly.

26   Even if Plaintiff's termination of the contract were improper, Defendants' remedy would have been

27   to sue for damages, not continue to operate Plaintiff's business against its will and to its owners'

28   exclusion for seven more months. A terminated contract is a terminated contract. Period. None of

1  the conduct alleged in this cause of action can possibly give rise to liability as a matter of law. This

2  cause of action must be dismissed.

3  **6.      The Cause of Action for Conversion Must Fail**

4  The conversion cause of action must be dismissed because it fails to allege how TPPs'

5  personal property has been wrongfully retained by Plaintiff or TPDs. A cause of action for

6  conversion lies where a plaintiff possessed *personal property t*hat the defendant took without

7  plaintiff's consent, which resulted in harm to plaintiff which defendant was a substantial factor in

8  causing. CACI 2100. Conversion is the wrongful transfer, use, or withholding of personal property

9  in which another has an unconditional legal interest. See *Del E. Webb Corp. v Structural Materials*

10  *Co.* 123 Cal.App.3d 593, 610 (Cal. App. 2d Dist. 1981). "'Money cannot be the subject of a

11  [claim] for conversion unless there is a specific, identifiable sum involved… A 'generalized claim

12  for money [is] not actionable as conversion.' " *PCO, Inc. v. Christensen, Miller, Fink, Jacobs,*

13  *Glaser, Weil & Shapiro, LLP,* 150 Cal.App.4th 384, 395 (2007).

14  Defendants' cause of action for conversion must fail because they have not alleged that

15  Plaintiff or TPDs possessed and took without Defendants' consent any item of *personal property in*

16  *which they had an unconditional legal interest.* In paragraph 141, Defendants allege they "invested

17  heavily in creating an e-commerce website for the business, arranging for a warehouse in Kentucky,

18  developing new channels for generating sales, developing marketing information, and generating

19  customer prospects for the business." Then they allege that Plaintiff or TPDs "constructively forced

20  Defendants and TPPs to cease operation of NovelPoster." FACC ¶ 142. In paragraph 143, they

21  allege that Defendants and TPPs "had a right to retain a portion of those revenues as their own

22  personal property." Finally, in paragraph 144, Defendants allege that Plaintiff and TPDs

23  "wrongfully converted and retained these revenues and the resources that were generated by

24  Defendants and Third Party Plaintiffs."

25  Defendants do not clearly state what "revenues" they allege they had a right to retain in

26  paragraph 143 of the FACC. These "revenues" are not specific enough to constitute a claim for

27  conversion.  The moving party assumes that Defendants are referring to the agreement that they

28  would retain 80% of NovelPoster's revenue as compensation for their efforts in operating

17

1   NovelPoster. If that is indeed the allegation, Defendants have plead themselves out of court by

2   attaching Exhibits V, X, and Y which show that they were compensated in full for the services they

3   performed. To the extent that Defendants have alleged they have been compensated in full for their

4   work, there can be no conversion and this cause of action must fail.

5          If Defendants are alleging that Plaintiff or TPDs have converted NovelPoster's revenue *after*

6   Defendants stopped operating the company, this cause of action must fail because Defendants do

7   not and cannot allege that NovelPoster's revenue constitutes *their* personal property. NovelPoster's

8   revenue is NovelPoster's personal property from the moment the contract was terminated (June 14,

9   2013) and certainly after Defendants admit they returned NovelPoster to its owners. There can be

10  no conversion of personal property that belongs to NovelPoster alone.

11         Finally, to the extent that this cause of action is directed at the "resources" Defendants

12  developed *for NovelPoster:* "investing heavily in creating an e-commerce website for the business

13  [NovelPoster], arranging for a warehouse in Kentucky [for NovelPoster], developing new channels

14  for generating sales [for NovelPoster], developing marketing information [for NovelPoster], and

15  generating customer prospects *for the business [NovelPoster],"* these "resources" are not subject to

16  a claim of conversion because they are not Defendants' personal property, but are Plaintiff's

17  property- if these "resources" are property at all. FACC ¶141, emphasis added.

18         "Investment" in a "website for the business [NovelPoster]" is not personal property of

19  Defendants. If investment in a website is anyone's personal property, it is personal property of

20  NovelPoster which was created by Defendants for NovelPoster while they were operating

21  NovelPoster pursuant to the contract between the parties and were compensated for (as admitted in

22  Exhibits V, X, and Y). Accordingly, Defendants have not alleged, and cannot allege, that Plaintiff

23  or TPDs have wrongfully retained any personal property that belonged to Defendants.

24         "Investing" in "arranging for a warehouse in Kentucky" is not anyone's personal property-

25  such an act was within the scope of Defendants'/TPPs' duties to operate NovelPoster for which

26  they admit they were compensated, and in any event is not property at all. Even if Defendants can

27  allege that they own the warehouse in Kentucky (which they do not), this cause of action as to this

28  piece of "property" must fail as it simply does not qualify as "conversion" since it is not personal

18

1     property and if it is personal property, it is not Defendants' personal property.

2          Defendants allege conversion in that Plaintiff or TPDs retained the "resource" of "investing"

3     in "developing new channels for generating sales, developing marketing information, and

4     generating customer prospects for the business." Again, Defendants' actions of investing in

5     developing new sales channels, developing marketing information, and new customer prospects are

6     simply not property that can be the subject of a cause of action for conversion. New sales channels,

7     customer prospects, and marketing information are ideas and information that belong to

8     NovelPoster which Defendants developed while operating NovelPoster pursuant to a contract which

9     they admit in this same pleading they received compensation for. These things are not personal

10    property, and if they are anyone's personal property, they are NovelPoster's personal property

11    pursuant to the contract that existed between the parties.

12         The only item alleged that could possibly be personal property is the e-commerce website

13    that Defendants allege they developed for NovelPoster. However, they do not allege that Plaintiff or

14    TPDs used or are using that website after Defendants relinquished control of the business. Indeed,

15    NovelPoster did not use the e-commerce website that Defendants developed for the business, which

16    is why Defendants have not alleged as much. The cause of action for conversion must fail in its

17    entirety as none of the things Defendants allege were converted are personal property that belonged

18    to Defendants or were wrongfully retained by Plaintiff or TPDs.

19         **7.    The Causes of Action for Untrue or Misleading Advertising and Unlawful
              Business Practices Must Fail**

20

21         Defendants' Seventh Cause of Action for Untrue or Misleading Advertising in violation of

22    California Business and Professions Code Section 17500 (False Advertising Law, "FAL") fails to

23    state a claim, and should be dismissed without leave to amend.  The FACC's Eighth Cause of

24    Action for Unlawful Business Practices in violation of California Business and Professions Code

25    Section 17200 is based solely upon the alleged violation of the FAL.  Thus, the Eighth Cause of

26    Action also fails. FRCP 9(b)'s heightened pleading standards apply to all Unfair Competition Law

27    and False Advertising Law claims that are grounded in fraud. *Kearns v. Ford Motor Co.,* 567 F.3d

28    1120, 1124 (9th. Cir. 2009).  Since the FACC claims the advertisements are misrepresentations, the

19

Notice of Motion and Motion to Dismiss First Amended Counterclaim and  First Amended Third Party Complaint Memorandum of
Points and Authorities in Support of Plaintiff's  Motion to Dismiss - Case No. 3:13-cv-056186 WHO

1  heightened pleading standard applies.  The FACC fails to meet this standard because the claims are

2  based on contradictions and conclusions.

3            **a).**     **Defendants  Lack Standing to Bring this Cause of Action Because the FACC Demonstrates They Were Not Injured as a Result of the Alleged False dAdvertisement.**

4

5       The allegation that Defendants have standing to bring these claims because they were

6  injured as a result of the advertisement(s) is contradicted by the facts asserted in the FACC showing

7  there was no sale of the business as advertised.  [A] private plaintiff has standing to bring an FAL

8  action if the plaintiff "has suffered injury in fact and has lost money or property as a result of the

9  unfair competition." Cal. Bus. & Prof. Code § 17535. "[A]ctual reliance is required to have standing

10  to sue under the FAL. … To establish actual reliance, 'plaintiff is not required to allege that [the

11  challenged] misrepresentations were the sole or even the decisive cause of the injury-producing

12  conduct,' however, 'a plaintiff must show that the misrepresentation was an immediate cause of the

13  injury-producing conduct.'" *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1026, 2012 U.S. Dist.

14  LEXIS 97012, 31-32, (N.D. Cal. 2012).

15       According to the FACC, Defendant CANFIELD received the advertisement and

16  "[s]ubsequently declined to purchase the business." FACC ¶ 23.  After approximately one month of

17  negotiations, Defendant CANFIELD wrote, "We haven't had a chance to look over all the

18  NovrlPoster [sic] materials and numbers, but it looks good so far."  FACC ¶ 50.  Later on, the

19  parties agreed to enter into a business relationship involving the operation of the business.  FACC

20  ¶49, 50.  The FACC does not allege that the parties agreed to a sale of the business.  FACC ¶1-184.

21  In fact, Defendants decided not to purchase the business following the review of the advertisement.

22  Thus, Defendants did not purchase what was advertised.   Since there was no sale of the business,

23  the FACC alleges no injury as an immediate result of the advertisement(s).  Defendants negotiated

24  an agreement that was completely different from the advertisement. FACC ¶49, 50.  Because they

25  had the opportunity to review materials and verify the numbers in the advertisement, Defendants

26  did not rely upon the statements in the advertisement for the sale of the business.  Since Defendants

27  did not suffer an injury as an immediate result of the advertisement, they lack standing to bring the

28  Seventh and Eighth Causes of Action and both fail.

**b).** **The FAL Does Not Provide Protection for the Sale of a Business Between Two Sophisticated Parties.**

The FACC introduces the novel argument that the advertisement(s) for the sale of the NovelPoster business on the internet violated the FAL, a consumer protection statute. The advertisement for sale of a business between two sophisticated parties does not warrant the statute's protection. California Business and Professions Code Section 17500 protects consumers from false and misleading statements in advertising. This concept is highlighted by the "reasonable consumer standard" that is applied to determine whether the advertisement is false or misleading. The "reasonable consumer standard" requires a plaintiff to show "potential deception of consumers acting reasonably under the circumstances… California courts consistently have looked to the ordinary consumer within the larger population." *Hill v. Roll Internat. Corp.,* 195 Cal. App. 4th 1295, 1304 (Cal. App. 1st Dist. 2011).

Here, Defendants cannot show that a reasonable consumer would have been deceived by the purported false statements because an ordinary consumer does not purchase a business. It follows that an ordinary consumer would not consider the statements regarding business income, sales, cashflow, EBITDA, inventory, and wholesale buyers. The advertisements are directed towards the potential purchaser of a business, as demonstrated by the websites on which the advertisements were posted ("BizBuySell.com, BusinessForSale.com, BusinessBroker.net, BizQuest.com, BizEquity.com, Acquireo.com, BusinessNation.com, and BizBen.com"). FACC ¶ 149. Defendants cannot rely on the reasonable consumer standard because they were not acting in that capacity when they negotiated the contract to operate NovelPoster. They were sophisticated businesspersons who engaged in the negotiation of a business relationship without purchasing the business. The ordinary consumer standard does not apply. Thus, the advertisements in question should not be afforded protection under the consumer protection FAL statute.

**c).** **The FACC States Only Conclusions as to the Alleged Falsity of the Advertisements.**

Defendants have the burden of proving the advertising is false or misleading. *National*

21

*Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.,* 107 Cal. App. 4th 1336, 1342, (Cal. App. 2d Dist. 2003). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.. . Vague or highly subjective claims about product superiority amount to non-actionable puffery; only 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Cullen v. Netflix, Inc.,* 880 F. Supp. 2d 1017, 1025-1028 (N.D. Cal. 2012).

Defendants do not meet the heightened pleading standard requiring them to explain the "who, what, where, when and why" of the alleged falsity of the advertisements.  Defendants list eight statements in the advertisement(s), including statements regarding: past sales, gross income, cashflow, EBITDA, inventory, the percentage of wholesale buyers, and a statement that the 2012 sales were based on "organic demand from positive press from Kickstarter, New York Magazine, DailyCandy, and many others." FACC ¶151.  Defendants only state "on information and belief, these statements are false and/or misleading."  The FACC fails to explain how these statements are false or misleading and thus facially, Defendants have not met the pleading standard.

The FACC states that the advertisements include a statement that "NovelPoster 'expects 2,600-unit sales of $120,000 in 2013;" however, "based on TPPs' operation of Novelposter, it is false that Novelposter 'expects 2,600-unit sales of $120,000 in 2013.'"  The FACC does not allege facts in support of the allegation that these statements were false and misleading *at the time they were made*. Rather, the FACC pleads facts indicating that these statements were true: Third Party Defendant YANCHER claimed, "I think if $30K was spent on ads, we'd do around $150K in sales." FACC ¶32.  It was not until Defendants were operating the company that these sales were not realized.   Furthermore, the statements are subjective and forward-looking claims about expected sales and are not actionable.  Thus, Defendants fail to state a cause of action.

### d).   Defendants Request Damages To Which They are Not Entitled as a Matter of Law.

Defendants "on behalf of the general public, seek restitution and disgorgement of all earnings, profits, compensation and benefit obtained by Plaintiff and TPDs as a result by means of practices unlawful under Business & Professions Code § 17500 et seq."  In doing so, Defendants

22

1   seek damages which are impermissible under the UCL and FAL.

2       In *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134 (2003), the California

3   Supreme Court, in the context of a case brought under Section 17200, decided that disgorgement of

4   profits that is not restitutionary in nature is not an available remedy in an individual action under

5   the UCL. *Korea Supply Co.,* 29 Cal.4th at 1152. The reasoning of the *Korea Supply* court applies to

6   an action under Section 17500.  *Shersher v. Superior Court,* 154 Cal.App.4th 1491 (Cal. App. 2d

7   Dist. 2007).   "[T]he plaintiff must be a 'person in interest' (that is, the plaintiff must have had an

8   ownership interest in the money or property sought to be recovered), and the defendant must have

9   acquired the plaintiff's money or property 'by means of … unfair competition' or some other act

10  prohibited by the UCL or the false advertising law." *Id.* at 1494.

11      In this case, Defendants are seeking impermissible compensatory damages masked as

12  restitution.   Defendants declined to purchase the business.   The FACC does not allege that

13  Defendants transferred funds in which they had an ownership interest to Plaintiff or TPDs. The only

14  transfer of funds discussed in the FACC are the "royalty payments" for the months of September,

15  October, November, December and January, which Defendants are holding in escrow.  FACC ¶85.

16  These payments allegedly account for 20 percent of the sales while Defendants were running

17  NovelPoster while Plaintiff still owned NovelPoster.  Thus, Defendants did not have an ownership

18  interest in money or property acquired by Plaintiff or TPDs.

19      Furthermore, Defendants improperly request attorneys' fees.  As a general rule, attorney

20  fees are not recoverable in an action for unfair competition brought under Business and Professions

21  Code §17203. *Shadoan v World Sav. & Loan Ass'n,* 219 Cal.App.3d 97, 108 n7 (Cal. App. 1st Dist.

22  1990). However, the trial court has discretion to award attorney fees under the private attorney

23  general doctrine (Cal. Code Civ. Proc. §1021.5) if the action results in the enforcement of an

24  important right affecting the public interest, a significant benefit has been conferred on the general

25  public or a broad class of persons, and the necessity and financial burden of private enforcement

26  transcends the litigant's personal interest in the case. *Hewlett v Squaw Valley Ski Corp.,* 54

27  Cal.App.4th 499, 543 (Cal. App. 3d Dist. 1997).   Attorney fees are only available under CCP

28  §1021.5 if the court determines that the action is "not 'frivolous, unreasonable or groundless.'"

23

*Graham v DaimlerChrysler Corp.,* 34 Cal.4th 553, 575 (2004).

In this case, attorneys' fees are not warranted because removal of the advertisement for the sale of a business will not confer a significant benefit to the general public. Since there is only one business for sale, the advertisements do not affect a broad class of persons. There is no necessity of private enforcement in this case. For the reasons outlined above, these causes of action are groundless. Therefore, Defendants' request for attorneys' fees is improper. Both the seventh and eighth causes of action should be dismissed in their entirety without leave to amend because Defendants do not and cannot allege facts that would entitle them to relief.

**8.      The Cause of Action for Intentional Interference with Prospective Economic Advantage Must Fail**

Defendant allege that TPDs, as agents of the partnership NovelPoster, intentionally interfered with the business relationship between NovelPoster and Defendants. This argument is not supported by law. A business entity can only act through its agents. Since TPDs were acting as agents of NovelPoster when they terminated the contract, they did not disrupt Defendants' economic relationship with NovelPoster. Thus, this cause of action fails.

Furthermore, "it must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." *Youst v. Longo,* 43 Cal.3d 64, 71 (1987). The allegations elsewhere in the FACC belie any intimation that the contract had a probability of economic benefit to Defendants, since they allege that the sales figures were lower than expected and the expense figures higher than expected. FACC ¶ 76. The cause of action for fraud also alleges that the contract with NovelPoster was not nearly as valuable as Defendants thought it was and that they were fraudulently lured into the contract. FACC ¶¶98-105. Thus, Defendants have not alleged any economic relationship that would benefit them, as is required for this cause of action. Additionally, NovelPoster was not continuing the economic relationship. Therefore, the alleged economic advantage from the operation of the NovelPoster business was not reasonably probable.

"[A]n essential element of the tort of intentional interference with prospective business advantage is the existence of a business relationship with which the tortfeasor interfered.

1  Although this need not be a contractual relationship, an existing relationship is required." *Roth v.*

2  *Rhodes,* 25 Cal.App.4th 530, 546 (1994). The continuing relationship stemmed from Defendants

3  "rejection" of Plaintiff's termination of the contract. As no theory of contract law supports

4  Defendants' ability to reject a contract termination- whether proper or improper- the FACC does

5  not allege, and cannot allege, that any valid business relationship was presently existing at the time

6  Plaintiffs or TPDs "interfered" with Defendants' operation of NovelPoster.

7       Finally, to establish a cause of action for interference with prospective economic advantage,

8  a plaintiff must allege that "the defendant engaged in an independently wrongful act in disrupting

9  the relationship." *See SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.*, 148 Cal. App.

10  4th 663, 673 n.7 (2007).  An act is independently wrongful if it is proscribed by some

11  "constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.*  The

12  FACC does not allege an independently wrongful act on the part of TPDs.  Thus, this cause of

13  action must fail. This cause of action makes no sense in the context of this litigation and Defendants

14  have contradicted their own allegations elsewhere in the FACC. The ninth cause of action should be

15  dismissed in its entirety without leave to amend.

16                           **III.     CONCLUSION**

17       For the foregoing reasons, Plaintiff and TPDs respectfully requests that the Court dismiss

18  without leave to amend all claims in the Counterclaim and Third Party Complaint.

19  Dated:  June 23, 2014                    **AD ASTRA LAW GROUP, LLP**

20

21                            By  /s/ *Katy M. Young*
                                   Katy M. Young
22                                 Keenan Ng
                                   Attorneys for Plaintiff NOVELPOSTER and
23                                 Third Party Defendants ALEX YANCHER
                                   and MATT GRINBERG
24

25

26

27

28