UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVELPOSTER,<br><br>    Plaintiff,<br><br>    v.<br><br>JAVITCH CANFIELD GROUP, et al.,<br><br>    Defendants. | Case No. 13-cv-05186-WHO<br><br>**ORDER GRANTING COUNTERDEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM**<br><br>Re: Dkt. No. 113 |

## INTRODUCTION

This order concerns counterclaimants Mark Javitch and Daniel Canfield's third attempt to state a claim against counterdefendants NovelPoster, Alex Yancher, and Matt Grinberg. In an order dated August 14, 2014 (the "prior order"), I dismissed all nine causes of action brought by counterclaimants in their previous attempt but granted leave to amend. On August 29, 2014, counterclaimants filed the Second Amended Counterclaim ("SACC") at issue here, asserting six of the nine causes of action dismissed in the prior order. Counterdefendants have moved to dismiss on two grounds: (1) that counterclaimants lack standing to bring the asserted causes of action; and (2) that counterclaimants have failed to state a claim upon which relief can be granted. The key issue I must decide is whether counterclaimants have standing to assert claims for breach of contract, common law fraud, breach of the implied covenant of good faith and fair dealing, quantum meruit, and violations of California's Fair Advertising Law and Unfair Competition Law, even though counterclaimants have not alleged that they were parties to the contractual relationship on which all their claims are based. Because I conclude that they do not, the motion to dismiss is GRANTED.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

Counterclaimants' allegations are set forth in detail in the prior order, so I have only briefly summarized them here.

Javitch is the founder and owner of The Javitch Group LLC. SACC ¶ 11. Canfield is an independent contractor of the The Javitch Group LLC. *Id.* On March 18, 2013, Canfield met Yancher at a social event, where Yancher informed Canfield that he was earning $10,000 per month through his business, NovelPoster, and that the business could be purchased for $150,000. *Id.* ¶¶ 28-30. NovelPoster makes and sells "text-based poster products." *Id.* ¶ 58. Canfield declined to buy NovelPoster but, over the next several weeks, continued to discuss various potential business arrangements with Yancher. *Id.* ¶ 36.

On April 30, 2013, Yancher drafted proposed terms for a business arrangement and emailed them to Javitch and Canfield. *Id.* ¶ 57. The terms included:

- "Javitch Canfield takes over all aspects of NovelPoster operations except for poster design."

- "NovelPoster continues to be responsible for additional poster design at a rate of one new poster per month."

- "NovelPoster takes 20% of sales."

- "Javitch Canfield receive [sic] 10% equity in NovelPoster, which would vest over 2 years."

- "Javitch Canfield agrees not to compete with NovelPoster by creating their [sic] own text-based poster product similar to NovelPoster."

*Id.* ¶ 58.

On May 1, 2013, Yancher, Grinberg, Javitch and Canfield met to discuss the proposed terms. *Id.* ¶ 59. "At the meeting, Yancher, Grinberg, and counterclaimants, representing The Javitch Group LLC, all verbally agree[d] to form a contract." *Id.* ¶ 60. The contract's terms included those stated above plus: (i) that Yancher would introduce counterclaimants to his "wholesale contacts;" (ii) that if either party attempted to terminate the contract within one year, that party would pay a $10,000 "break-up fee;" (iii) that counterclaimants would operate

NovelPoster "until it could be sold, and upon any sale counterclaimants would receive 10% of the purchase price;" and (iv) that "the contract should be consummated and in full effect upon the transfer of all [of NovelPoster's online] accounts and passwords from Yancher and Grinberg to counterclaimants." *Id.* ¶¶ 61-64.  On May 3, 2013, Yancher and Grinberg "consummate[d] the contract . . . by transferring all of the accounts and passwords to counterclaimants." *Id.* ¶ 65.

The business relationship between the parties quickly soured.  On June 5, 2013, counterclaimants discovered that Yancher had issued an invoice to a NovelPoster customer requesting that payment be sent directly to him, in breach of the agreement that The Javitch Group LLC would take over "all aspects" of NovelPoster's operations.  *Id.* ¶¶ 84-85.  Around the same time, counterclaimants realized that NovelPoster's sales were significantly lower, and its expenses significantly higher, than counterclaimants had been led to expect.  *Id.* ¶¶ 86, 88, 89.  On June 6, 2013, The Javitch Group LLC caused all www.NovelPoster.com website traffic and email to be delivered to servers maintained by the The Javitch Group LLC and changed the access passwords to all of NovelPoster's online accounts.  *Id.* ¶ 93.

On June 14, 2013, Grinberg "attempted to terminate the agreement with The Javitch Group LLC by email."  *Id.* ¶ 96.  Javitch "reject[ed] [the] termination as improper" and "stated that The Javitch Group LLC would continue to operate NovelPoster in an attempt to mitigate their [sic] damages."  *Id.* ¶ 98, 100.  The Javitch Group LLC continued to operate NovelPoster until December 4, 2013, when The Javitch Group LLC shut down the NovelPoster website in response to counterclaimants' demands.  *Id.* ¶ 113.  Throughout that time, Javitch deposited the 20 percent of sales revenue due NovelPoster under the terms of the contract into a separate escrow account.  *Id.* ¶ 110.  The Javitch Group LLC finally transferred the www.NovelPoster.com website and NovelPoster's online accounts back to counterdefendants in January 2014.  *Id.* ¶¶ 117-121.

**II. PROCEDURAL BACKGROUND**

NovelPoster filed this action on November 6, 2013.  Dkt. No. 1.  The initial complaint named the "Javitch Canfield Group," Javitch, and Canfield as defendants and alleged several causes of action, including breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the federal Computer Fraud and Abuse Act and the California

Computer Data Access and Fraud Act. *Id.* Javitch and Canfield answered on April 21, 2014. Dkt. No. 48. The answer repeatedly denies that the "Javitch Canfield Group" exists. *See, e.g., id.* at ¶¶ 1, 5, 8. Javitch and Canfield also filed a counterclaim and third-party complaint naming NovelPoster as counterdefendant and Yancher and Grinberg as third-party defendants. *Id.* at ¶¶ 119-25. Like the SACC, the initial counterclaim and third-party complaint identifies the entity which contracted to operate NovelPoster as "The Javitch Group LLC," not the "Javitch Canfield Group." *See, e.g., id.* at ¶¶ 120, 173, 185.

On May 22, 2014, Javitch and Canfield filed a "First Amended Counterclaim [and] Third Party Complaint" ("FACTPC"), again naming NovelPoster as counterdefendant and Yancher and Grinberg as third-party defendants. Dkt. No. 55. On June 6, 2013, NovelPoster, Yancher, and Grinberg moved to dismiss, arguing that each of the nine causes of action alleged in the FACTPC failed to state a claim. Dkt. No. 65. On August 14, 2014, I issued the prior order, granting the motion but acknowledging that Yancher and Grinberg could be properly joined, albeit not as third-party defendants under Rule 14, but as counterdefendants under Rules 13(h) and 20(a)(2).[1] Dkt. No. 99 at 10-13. I gave Javitch and Canfield leave to amend. *Id.* at 27.

Javitch and Canfield filed the SACC on August 29, 2014. In line with the prior order's recognition that Yancher and Gringerg could be properly joined under Rules 13(h) and 20(a)(2), the SACC requests joinder of Yancher and Grinberg under Rule 20 and eschews the "third-party defendant" and "third-party plaintiff" designations, instead referring to NovelPoster, Yancher, and Grinberg as "counterdefendants" and Javitch and Canfield as "counterclaimants." *See* SACC ¶ 19. The SACC alleges six causes of action, each of which was also brought in the FACTPC and dismissed with leave to amend in the prior order. The causes of action are: (i) common law fraud; (ii) breach of contract; (iii) quantum meruit; (iv) breach of the implied covenant of good faith and fair dealing; (v) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

---

[1] Rule 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

4

1  § 17500; and (vi) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
2  Code § 17200. Counterclaimants moved to dismiss on September 22, 2014. Dkt. No. 113.
3  Pursuant to Civil Local Rule 7-1(b), I determined this matter suitable for determination without
4  oral argument and vacated the hearing set for October 29, 2014.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable inferences" from those facts in the nonmoving party's favor, *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

To the extent counterdefendants' motion is based on the contention that counterclaimants lack standing to assert their counterclaims, the motion is properly characterized not as a Rule 12(b)(6) motion to dismiss for failure to state a claim, but as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. A challenge under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Where, as here, the challenge is facial – meaning that it is confined to whether the allegations in the complaint are sufficient "on their face" to invoke federal jurisdiction, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) – the court assumes the allegations to be true and draws all reasonable inferences in the complaining party's favor, *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## DISCUSSION

Counterdefendants assert that counterclaimants lack standing because, according to the

1    SACC, all six of counterclaimants' causes of action arise from an alleged contract between
2    counterdefendants and nonparty The Javitch Group LLC, not between counterdefendants and
3    counterclaimants.[2]  Mot. 5-7.  Counterdefendants point out that the breach of contract cause of
4    action in the SACC is based on an alleged contract that "was established between Yancher and
5    Grinberg and The Javitch Group LLC," *see* SACC ¶ 316, and that the allegations in the SACC
6    describing the formation and terms of the contract are preceded by the headings, "NovelPoster
7    Contracts with The Javitch Group LLC to Operate NovelPoster" and "Yancher and Grinberg
8    Establish the Contract with the Javitch Group LLC."  *See* SACC ¶¶ 53, 58.  Counterdefendants
9    assert that counterclaimants' five other causes of action arise directly from this same alleged
10   contract:  The breach of the implied covenant claims are based on alleged breaches of the covenant
11   implied in the contract.  *See* SACC ¶¶ 341-352.  The cause of action for quantum meruit is based
12   on services allegedly rendered pursuant to the contract.  *See* SACC ¶¶ 327-340.  The fraud cause
13   of action alleges damages incurred as a result of contracting with defendants, *see* SACC ¶¶ 133,
14   142, 165, 178, 189, 199, 209, 244, 247, 272, 291, 310, and the FAL and UCL causes of action are
15   likewise based on injuries sustained as a result of the decision to enter into a contract with
16   counterclaimants.  *See* SACC ¶¶ 353-390.  Counterdefendants assert that because all six of
17   counterclaimants' causes of action arise from a contract to which counterclaimants were not a
18   party, counterclaimants may only maintain these causes of action if they have third-party standing,
19   which they do not.  Mot. 15-17.
20          Counterclaimants do not contend that they have third-party standing.  Opp. 4

---

[2] Although the SACC does not explicitly state that The Javitch Group LLC is a limited liability company, I have assumed, based on its name, that it is one.  Under California law, "[a] limited liability company is a hybrid business entity . . . consisting of at least two members who own membership interests.  The company has a legal existence separate from its members." *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 963 (2001).  The members of an LLC generally do not have standing to sue on the basis of injuries sustained by the LLC.  *See id.* at 964 (2001) ("Because members of the LLC hold no direct ownership interest in the company's assets . . . , the members cannot be directly injured when the company is improperly deprived of those assets."); *see also, Lombardi v. Pleasure Cove Resort Asset Mgmt. Grp.*, No. 05-cv-05219-RS, 2006 WL 1709723, at *2 (N.D. Cal. June 21, 2006) ("Under California law that governs the LLC, [cross-complainant's] status as [a] member of the LLC does not give him any legal interest in the property of the LLC.  [Cross-complainant] therefore lacks standing to raise the claims pleaded in the cross-complaint.").

("Counterclaimants are not attempting to allege claims based on an injury of a third party."). Nor do they dispute that they were not parties to the contract alleged in the SACC. *Id.* at 4-5, 13-16. Counterclaimants assert instead that counterdefendants' characterization of their claims is inaccurate. *Id.* Counterclaimants point out that each cause of action in the SACC includes an allegation that counterclaimants themselves were personally injured by counterdefendants' alleged misconduct. *See* SACC ¶¶ 133 (fraud; "[a]s a result of Yancher and Grinberg's willfully fraudulent and unlawful behavior, counterclaimants have suffered damages"), 326 (breach of contract; "[a]s a result of counterdefendants breaches of the contract, counterclaimants have suffered damages"), 339 (quantum meruit; "[c]ounterclaimants suffered losses and damage by investing in the development of the above resources but receiving no remuneration"), 351 (breach of the implied covenant; "[a]s a direct and proximate result of counterdefendants wrongful conduct, counterclaimants were harmed"), 363 (violations of the FAL; "[c]ounterclaimants were deceived by one or more of these advertisements and have suffered injury in fact and lost money as a result"), 385 (violations of the UCL; "[c]ounterclaimants were deceived by one or more of these advertisements and have suffered damages"). Counterclaimants further contend that Javitch, as the owner of The Javitch Group LLC, was personally harmed by counterdefendants' alleged misconduct because, "as The Javitch Group LLC incurred losses[,] Javitch [in] turn incurred those same losses as the owner of the company." Opp. 4. Canfield was likewise personally harmed "because the deal he brought to The Javitch Group LLC was wasted and his earnings were decreased as a result of the allegations set forth in the SACC." *Id.* Counterdefendants do not offer additional arguments in support of standing.

"[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (internal quotation marks omitted). In other words, "[s]tanding addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

There are three requirements for standing: (1) "the plaintiff must have suffered an injury in

7

fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, citations, and modifications omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068-69 (9th Cir. 2011) (internal quotation marks omitted).

When ruling on a motion to dismiss for lack of standing, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. The burden to prove that standing exists is, as always, on the party seeking to invoke federal jurisdiction. *Lujan*, 504 U.S. at 560-61. But at the pleading phase of the proceedings, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* That said, a plaintiff may not "rely on a bare legal conclusion" to support his assertion that he has suffered an injury-in-fact. *Maya*, 658 F.3d at 1068.

Although the SACC is less than clear on this point, the parties appear to agree that the SACC is properly construed as alleging a contract between counterdefendants and The Javitch Group LLC, not between counterdefendants and counterclaimants. The allegations in the SACC, as well as counterclaimants' opposition brief, support this conclusion. The breach of contract cause of action plainly states that "the contract was established between Yancher and Grinberg and The Javitch Group LLC." SACC ¶ 316. The allegations describing the formation of the contract are prefaced by the headings, "NovelPoster Contracts with The Javitch Group LLC to Operate NovelPoster," and, "Yancher and Grinberg Establish the Contract with The Javitch Group LLC." SACC ¶ 53, 58. The alleged proposed terms of the contract, which Yancher emailed to counterclaimants on April 30, 2013, refer to "Javitch Canfield," which appears to be a reference to

8

a singular business entity, not a reference to Javitch and Canfield as separate individuals. *See* SACC ¶ 58.[3] The allegations describing the additional terms that were added to the contract during the May 1, 2013 meeting all begin with the phrase, "At the meeting, Yancher, Grinberg, and counterclaimants, *representing The Javitch Group LLC*, all verbally agree[d] . . . " SACC ¶¶ 60-64 (emphasis added). Finally, counterdefendants do not dispute in their opposition brief that they were not parties to the contract. *See* Opp. 4-5, 13-16.

It is true that the SACC includes several allegations that appear to be based on the assumption that counterclaimants themselves entered into a contract with counterdefendants. *See, e.g.,* SACC ¶¶ 131 ("Counterclaimants reasonably and justifiably relied on Yancher's misrepresentations in deciding to enter into a contract with counterdefendants."), 321 ("Counterdefendants breached the contract by violating their obligation that all aspects of NovelPoster operations would be transferred to counterclaimants."), 329 ("According to the contract, counterclaimants were supposed to take over all aspects of NovelPoster operations."), 344 ("Counterclaimants completed all of the obligations that they were required to perform under the contract."). But given that the allegations in the SACC specifically describing the formation and terms of the contract indicate that counterclaimants were not parties to it, and that counterclaimants do not contend otherwise in their opposition brief, I conclude that counterclaimants have not alleged that they entered into a contract with counterdefendants.

The general rule in California is that one who is not a party to a contract may not sue to enforce its terms. *See Gantman v. United Pac. Ins. Co.*, 232 Cal. App. 3d 1560, 1566 (1991) ("Someone who is not party to a contract has no standing to enforce the contract.") (internal quotation marks and modifications omitted); Cal. Jur. 3d Contracts § 381 (2014) ("A party who is not a party or privy to a contract cannot show a wrong done to him or her for breach of any duty

---

[3] On the other hand, the April 30, 2013 email occasionally uses plural verb forms and one plural pronoun in conjunction with "Javitch Canfield," thereby offering some support for the theory that "Javitch Canfield" refers to multiple individuals, not a single business entity. *See* SACC ¶ 58 ("Javitch Canfield take 20% equity in NovelPoster . . . Vesting happens as Javitch Canfield continue to run operations of NovelPoster . . . Javitch Canfield agree not to . . . creat[e] their own text-based poster product."). However, in light of the many other indicators that counterclaimants did not intend to plead that they were parties to the contract – including their decision not to contend otherwise in their opposition brief – these word choices are best construed as typos.

1    arising out of the contractual relation."); *see also,* 13 Williston on Contracts § 37:1 (4th ed.) ("It is
2    essential to the maintenance of an action on any contract that there should subsist a privity
3    between plaintiff and defendant in respect of the matter sued on.") (internal quotation marks
4    omitted). Accordingly, the general rule among federal courts applying California law is that one
5    who is not a party to a contract does not have standing to sue for breach of that contract. *See, e.g.,*
6    *Schulz v. Cisco Webex, LLC*, 13-cv-04987-BLF, 2014 WL 2115168, at *3-5 (N.D. Cal. May 20,
7    2014) (granting motion to dismiss plaintiff's breach of contract, negligent performance of
8    contractual duties, and unjust enrichment claims for lack of standing on ground that plaintiff had
9    not shown that she was either a party to or a third-party beneficiary of the contract at issue);
10   *Ambers v. Wells Fargo Bank, N.A.*, 13-cv-03940-NC, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3,
11   2014) ("A person who is not a party to a contract does not have standing either to seek its
12   enforcement or to bring tort claims based on the contractual relationship."); *Andrew Smith Co. v.*
13   *Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal. 2010) ("A third party who is only
14   incidentally benefited by a contract does not have standing to enforce the contract."). Although
15   there are exceptions to this general rule, counterclaimants make no attempt to allege or explain
16   how their breach of contract claim fits within any such exception. *See* Opp. 4-5, 13-16. Because
17   the SACC does not allege that counterclaimants entered into a contract with counterdefendants,
18   counterclaimants do not have standing to bring their breach of contract claim, and the breach of
19   contract cause of action must be dismissed.

20   Counterclaimants' failure to allege the existence of a contract between themselves and
21   counterdefendants, or any exception to the general requirement of contractual privity, also
22   mandates dismissal of their claim for breach of the implied covenant of good faith and fair
23   dealing. "California law, like the law in most states, provides that a covenant of good faith and
24   fair dealing is an implied term in every contract." *Chodos v. West Publishing Co.*, 292 F.3d 992,
25   996 (9th Cir. 2002). The covenant "imposes upon each party a duty of good faith and fair dealing
26   in the performance of the contract such that neither party shall do anything which will have the
27   effect of destroying or injuring the right of the other party to receive the fruits of the contract."
28   *Storek & Storek, Inc. v. Citicorp Real Estate Inc.*, 100 Cal. App. 4th 44, 55 (2002).

A breach of a specific contract provision is not necessary to support a claim for breach of the implied covenant. *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999). But it is necessary that there be an underlying contract. "[T]he prerequisite for any action for breach of the implied covenant . . . is the existence of a contractual relationship between the parties." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 525 (2013) (internal quotation marks omitted). Without alleging that there was a contractual relationship between themselves and counterdefendants, counterclaimants cannot demonstrate standing to sue for breach of the implied covenant. *See Castro v. JPMorgan Chase Bank, N.A.*, No. 14-cv-01539-NC, 2014 WL 2959509, at *3 (N.D. Cal. June 30, 2014) ("Because [plaintiff] has failed to allege the existence of [a] contract, his allegation of the breach of [the] implied covenant . . . also fails."); *Chambers v. City of Berkeley*, No. 00-cv-03845-SI, 2002 WL 433606, at *6 (N.D. Cal. Mar. 18, 2002) ("[Plaintiff] does not have standing to assert a cause of action for breach of an implied covenant stemming from a contract to which she was not a party.").

Counterclaimants have also failed to show that they have standing to bring their causes of action for common law fraud and violations of the FAL and UCL. Unlike a breach of contract or breach of the implied covenant claim, claims for fraud and violations of the FAL and UCL do not require a contractual relationship between the plaintiff and the defendant. These causes of action still fail, however, because the only injuries counterclaimants allege in connection with either cause of action are injuries arising directly from the alleged contract between counterdefendants and The Javitch Group LLC. In support of the fraud cause of action, the SACC repeatedly states that "counterclaimants reasonably and justifiably relied on Yancher's and Grinberg's misrepresentations in deciding to enter into a contract with counterdefendants," and that "counterclaimants have suffered damages as a result of their contracting with counterdefendants." *See, e.g.,* SACC ¶¶ 131, 133, 140, 142, 151, 153. In support of the FAL and UCL causes of action, the SACC states only that counterclaimants "were deceived by one or more of" counterdefendants' advertisements and suffered "injury in fact" and "damages" as a result. SACC ¶¶ 363, 385.

Even viewed favorably, these allegations are not sufficient to show that counterclaimants

11

have sustained any injury-in-fact other than those arising directly from the contract between counterdefendants and The Javitch Group LLC. The fraud cause of action is explicitly based on the allegation that counterdefendants fraudulently lured counterclaimants, as representatives of The Javitch Group LLC, into entering the contract. Likewise, it is not clear how counterclaimants have been "deceived" by counterdefendants except in connection with their decision, as representatives of The Javitch Group LLC, to agree to operate NovelPoster. As noted above, "[a] person who is not a party to a contract does not have standing either to seek its enforcement *or to bring tort claims based on the contractual relationship*." *Ambers,* 2014 WL 883752, at *4 (emphasis added). Because counterclaimants' fraud, FAL, and UCL claims are all squarely based on a contractual relationship to which counterclaimants have not alleged they were a party, these causes of action must also be dismissed for lack of standing. *See also, Brockington v. J.P. Morgan Chase Bank, N.A.*, No. 08-cv-05795-RW, 2009 WL 1916690, at *3 (N.D. Cal. July 1, 2009) (holding that "equitable owner" of property whose daughter obtained a mortgage loan from defendant had "no standing to challenge defendant's conduct in connection with extending the mortgage loan [or] to assert a claim for unlawful concealment of facts by defendant in such transaction"); *Cabrera v. Countrywide Fin.*, No. 11-cv-04869-SI, 2012 WL 5372116, at *8 (N.D. Cal. Oct. 30, 2012) (dismissing claims for fraud and violations of the UCL for lack of standing because plaintiff's husband, not plaintiff, was the signatory to the mortgage loan); *Lombardi*, 2006 WL 1709723, at *2 (N.D. Cal. June 21, 2006) (holding that LLC member lacked standing where his cross-complaint "asserts a variety of legal theories, but all arise from the basic claim that [cross-defendant] acted wrongfully with respect to the LLC's rights under the . . . contract [or] the LLC's rights to . . . other property").

This leaves the cause of action for quantum meruit. To prevail on a quantum meruit claim, the plaintiff must show: (1) that he or she has rendered services that benefited the defendant; and (2) that the defendant would be unjustly enriched if the plaintiff did not recover the "reasonable value" of those services. *See In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). Counterclaimants lack standing to sue in quantum meruit because, as they state in their opposition brief, the services on which they base their quantum meruit claim were rendered "as

12

1 part of the contract," meaning that the entity that rendered those services is properly characterized as The Javitch Group LLC, not counterclaimants. Opp. 17. Counterclaimants do not have standing to recover in quantum meruit for services which they concede they did not perform.

**CONCLUSION**

"Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler*, 598 F.3d at 1122. As currently pled, each of the six causes of action in the SACC is properly brought by The Javitch Group LLC, not by counterclaimants. Accordingly, the motion to dismiss is GRANTED. Because amendment would not necessarily be futile, counterclaimants are granted leave to amend. Any amended pleading must be submitted within 10 days of this order. Counterclaimants are advised that, as they have already amended their claims twice, this will be their final opportunity. The last day for any party to seek to amend their pleadings is November 14, 2014.

**IT IS SO ORDERED**.

Dated: November 4, 2014



WILLIAM H. ORRICK
United States District Judge

13