UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVELPOSTER,<br><br>                    Plaintiff,<br><br>          v.<br><br>JAVITCH CANFIELD GROUP, et al.,<br><br>                    Defendants. | Case No.  13-cv-05186-WHO   (JCS)<br><br>**ORDER RE MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 123 |

## I.     INTRODUCTION

        This case involves the soured relationship between the owners of the plaintiff company, NovelPoster, and the defendant company engaged to operate it, Javitch Canfield Group. Javitch Canfield Group's owners, Mark Javitch and Daniel Canfield, are also defendants. NovelPoster asserts various causes of action under both federal and state law based on the Defendants' allegedly unlawful access of NovelPoster's email and other electronic accounts during the start, breakdown, and wake of the parties' relationship.

        Presently before the Court is Defendants' Motion for Sanctions.  Dkt. No. 123. Defendants argue that Plaintiffs delayed and obstructed its Rule 34 inspection of Plaintiffs' computers, and vexatiously multiplied the proceedings, wasting the parties' time and money.  For the reasons stated below, the motion is **DENIED**.

## II.     BACKGROUND

        Plaintiff NovelPoster, a California General Partnership, through its founders Matt Grinberg and Alex Yancher (collectively, "Plaintiffs"),[1] brought suit against Defendant Javitch Canfield Group, led by Mark Javitch and Daniel Canfield (collectively, "Defendants") in November 2013,

---

[1] Grinberg and Yancher are also Counterdefendants.
[2] Defendants' citation to Defendants' counsel's declaration for that claim about Ms. Phillips' surprise appears to be in error, as the paragraph cited does not address that point.

United States District Court
Northern District of California

alleging violations of, *inter alia*, the Computer Fraud and Abuse Act ("CFAA") and California's Comprehensive Computer Data Access and Fraud Act ("CDAFA").  *See* Dkt. No. 1 (Complaint). Defendants moved for judgment on the pleadings in June 2014, on the ground that NovelPoster had failed to adequately plead damage or loss within the meaning of either statute.  *See* Dkt. No. 60.  The Court granted judgment to Defendants in August 2014.  Dkt. No. 93. Plaintiffs since filed an amended complaint, Dkt. No. 103 ("First Amended Complaint," or "FAC"), with additional details concerning the damage and loss NovelPoster allegedly sustained as a result of Defendants' conduct.  Defendants moved again for judgment on the pleadings, contending that the FAC still failed to adequately plead damage or loss under the CFAA and CDAFA, and that it failed to properly allege that Defendants accessed or used a computer "without permission," as required to state a claim under the CDAFA.  Dkt. No. 111.  The Court denied Defendants' motion in November 2014.  Dkt. No. 124.

Throughout this litigation the parties have engaged in numerous contentious discovery disputes and the parties have each sought relief from the Court for discovery-related issues.  *See, e.g.*, Dkt. Nos. 38, 41, 56, 63, 83, 96, 102, 105.  The litigation of this case has proceeded "well outside normal boundaries, particularly for a matter of its magnitude," Dkt. No. 77, and the Court has had to admonish the parties on more than one occasion to adhere to the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 63, 77.  The Court has additionally had to remind the parties to "act in a professional manner" and of "their obligation as attorneys to work together with civility to avoid wasting the Court's time."  Dkt. No. 105.

The instant dispute concerns Defendants' requests for discovery evidencing "damage" to NovelPoster's computers, and in particular "physical computer damage."  Motion at 5. Defendants have taken the position that the "damage" Plaintiffs have pled under the CFAA includes, or at least does not exclude, physical damage to computers within Plaintiffs' earthly control—*i.e.*, damage not merely restricted to accounts or data with third-party service providers and accessed remotely.  *See* Motion at 5–6.  Defendants made several formal and informal requests for discovery related to evidence of such damage, culminating in an inspection conducted in part by a computer expert retained by Defendants for the inspection.  *See id.*

2

United States District Court
Northern District of California

1    A.    **Requests for Admission and Interrogatories**

2        Defendants' first discovery requests regarding the computer damage pled by Plaintiffs

3    were Requests for Admission sent in April 2014.  *See* Motion at 8.  Defendants requested

4    admissions from Yancher and Grinberg "that Defendants/Third Party Plaintiffs did not cause any

5    damage to any Novelposter computers," which Yancher and Grinberg each denied.  Motion at 8;

6    Dkt. No. 123-1 ("Motion Exhibits") at 2–5.  Defendants also requested admission from Plaintiffs

7    "that Plaintiffs/Third Party Defendants did not incur any expenses repairing computers used by

8    Novelposter because of Defendants/Third Party Plaintiffs' actions," which Plaintiffs denied.

9    Motion at 8; Motion Exhibits at 7.

10       Defendants additionally sent interrogatories to NovelPoster, including one which stated:

11           For each and every Act conducted by Defendants /Third Party
             Plaintiffs that you allege constitutes a violation of 18 U.S.C.1030
12           [CFAA], describe all the alleged Act by Defendants/Third Party
             Plaintiffs; stating specifically what protected computer was
13           accessed, at what date and time, what information was obtained, or
             altered, or what computers were damaged, whether the act is alleged
14           'without authorization' or 'in excess of authorization', or both,
             whether the act violates section (a)(2)(C) or (a)(5)(c), or both, and
15           detail all the damages that you allege, and identify all documentation
             of all damages and expenses incurred.
16

17   Motion at 8–9; Motion Exhibits at 9.  Plaintiffs responded, stating:

18           Discovery is ongoing and further responses to this Interrogatory will
             be possible once Plaintiff learns the specifics of each time
19           Defendants accessed an account that belonged to NovelPoster, so
             that Plaintiff can learn the exact dates and times of each
20           unauthorized access, what protected computers were accessed, what
             information was obtained or altered, what computers were damaged,
21           and whether each of those acts was without authority or in excess of
             authority, and what damages flow from each instance.
22

23   Motion at 8–9; Motion Exhibits at 11.  Defendants apparently interpreted Plaintiffs' response as

24   indicating that Plaintiffs were claiming at least some damage to physical computers maintained by

25   NovelPoster—*i.e.*, that there existed at least some computer-based evidence of physical damage

26   and loss that was not located remotely in cloud-based accounts.  *See* Motion at 9–10.

27   B.    **Requests to inspect NovelPoster's computers for damage**

28       Defendants first requested to inspect NovelPoster's computers in a letter to Plaintiffs'

3

counsel dated August 8, 2014.  Motion at 9; Motion Exhibits at 13–14.  The letter stated that

Defendants "are retaining expert witnesses in the field of Computer Security to investigate the

following issues related to NovelpPoster's claims," and listed 21 items in bullet points, including

NovelPoster's computers, systems, accounts, data, servers, and the evidence of damage to them.

*Id.*  Following the bullet-point list, the letter stated:

> Please provide a time and place where Defendants' Computer Security Expert can examine any and all of Novelposter's computers, servers, equipment, and communications so that the expert can assess all the damage and loss suffered by Novelposter. If it is necessary to make arrangements with any of your online software vendors to conduct this inspection, please coordinate with the vendors to assist in this effort.

*Id.*

Plaintiffs apparently did not respond to Defendants' August 8 letter.  On August 11,

Plaintiffs' counsel Mr. Keenan Ng sent a list of agenda items to be discussed in a telephonic meet-

and-confer, and on August 12, 2014, Defendants' counsel Mr. Carlton Willey met and conferred

with Mr. Ng via telephone.  Motion at 10.  Defendants claim Mr. Willey tried to discuss the

August 8 letter request for a computer inspection, but Mr. Ng refused on the basis that it was not

on the agenda he had sent the night before.  Motion at 10.  Plaintiffs claim that Mr. Ng stated in

the telephonic meet-and-confer that an inspection of NovelPoster's computers was "wholly

unnecessary," but that he could not stop Defendants from noticing an inspection.  Dkt. No. 130

("Opposition," or "Opp.") at 7 n.1; Dkt. No. 133 (Decl. of Keenan Ng) at ¶ 2.  Mr. Willey

followed up by letter dated August 12, noting Mr. Ng's refusal to discuss the August 8 letter's

contents, and forcefully suggesting Plaintiffs' counsel be prepared to discuss that and other topics

and subsequent meet-and-confers.  Motion Exhibits at 16–17.

Plaintiffs apparently did not respond to either the August 8 or August 12 letter.  Mr. Willey

sent a letter dated August 15, stating in part that

> **In the absence of your response, I am hereby noticing an inspection of the issues related to Novelposter's claims as stated in my August 8, 2014 letter. The inspection is hereby noticed for Wednesday, August 20, 2014 at 9:00am. Please respond by August 18, 2014 stating the place for the inspection.** If it is necessary to make arrangements with any of your online software

vendors to conduct this inspection, please coordinate with the vendors to assist in this effort.

Motion Exhibits at 20 (bold text in original).  The letter also restated the bullet-point topics from the August 8 letter.  *Id.*

Mr. Ng responded by email dated August 18, stating "The manner in which you have informally requested such information is improper, and, for example, is more properly the subject of an F.R.C.P. 30(b)(6) notice of deposition of an organization or other formal means of discovery."  Motion at 11; Motion Exhibits at 23; Opp. at 7.  Plaintiffs now note that the reference to Rule 30(b)(6), instead of 34, was "erroneous[]."  Opp. at 7.

Mr. Willey sent another letter dated August 20, 2014, stating "I will soon formally notice inspection of NovelPoster's computers—which can be achieved via Subpoena or via 30(b)(6) Deposition."  Motion Exhibits at 25.  The letter also requested that Plaintiffs "**[p]lease provide a date for the inspection between October 16, 2014 and October 23, 2014 that would be convenient for your clients and/or vendors.**"  *Id.* (bold text in original).

Mr. Willey sent another letter dated August 27, primarily discussing scheduling for other matters, including a meet-and-confer.  *See* Motion Exhibits at 28–29.  The letter also states, "Your clients have not responded to my clients' correspondence requesting dates for an expert witness inspection of NovelPoster's computer damages. I refer you to my correspondence on August 8, 2014 and August 20, 2014 regarding this matter."  *Id.*

On August 28, Plaintiffs' counsel Mr. David Nied sent an email to Mr. Willey regarding the scheduling of an in-person meet-and-confer ordered by the Court.  Motion Exhibits at 31.  The email also stated:

With regard to the other items in your letter:

1. Inspection of NovelPoster computers/servers/etc. I've reviewed your letters of August 8 and 20 on this subject and, although they are somewhat unusual and confusing, I think what you want to do is to serve us with a Rule 34 request to inspect these items and you want a date certain for the inspection to include in your Rule 34 request. You also mention the possibility of serving a Rule 30(b)(6) notice of deposition on those same subject matters. Do you intend to conduct those on the same day? In other words, do you want a date certain on which the expert can inspect computers, etc., and you can take the entity deposition on those same subject matters? It's not clear to me. I will find out, in the meantime, which date in your time

1    frame we can arrange for the inspection.

2    *Id.* (underline in original).

3         Mr. Willey and Mr. Nied held a meet and confer on September 23, at which they discussed

4    scheduling.  Motion at 12; Dkt. No. 123-2 (Decl. of Carlton Willey) at ¶ 3; Opp. at 9–10; Dkt. No.

5    132 (Decl. of David Nied) at ¶¶ 2–6.  Defendants claim that the parties agreed on October 24 for

6    the computer inspection and 30(b)(6) deposition.  Motion at 12 ("Mr. Nied confirmed that the date

7    of October 24, 2014 would be acceptable for Defendants' requested computer inspection ");

8    Willey Decl. at ¶ 3 ("Mr. Nied and I had previously discussed scheduling both a Rule 30(b)(6)

9    deposition and a Rule 34 inspection of Plaintiffs' computers on a single day, and at this meet and

10   confer we agreed on the date certain of October 24, 2014. We agreed that Defendants would notice

11   a Rule 30(b)(6) deposition and a Rule 34 inspection for that date after the meet and confer.")

12   Plaintiffs claim that the parties agreed to the October 24 date with regard to the 30(b)(6)

13   deposition only.  Opp. at 9; Nied Decl. at ¶ 4 ("We then discussed dates for the 30(b)(6) deposition

14   of NovelPoster, which could be defended by another attorney in my firm. Mr. Willey asked to

15   reserve October 22nd as his first choice and October 24th as his second choice. I agreed to those

16   dates for the 30(b)(6) deposition subject to the clients' availability"); ¶ 6 ("I do not recall

17   discussing any Rule 34 Inspection of NovelPoster's computers").  Plaintiffs also claim that "Mr.

18   Willey said that he would send out a notice of deposition that day, September 23, 2014."  Nied.

19   Decl. at ¶ 5.

20        Six days later, on September 29, Defendants served Plaintiffs with a "NOTICE OF

21   DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) AND NOTICE OF INSPECTION

22   PURSUANT TO FED. R. CIV. P.34" to Plaintiffs.  Motion Exhibits at 33; Motion at 12 (Plaintiffs

23   received the notice on September 30); Opp. at 9.  It stated:

24        PLEASE TAKE NOTICE that, pursuant to Feel. R. Civ. P. 30(b)(6),
          Defendants and Counterc1aimants will take the depositions
25        ("Depositions") upon oral examination, to be recorded by
          stenographic means and videotape. Additionally, pursuant to Rule
26        34, Defendants hereby serve notice to Plaintiff and
          Counterdefendants that Defendants will conduct an inspection
27        ("Inspection") of and Plaintiff must produce for inspection all
          Novelposter computers, computer systems, accounts, data,
28        information, and any other equipment to which Defendants are

1    alleged to have caused losses and damages to Plaintiff. The
2    Depositions and Inspection will take place at the offices of the
     Defendants' Counsel at the location set forth below. Novelposter is
3    requested to designate the person or persons most knowledgeable
     and prepared to testify on behalf of Novelposter concerning the
     subject matter described on Exhibit A hereto. If necessary, each
4    deposition will be adjourned until completed. The deposition(s) will
     commence at 9:00a.m. on October 24,2014 . . . .

5    Motion Exhibits at 33. The notice attached an Exhibit A, titled "TOPICS OF DEPOSITION AND

6    INSPECTION," which included the following topics:

7            1. All factual allegations made by Novelposter in its Complaint and
             First Amended Complaint;
8            2. All factual allegations made by Counterclaimants in their Answer
             and Second Amended Counterclaim;
9            3. All topics relevant to the business of Novelposter and
             Novelposter's relationship with Defendants and Counterclaimants;
10           4. Inspection of all Novelposter computers and accounts;
             5. What computers, accounts, and servers were accessed and used
11           without authorization, or in excess of authorization;
             6. What Novelposter servers and accounts suffered damage or loss;
12           Dollar value of damage or loss to Novel poster servers or accounts;
13           7. What evidence of computer hacking exists;
             8. What information was obtained as a result of Defendants'
14           unauthorized actions;
             9. What computer systems or information was tampered, interfered,
15           damaged, altered, made use of;
             10. How any passwords were circumvented, the existence of
16           technical access barriers and/or what technological access barriers
             were circumvented;
17           11. Review any damage assessments or investigation conducted by
18           Plaintiff;
             12. What intellectual property was stolen by Defendants;
19           13. What interruption of service was caused by Defendants:
             14. What data was not readily obtainable;
20           15. What information, computer system, or computer software was
21           used, added, altered, deleted, destroyed, data, disruption of computer
             services to computer systems and computer networks;
22           16. What data, computer software, or computer programs which
             reside or exist internal or external to a computer, computer system,
23           or computer network were affected by Defendants;
24           17. What information or data was used and/or interacted with;
             18. What computer services were disrupted or denied or caused the
25           denial of computer services;
             . . . .
26
27   *Id.* (topics 19–22 excluded as irrelevant to the instant motion).

28           Sometime after the notice was sent, Mr. Michael Dorsi apparently assumed some or all of

1    Mr. Nied's responsibilities for this case as Mr. Nied had to prepare for an attend a trial in San

2    Mateo.  Opp. at 8 n.2; *see also* Motion at 13 ("Defendants' counsel became familiar with Mr.

3    Dorsi for the first time in this litigation in a phone conference with Mr. Nied on October 3").

4         Defendants state that Defendants' counsel made multiple attempts by phone, email, and

5    letter between October 5 and October 17 to confirm or discuss scheduling, other depositions, or

6    requesting meet-and-confers regarding discovery.  Motion at14.  Neither party included exhibits

7    showing this correspondence or described the phone calls in their counsels' declarations.

8         On October 10, Mr. Willey apparently sent a letter to Plaintiffs stating that the parties had

9    agreed to an inspection of NovelPoster's computers on October 24.  *See* Motion Exhibits at 40.

10   Neither party included this letter as an exhibit, but Mr. Dorsi references it in a subsequent letter.

11        On October 17, Plaintiffs' counsel Mr. Ng served objections styled as "PLAINTIFF'S

12   OBJECTIONS TO THE NOTICE OF FED. R. CIV. P 30(b)(6) DEPOSITION OF

13   NOVELPOSTER."  Dkt. No. 133-2.  For each of the 22 topics listed in Defendants' September 29

14   notice, Plaintiffs stated objections, designated a deponent, or both.  Plaintiffs did not state an

15   objection to the date in Defendants' notice or suggest an inspection protocol.  *Id.*

16        On October 21, Mr. Dorsi responded by letter to Mr. Willey's October 10 letter.  Plaintiffs

17   describe October 21 as the date on which "it became apparent to Plaintiff's counsel that Mr.

18   Willey intended to go through with the" inspection on October 24.  Opp. at 10.  The letter stated:

19              I noticed that, in your October 10, 2014, letter, you asserted that we
20              have agreed to an inspection of computers on October 24, 2014. I
               have conferred with the other attorneys at my firm and confirmed no
21              such agreement exists. In addition, if you review my clients'
               objections and designations, you will see that my clients raised
22              substantive and procedural objections.

23   Motion Exhibits at 40.  The letter also suggested that Defendants had not served "a valid

24   document request or subpoena;" that an inspection would be unreasonable, intrusive, and

25   irrelevant; and that "the term 'NovelPoster computers' is not sufficiently definite for my clients to

26   know what to bring, even if they were to bring something."  *Id.*  The letter concluded, "no

27   computers will be made available at the deposition on Friday."

28        Mr. Willey responded by letter the same day, October 21.  Motion Exhibits at 42–44.  The

United States District Court
Northern District of California

8

letter detailed the correspondence history between the parties on this topic, attaching six letters and emails as exhibits. *Id.* at 42. The letter also disputed Mr. Dorsi's claim the term "Novelposter computers" is vague, and stated that as the inspection was properly noticed, "no agreement among counsel is required and you have provided no authority showing otherwise." *Id.* at 43. The letter also states that Defendants intend to "inspect the computer damage that was alleged in Plaintiff's Amended Complaint," and subsequently cites to several paragraphs of Plaintiffs' First Amended Complaint. *Id.* at 44. The letter further states:

> As previously discussed, my clients have retained a computer expert witness and the expert will be in attendance at the upcoming inspection on Friday, October 24, 2014 in order to inspect your clients' alleged computer damage. If your clients do not make their computers available for inspection in support of their alleged computer damages, my clients will promptly move for an order compelling your clients to permit inspection and for sanctions against Plaintiff and Plaintiff's counsel.

*Id.*

The next day, October 22, Mr. Dorsi and Mr. Willey met and conferred at Defendants' counsel's office. Defendants claim that "Mr. Dorsi did not propose an inspection protocol at this meeting." Motion at 14; *see also* Willey Decl. at ¶ 5. Plaintiffs claim that at that meeting Mr. Dorsi "insisted that they work out an inspection protocol before the date of the inspection, but Mr. Willey refused." Opp. at 11; Dorsi Decl. at ¶ 2. Mr. Dorsi avers that he recognized the name of Defendants' computer expert (Ms. Lynell Phillips) at this meeting, and that Mr. Willey mispronounced Ms. Phillips' name and called her "Mr.," suggesting he was not familiar with Ms. Phillips; and that Mr. Dorsi knew, from past experience, that Ms. Phillips would expect an inspection protocol at the inspection. Dorsi Decl. at ¶¶ 2–3.

On October 23, Mr. Dorsi sent Mr. Willey a letter with the subject line, "Meet and Confer Inspection of Computers." Motion Exhibits at 63–65. The letter was apparently sent to Mr. Willey by email. *See* Willey Decl. at ¶ 5. Mr. Dorsi references the previous day's meet and confer and states as confirmation, "During our discussion, I asked about the inspection protocol." *Id.* at 63. It also states as confirmation that "you [Mr. Willey] would not agree to a limit of what will be reviewed," and "clarified that when you say 'NovelPoster Computers' you mean any

computer used to access NovelPoster."  Mr. Dorsi responds that "[t]his is unreasonable, and if there is going to be an inspection of a computer, there needs to be a stipulated inspection protocol."  *Id.*  Mr. Dorsi states that the inspecting party typically suggests a protocol, but "offer[s] an alternative."  *Id.*  He states that "[t]he purpose of this proposal is to allow inspection of the systems that evidence damage and loss without excessively intruding into my clients' personal files," and offered eight terms:

> 1. The protocol will govern inspection. Your expert will not be permitted to do any inspection other than what is described in the protocol.
>
> 2. The purpose of the inspection is to investigate damage and loss relevant to the CFAA and CDAFA claims asserted by Plaintiff.
>
> 3. Plaintiff would agree to stipulate that all computer-based evidence of damage and loss is located in specific cloud-based accounts. These accounts will be identified in writing. Plaintiff would also declare in writing and under oath that all accounts are browser-interface, meaning that no software need be installed or material saved on a hard drive.
>
> 4. Defendants will identify which of these accounts will be subject to inspection. Defendants will act reasonably and designate only accounts relevant to the claims in this case that have not been sufficiently reviewed through other means of discovery.
>
> 5. Plaintiff will bring a computer capable of accessing these accounts to the deposition on Friday, and will be prepared to access the specified accounts (specifically, knowing the usernames and passwords).
>
> 6. The individual deponents representing Plaintiff will navigate within the designated pages as directed by counsel for Defendants. The deponent will navigate with the screen facing the deponent so that he and his attorney can review for privileged information. When the deponent reaches a page in question, the deponent will turn the computer around so that the page may be inspected.
>
> 7. If one of the designated accounts is email, Defendants will not be permitted to review an inbox or other page listing emails due to privilege concerns with subject lines.
>
> 8. Plaintiff and Defendants will confer and agree on a method to store information reviewed on these accounts at the deposition. Defendants will not be permitted to access the accounts at a later time or retain the passwords.

*Id.* at 63–64.  The letter then states that:

> If we can agree to the above terms and details to carry them out, or

1    reach an alternative arrangement (e.g. search terms limitation, file
2    creation time limit, or other mutually agreeable method), then
     Plaintiff will waive its objection to the deficient notice with regard
     to computers.

3    The agreement to an inspection protocol would render the lack of
4    specificity concerning computers moot. Also, although the objection
     to timing would remain valid, if the parties agree to a mutually
5    acceptable inspection protocol, Plaintiff will waive the 30 days
     notice requirement for inspection of documents from Federal Rule
6    of Civil Procedure 34 with regard to the computer inspection.

7    Please feel free to respond by email or call me this afternoon. Also,
     please be advised that if we do not reach an agreement, Plaintiff will
8    assert its rights under Rule 34 and will not bring a computer for
     inspection to the deposition.

9    *Id.* at 64.

10       That evening, October 23, Mr. Willey responded by letter sent via email.  Motion Exhibits

11   at 67.  Mr. Willey describes Mr. Dorsi's letter as "improperly attempt[ing] to impose unreasonable

12   restrictions on my clients' inspection" "one day prior" to the inspection.  *Id.*  The letter asserts that

13   "my clients will proceed to inspect all of Novelposter's alleged damages to computers, data, and

14   accounts at tomorrow's deposition and inspection." *Id.*  The letter references the Requests for

15   Admission and FAC as supporting the necessity of the inspection.  *Id.*  The letter also refers to

16   Plaintiffs' objections, noting that they were titled and substantively directly only to the 30(b)(6)

17   notice, and states that Plaintiffs therefore "failed to object" to the Rule 34 notice.  The letter

18   concludes by stating that Defendants would be bringing their computer expert, and that if

19   Plaintiffs did not bring their computers for inspection then Defendants "will promptly move for an

20   order compelling your clients to make their computers and accounts available for inspection, and

21   accordingly will move for sanctions against Plaintiff and Plaintiff's counsel." *Id.*

22       **C.    The inspection**

23        On October 24, 2014, the parties met for the inspection and deposition.  Motion at 15;

24   Opp. at 11.  Defendants' computer expert, Ms. Lynell Phillips, attended with equipment necessary

25   to examine NovelPoster's computers.  Motion at 15.   Plaintiffs did not bring any computers for

26   inspection.  *Id.*  Defendants began with the deposition of Mr. Grinberg, who had with him a

27   computer provided by Plaintiffs' counsel, and who was defended by Mr. Ng.  Soon after the

28   deposition began, Mr. Dorsi intervened to discuss the inspection protocol.  Motion at 15; Opp. at

United States District Court
Northern District of California

11

11; *see* Dkt. No. 140-2 (Dep. Tr.) at 52–53.  The parties could not immediately reach an agreement and subsequently contacted Judge Spero's chambers.  Judge Spero responded and held a telephone hearing, and ordered the parties to meet and confer as to the inspection protocol.  The parties suspended the deposition to negotiate the protocol starting at approximately 10:37 a.m., *see* Dep. Tr. at 53:15, and reached an agreement by approximately 1:36 p.m.  *Id.* at 55:23–57:24; Dkt. No. 122 (inspection protocol).  The parties broke for lunch and then resumed the deposition at 2:30 p.m.  *Id.* at 61:7–11.

The inspection was subsequently conducted with respect to Plaintiffs' Internet-accessible accounts.  *See* Opp. at 12; Dkt. No. 122.  Ms. Phillips was able to view screenshots of the accounts that showed the alleged damage.  *See* Dkt. No. 140 ("Reply") at 4.

## III.   THE PLEADINGS

### A.   Defendants' motion for sanctions

Defendants style their opening paper as a "Motion for sanctions against Plaintiff, Counterdefendants and their counsel for failing to comply with Rule 34 notice of inspection." Dkt. No. 123 ("Motion") at i.  Defendants move the court to sanction Plaintiffs pursuant to, *inter alia*, Federal Rules of Civil Procedure 37(b)(2)(A), 37(b)(2)(d), and 30(d)(2); 28 U.S.C. § 1927; and under the Court's inherent powers.  Motion at 1.

#### 1.   Three claims of impropriety

Defendants assert three primary sets of actions by Plaintiffs that Defendants claim were improper, and discuss multiple legal grounds for ordering sanctions as to each set of actions. ***First***, Defendants claim that Plaintiffs improperly obstructed and prevented Defendants from inspecting Plaintiffs' computers.  Defendants claim this was a failure to comply with Defendants' properly noticed Rule 34 Notice of Inspection, and is therefore sanctionable under Federal Rule of Civil Procedure 37.  Fed. R. Civ. P. 37(d)(1)(A)(ii) (providing for sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response").  Defendants additionally claim that Plaintiffs' failure to provide its computers for inspection was "vexatious" and "multiplied the proceedings," and is therefore sanctionable under 28 U.S.C. § 1927.  *See* Motion at 2.  Defendants

also claim Plaintiffs' failure to bring their computers to the noticed inspection was in violation of the Court's orders on August 6 and August 22.  Motion at 17–18 (referring to Dkt. Nos. 96, 105). Defendants additionally argue that Plaintiffs' delay in raising the issue of an inspection protocol until the day before the deposition was a tactic used to obstruct Defendants' inspection and wasted Defendants' time and money.  *See* Motion at 16.

*Second*, Defendants assert that Plaintiffs improperly failed to disclose that Plaintiffs' computers had not been physically damaged.  Defendants claim that Plaintiffs acted "in bad faith" by "conceal[ing] . . . the absence of physical computer damage."  Motion at 1.  Defendants also claim that this "obstruction" was "vexatious" and "multiplied the proceedings," and is therefore sanctionable under 28 U.S.C. § 1927.  *See* Motion at 2.  Defendants argue that Plaintiffs could have and should have responded to Defendants' request for an inspection by stating what Plaintiffs eventually agreed to in negotiations before the inspection: that Plaintiffs are not claiming any damage to "hard drives or physical computers maintained by NovelPoster, and that all computer-based evidence of damage and loss is located in specific cloud-based accounts."  Motion at 15 (quoting Dkt. No. 122 (inspection protocol)).

*Third*, Defendants assert that Plaintiffs' counsel Mr. Ng improperly obstructed the October 24 deposition though improper objections.  *See* Motion at 16–17.  Defendants claim that Mr. Ng interrupted Mr. Willey's deposition questions with lengthy speaking objections and questions posed to Mr. Willey, and "served to coach the deponent towards Mr. Ng's desired answer."  *Id.* at 17.  Defendants argue that Mr. Ng's "behavior in the deposition" violated the Court's August 6 Order (because it was "deliberate and constitute[d] acting 'for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'") and the August 22 Order (which required the parties to cooperate and act in good faith).  *Id.* at 18 (quoting the August 6 Order).  However, it is not clear that Defendants presently seek sanctions based on Mr. Ng's conduct.  *See* Motion at 18 ("If Mr. Ng's disruptive behavior continues at future depositions, Defendants plan to seek additional sanctions").

## 2.  Three bases for sanctions

Defendants organize their requests for relief from the Court, in the form of sanctions

13

1    against Plaintiffs, in different groupings than its generalized claims of impropriety.  Defendants

2    argue for sanctions in three parts.  ***First,*** Defendants claim that Plaintiffs should be required to pay

3    Defendants' "reasonable attorney's fees on this motion," Motion at 18–19, under Fed. R. Civ. P

4    37(b)(2)(C):

5            Payment of Expenses. Instead of or in addition to the orders above,
             the court must order the disobedient party, the attorney advising that
6            party, or both to pay the reasonable expenses, including attorney's
             fees, caused by the failure, unless the failure was substantially
7            justified or other circumstances make an award of expenses unjust.

8    Motion at 18; Fed. R. Civ. P 37(b)(2)(C).  Defendants note that FRCP 37 Rule 37 "authorizes

9    courts to issue monetary sanctions against a party who has violated a court order" and that

10   "monetary sanctions are sanctions designed to deter unjustified delay in the discovery process."

11   Motion at 18 (citations omitted).  Defendants also argue that the Court may award attorneys' fees

12   under its inherent authority.  *Id.*

13           Defendants state that they incurred attorneys' fees for the writing of seven letters (9.5

14   hours), one meet and confer (1 hour), and the drafting of the Rule 34 notice of inspection (0.75

15   hours).  *Id.* at 19.  Those 11.25 hours, at a rate of $350 per hour, total to $3,937.50.

16           Defendants state that they incurred attorneys' fees for the writing of the instant motion (15

17   hours), and anticipates fees for writing the reply and attending the hearing (8 hours).  Those 23

18   hours, at a rate of $350 per hour, total $8,050.  "Defendants request this amount be awarded

19   pursuant to Rule 37 or in the alternative, pursuant to Rule 16(f), or under the Court's inherent

20   powers."  *Id.*

21           ***Second***, Defendants claim that Plaintiffs should be required to pay Defendants'

22   "reasonable costs for failure to comply with Rule 34 notice of inspection."  *Id.* Defendants here

23   claim their costs "[b]ecause of Plaintiffs' failure to disclose the absence of computer damage,

24   failure to bring any computers to the properly noticed Rule 34 inspection, and failure to bring up

25   the issue of an inspection protocol until less than twenty-four hours prior to the noticed

26   inspection."  *Id.*

27           Defendants state that they "were forced to incur additional unnecessary fees amounting to

28   5.5 hours of [Ms. Phillips'] time," at a rate of $350 per hour, and 5.5 hours of the court reporter's

United States District Court
Northern District of California

14

time, at $195 per hour, totaling $2,997.50.  *Id.*

Defendants emphasize that "no showing of willfulness is required," and nor is bad faith required, to award an expense sanction.  *Id.* at 20 (citations omitted).

In total, Defendants request monetary sanctions in the amount of $14,985.  *Id.*

**Third,** Defendants request sanctions under 28 U.S.C. § 1927, which allows the Court to personally sanction an attorney who "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  Defendants argue that Plaintiffs unnecessary multiplied the proceedings by actively concealing, and failing to disclose when it would have been reasonable, that Plaintiffs were not claiming any physical computer damage.  Motion at 20–22.  Defendants argue that Plaintiffs' initial allegations of damage to their computers, failure to "report that that there was no damage to computers," and discovery responses "confirm[] that Plaintiffs were deliberately attempting to misrepresent to the Court that Defendants had caused actual physical computer damage.  Motion at 20.  Defendants also argue that Plaintiffs failed to take "reasonable and honest steps" by not taking the "opportunity to respond that a physical computer inspection would not be necessary."  *Id.*  As a result, Plaintiffs "unnecessarily burdened Defendants by forcing them to incur expenses" for the multiple letters Defendants wrote, the meet and confer, hiring a computer expert, and scheduling the inspection.  *Id.* at 20–21.

Defendants do not ask for any particular sanction under 28 U.S.C. § 1927, and instead request "whatever sanctions the Court deems appropriate."  *Id.* at 22.

**B.    Plaintiffs' opposition**

Plaintiffs dispute Defendants' claims and make four separate arguments refuting the claims for sanctions.

### 1.    Plaintiffs do not claim physical damage to any computers but alleges CFAA and CDAFA liability in other ways

Plaintiffs dispute Defendants argument that Plaintiffs concealed the nature of its injury allegations and state that "Defendants simply refuse to understand Plaintiff's claims against them."  Opp. at 4.  Plaintiffs quote the Court's Order Granting Defendants' Motion for Judgment on the Pleadings for the proposition that NovelPoster's "online accounts are 'protected computers' under

the" Computer Fraud and Abuse Act (the statute at issue), arguing that the presence or not of physical computer damage is not important. *Id.* Plaintiffs cite to their First Amended Complaint for the proposition that "NovelPoster has consistently alleged that all of its accounts are online accounts," *id.* (citing FAC at ¶ 12), and argue that "[t]here is no particular physical computer that is the subject of NovelPoster's claims, nor need there be." *Id.* According to Plaintiffs, Defendants' efforts to see or inspect particular physical NovelPoster computers via formal or informal discovery was a result of Defendants' "refus[al] to understand." *Id.*

Plaintiffs argue that "this matter focuses on the unavailability of data, not damage to a physical computer system," and that they have been "very clear in [their] motion work and in discussions with Defendants" about that. *Id.* at 5. Plaintiffs refute Defendants' claim that Plaintiffs' Request for Admission responses were false or misleading, arguing that under the Court's interpretation of the CFAA, Plaintiffs accurately declined to admit that they had not incurred "any damage to any NovelPoster computers." *Id.* (quoting Defendants' RFAs). Plaintiffs argue that "is not Plaintiff's fault that Defendants propounded poorly worded discovery requests that Plaintiff interpreted in a manner consistent with the allegations in this case (unavailability of data in online accounts) and not in the manner which Defendants now apparently meant (physical damage to a particular physical computer)." *Id.* at 5–6.

Plaintiffs reemphasize that their theory of liability and their interpretation of Defendants' formal and informal discovery requests were consistent with the Court's interpretation of the CFAA, and Defendants' wasted time, if any, was caused by Defendants' "refusal to understand the claims against them." *Id.* at 6. Plaintiffs underscore their argument that they have consistently claimed Defendants' liability based solely on online accounts, stating that "the parties do not dispute the material facts of the case." *Id.*

### 2. Defendants failed to issue a proper Rule 34 notice to inspect Plaintiffs' computers.

Plaintiffs dismiss Defendants' informal requests for an inspection or date certain for an inspection as "no more than letters from counsel." *Id.* at 6. They argue that they prompted Defendants in their correspondence to issue a proper notice, even "explain[ing] to Mr. Willey

16

exactly what he had to do in order to perform the inspection he was asking for: serve a Rule 34 request." *Id.* at 6–8.  But, Plaintiffs argue, they "had no duty to turn over NovelPoster's computers based on a letter from Defendants' attorney." *Id.* at 6.  Plaintiffs also suggest their reluctance to comply with anything other than a formally-noticed inspection was at least in part because they believed an inspection would have been fruitless, as the damage they allege is only reflected in cloud-based accounts, but would seriously threaten Plaintiffs' privacy.  *Id.* at 6–7.

Plaintiffs argue that even the final, formal notice sent by Defendants was deficient, in that it did not provide 30 days from the notice to the inspection date.  *Id.* at 9.  Plaintiffs cite to *Holliday v. Extex* for the proposition that "an inspection demand with less than 30 days' notice cannot be enforced."  *Id.* (citing 237 F.R.D. 425, 427 (D. Haw. 2006).  The inspection notice Mr. Willey sent on September 29 noticed October 24 as the date of inspection.  Opp. at 9; Motion Exhibits at 33.  Plaintiffs additionally suggest that the inspection notice was deficient because it was noticed for a date after October 7, alternately described as the "expert witness disclosure deadline" and when "the expert's report was due."  Opp. at 8, 2.

### 3.  Defendants refused to work out an inspection protocol in advance

Plaintiffs suggest that any costs accrued on the day of the inspection, October 24, during the time the parties negotiated an inspection protocol, was due to Defendants' refusal to work out an inspection protocol in advance.  Opp. at 10-11.  Plaintiffs state that "it became apparent to Plaintiff's counsel that Mr. Willey intended to go through with the . . . inspection without first working out an inspection protocol on October 21," that Plaintiffs made it clear they required an inspection protocol, and that Defendants knew Plaintiffs had such a requirement but refused to work one out anyway.  *Id.*  Plaintiffs indicate that that Plaintiffs' counsel first informed Mr. Willey of Plaintiffs' inspection protocol requirement at a meet and confer held on October 22, and confirmed that requirement in a letter dated October 23.  Opp. at 11; *see* Motion Exhibits at 63.  Plaintiffs state that in that letter Mr. Dorsi proposed a protocol along with an offer to drop substantive objections, but Mr. Willey refused by letter the same day.  *Id.*; *see also* Motion Exhibits at 67.

In this section Plaintiffs also refute Defendants' claims regarding Plaintiffs not bringing its

United States District Court
Northern District of California

17

computers to the inspection, arguing that "Plaintiff's counsel made it clear in numerous ways that none of Plaintiff's computers would be available at the inspection." *Id.* at 10.

### 4.  The Rule 34 inspection took place and was completed

Plaintiffs state that on the day of the inspection, "Mr. Dorsi insisted that the parties work out an inspection protocol," the parties contacted Judge Spero to adjudicate the dispute, and "Judge Spero ordered the parties to work out an inspection protocol- just as Plaintiff's counsel had insisted the parties do."  Opp. at 11.  Plaintiffs admit that "[c]ounsel argued over the protocol for quite some time, which ate up the parties' time, the court reporter's time, and the expert witness' time," *id.* at 12, but dispute that the delay resulted in significant increased costs.  Plaintiffs claim that "Mr. Willey indicated to Mr. Dorsi that Defendants had paid Ms. Phillips' fee for the entire day," and thus the "only conceivable lost time was the court reporter's time." *Id.*  Regardless, Plaintiffs indicate that any lost time was cause by Defendants scheduling the inspection and 30(b)(6) on the same day and refusing to work out an inspection protocol earlier. *Id.*

### 5.  Plaintiffs' request for fees

Plaintiffs conclude by arguing that it has been Defendants, and not Plaintiffs, that have "vexatiously multiplied this litigation." *Id.*  On that basis, Plaintiffs state that "Although not necessary, Plaintiff would appreciate the Court awarding to Plaintiff the fees that its counsel incurred in opposing this motion (13.4 hours at $350/hour)." *Id.*

### C.    Defendants' Reply

Defendants' Reply reiterates the point from their Motion.  In particular, Defendants argue that Plaintiffs' claims regarding computer damage had never been exclusive to damage to online data and account information.   Dkt. No. 140 ("Reply") at 2.  Defendants argue that, contrary to Plaintiffs' claim in its Opposition that this is a case solely about online accounts, "[a]t no point in factual allegations or discovery responses has Plaintiff ever once distinguished between physical damage to computers and damage to cloud-based accounts—Plaintiff has simply lumped all of its purported damages into catchall, claim-all allegations." *Id.*  Therefore, Defendants argue, their inspection of Plaintiffs' alleged damage could not be limited to cloud-based damage either. *Id.*

Defendants emphasize that Plaintiffs hid the nature of their claims throughout the

United States District Court
Northern District of California

litigation, causing Defendants to be "misled into believing that Plaintiffs had *actual computer damage.*" *Id.* at 3 (emphasis in original).  Defendants argue that Plaintiffs not only did not correct Defendants' misapprehension, but "actively concealed" the nature of their claim, wasting time and resources, by encouraging Defendants to serve its Rule 34 notice and then later obstructing it.  *Id.* at 3–4.

Defendants also dispute certain factual claims by Plaintiffs.  Defendants state that Ms. Phillips was paid on our hourly basis, not daily, and therefore the time she was present while the parties negotiated the inspection protocol cost extra.  *Id.* at 4.  Defendants also reiterate that the court reporter was paid hourly.  *Id.*  Defendants also dispute Plaintiffs' claim that Ms. Phillips typically requires an inspection protocol when she does an inspection, and Defendants claim Ms. Phillips "reacted to the proposed inspection protocol by stating that it was highly unusual." *Id.* at 5.[2]

Defendants also dispute Plaintiffs' request for fees as being unsupported by declaration and argues it "exemplifies counsel for Plaintiff's bad faith."

Defendants' Reply additionally focuses attention on Mr. Ng's "frequent interruptions of the deponent as well as the deposing attorney, speaking objections, and blatant coaching of the deponent, all in wanton violation of Federal Rule of Civil Procedure 30(c)(2)." *Id.* at 6.  Defendants attach the deposition transcript in full, citing 12 examples of "Mr. Ng's obstructionism and witness-coaching" and six more "inapplicable, inappropriate" objections.  *Id.*  As in their Motion, Defendants do not directly request sanctions against Mr. Ng., but claim that "Mr. Ng's conduct directly contributed to the unnecessary burden and expense incurred by Defendants."  *Id.*

## IV.     LEGAL STANDARD

Rule 37(d)(1)(A)(ii) provides for sanctions if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response."

Fed. R. Civ. P. 37(b)(2)(C)) ("Failure to Comply with a Court Order—Payment of

---

[2] Defendants' citation to Defendants' counsel's declaration for that claim about Ms. Phillips' surprise appears to be in error, as the paragraph cited does not address that point.

19

1  Expenses") provides that "Instead of or in addition to the orders above, the court must order the

2  disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

3  including attorney's fees, caused by the failure, unless the failure was substantially justified or

4  other circumstances make an award of expenses unjust."

5       28 U.S. Code § 1927 ("Counsel's liability for excessive costs") provides that, "Any

6  attorney or other person admitted to conduct cases in any court of the United States or any

7  Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may

8  be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

9  reasonably incurred because of such conduct."

10      The Court may order monetary sanctions under its inherent authority. "[A] district court

11  may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad

12  faith, vexatiously, wantonly or for oppressive reasons*." Leon v. IDX Systems Corp.*, 464 F.3d 951,

13  958 (9th Cir. 2006).

14  **V.    ANALYSIS**

15      **A.    Sanctionable conduct under Rule 37(d)(1)(A)(ii)**

16      The Court first considers whether Plaintiffs engaged in sanctionable conduct under Rule

17  37(d)(1)(A)(ii).

18      Rule 37(d)(1)(A)(ii) provides for sanctions if "a party, after being properly served with . . .

19  a request for inspection under Rule 34, fails to serve its answers, objections, or written response."

20  Defendants allege that their notice dated September 29, 2014, styled "NOTICE OF DEPOSITION

21  PURSUANT TO FED. R. CIV. P. 30(B)(6) AND NOTICE OF INSPECTION PURSUANT TO

22  FED. R. CIV. P.34," Motion Exhibits at 33, was a properly served Rule 34 notice of inspection.

23  Plaintiffs appear to have considered the notice to have been only for a 30(b)(6) deposition. *See*

24  Dkt. No. 133-2 (Plaintiffs' objections under the heading PLAINTIFF'S OBJECTIONS TO THE

25  NOTICE OF FED R. CIV. P. 30(b)(6) DEPOSITION OF NOVELPOSTER).  Plaintiffs also argue

26  that the notice was improperly noticed, having not been sent at least 30 days before the noticed

27  date.  Plaintiffs cite *Holliday v. Extex* for the proposition that "an inspection demand with less than

28  30 days' notice cannot be enforced."  237 F.R.D. 425, 427 (D. Haw. 2006).  Defendants do not

United States District Court
Northern District of California

20

rebut Plaintiffs' argument that the notice should have been for a day at least 30 days in the future, but do claim that it was Plaintiffs who picked October 24 as the date of inspection during the parties' September 23 meet-and-confer. Motion at 12. Defendants also emphasize that they had been informally requesting a date certain for an inspection from Plaintiffs by letter, telephone, and in person since at least August, without results. Motion at 10-12. Plaintiffs claim that they chose the October 24 date for a 30(b)(6) deposition only, not an inspection, and in any case suggest that an inspection noticed for October 24 would only have been proper if Defendants' counsel sent the notice on September 23, the day of the alleged agreement and exactly 30 days before the noticed date. Opp. at 9.

Sanctions under this Rule would be inappropriate. First, the Rule 34 request was served fewer than 30 days before the inspection—and in any event the inspection took place.

The fact that some time was wasted on October 24 to work out an inspection protocol was the fault of both parties. Plaintiffs did not even raise the request for a protocol until two days before the inspection. On the other hand, Defendants refused to work out a protocol in those two days, and brought their expert to the deposition *knowing* that Plaintiffs had told them that there would be no computers brought to the deposition in the absence of a protocol. In fact, the Court had to order Defendants to work out a protocol. In the Court's experience, a protocol for the inspection of one party's computers is typically required when access to those devices is given.

Moreover, both parties are at fault for not clarifying earlier the issue of "physical damage." Plaintiffs' amended complaint is broadly worded, and could conceivably cover physical damage to a physical computer. On the other hand, Defendants knew, from the briefing and order on the Second Motion for Judgment on the Pleadings, that the gravamen of the suit was not about physical damage to a physical computer. Indeed, Defendants never issued their own clarifying discovery request, such as: "Do you claim any physical damage to any physical computer?" or, "Do you only claim damage to cloud-based accounts?" or, "Do you only claim damage as a result of lack of access to cloud-based accounts?" Finally, Defendants knew, the day before they paid for their expert to come inspect "physical" computers, that Plaintiffs would stipulate that the only damage was to cloud-based accounts—as Plaintiffs noted in their proposed protocol. *See* Motion

1    Exhibits at 64.

2          In any event, the inspection occurred, and nothing was not produced pursuant to the

3    inspection as required for sanctions under Rule 37(d)(1)(A)(ii).

4          Accordingly, the Court DENIES Defendants' motion for sanctions under Rule

5    37(d)(1)(A)(ii).

6    **B.    Sanctionable conduct under Rule 37(b)(2)(C), 28 U.S.C. § 1987, and the Court's
          inherent authority**

7

8          Defendants move the Court to sanction Plaintiffs on several grounds for acting "in bad

9    faith," acting "vexatiously," or "multipl[ying] the proceedings."  Those grounds include Rule

10   37(b)(2)(C), which sanctions failure to comply with a court order, on the basis that Plaintiffs failed

11   to comply with the Court's August 6 and August 22 orders.  Motion at 17–18 (referring to Dkt.

12   Nos. 96, 105).  As those orders by the Court principally reminded the parties of their obligations to

13   comply with the Federal Rules of Civil Procedure and the Court's Local Rules, to cooperate and

14   act in good faith, and to avoid acting for any improper purpose, such as to harass, cause

15   unnecessary delay, or needlessly increase the cost of litigation, the Court considers Defendants'

16   claim that Plaintiffs violated those orders along with the general claim that Plaintiffs acted

17   vexatiously and multiplied the proceedings.

18         The Court considers three alleged bases on which it could conclude that Plaintiffs acted

19   vexatiously and multiplied the proceedings: (1) Plaintiffs' alleged obstruction of the inspection by

20   requiring an inspection protocol; (2) Plaintiffs' failure to disclose its lack of physical computer

21   damage; and (3) Plaintiffs' objections at the October 24 deposition.

22   **C.    Plaintiffs' alleged obstruction of the inspection by requiring an inspection
          protocol.**

23

24         As described above, the Court finds that both sides were responsible for the delay in

25   negotiating an inspection protocol.  An inspection protocol was appropriate, and the Court ordered

26   both parties to negotiate one.  Plaintiffs could have proposed one earlier.  Defendants could have

27   negotiated one the day before the inspection, but refused.  No sanctions are appropriate.

28

1

**D.      Plaintiffs' failure to disclose its lack of physical computer damage**

2

As described above, both parties bear some responsibility for the fact that the question of

3

whether Plaintiffs claimed physical damage to a specific NovelPoster computer—or whether the

4

case was confined to cloud-based accounts—was not clarified.  Not later than the day before the

5

inspection, however, the position was clarified.  No sanctions are appropriate.

6

**E.      Plaintiffs' objections at the October 24 deposition**

7

Defendants accuse Plaintiffs' counsel, Mr. Ng, of unnecessarily delaying the October 24

8

deposition by making speaking objections and posing his own questions to Mr. Willey, who was

9

questioning the deponent.  Motion at 16–17.  Defendants argue that Mr. Ng's objections and

10

questions violated Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a

11

nonargumentative and nonsuggestive manner").  However, as Mr. Ng notes, "Defendants' motion

12

does not specifically ask for sanctions for [Mr. Ng's] conduct."  Dkt. No. 133 (Ng. Decl.) at ¶ 5.

13

Defendants quote this statement from Mr. Ng's declaration in their Reply but again do not request

14

any particular sanction for Mr. Ng's conduct.

15

As Defendants do not request any specific sanctions for Mr. Ng's conduct, the Court does

16

not rule on whether Mr. Ng's objections violated Fed. R. Civ. P. 30(c)(2).

17

**VI.      CONCLUSION**

18

Defendants' Motion for Sanctions is **DENIED**.[3]

19

**IT IS SO ORDERED.**

20

Dated: December 12, 2014

21

_____

22

JOSEPH C. SPERO
United States Magistrate Judge

23

24

25

26

27

28

[3] In as much as the Court has found both sides responsible for the failures cited in this Order, the Court also declines to award Plaintiffs their fees.

23

United States District Court
Northern District of California